January 4, 2018

<u>Via ECF</u>

Hon. Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007

Re:    *Iowa Public Employees' Retirement System, et al. v. Bank of America Corporation, et al.*,
No. 17-cv-6221 (KPF)

Dear Judge Failla:

Pursuant to the Court's September 20, 2017, Initial Pretrial Conference Order (Dkt. 42), counsel for Plaintiffs and Defendants jointly submit this letter, and provide the following information:

*(1) A brief statement of the nature of the action, the principal defenses thereto, and the major legal and factual issues that are most important to resolving the case, whether by trial, settlement, or dispositive motion.*

*(a) <u>Plaintiffs' statement of the nature of the action</u>.*  The Amended Complaint alleges that six investment banks (the "Prime Broker Defendants") and a joint venture they controlled (EquiLend) unlawfully conspired to suppress competition in the stock lending market.  Stock lending is the temporary transfer of publicly traded stock.  (Compl. ¶¶ 2-3, 91-113.)  Stock lending is an important source of revenue to lenders and a practice crucial to the investment strategies of many borrowers.  The Prime Broker Defendants act as matchmakers between stock lenders and borrowers, collecting approximately 65% of the fees paid by borrowers, a percentage wildly out of proportion to the unnecessary "service" they provide.  (¶¶ 4-6, 97-113, 323-45.)  Defendants enjoy inflated profits because the stock loan market remains frozen in an antiquated state where borrowers and lenders must transact over-the-counter through a broker-dealer intermediary with little price visibility.  (¶¶ 113-20, 323-45.)

This stagnation persists only because of Defendants' unlawful conspiracy to boycott and otherwise neutralize competitors that promised to make the market more open, transparent, and efficient.  Defendants, for example, jointly extinguished the threat from Quadriserv/AQS, which offered an electronic trading platform to match borrowers and lenders directly.  (¶ 144.)  Defendants also boycotted SL-x, which offered an electronic platform on which broker-dealers could communicate bids and offers more efficiently, driving price transparency and competition.  (¶ 173.)  And Defendants also prevented Data Explorers from providing pricing transparency by way of real-time pricing data.  (¶ 186.)  The Prime Broker Defendants extinguished each of these threats through carefully coordinated behavior, thereby ensuring that they remain the exclusive gatekeepers for the trading and clearing of stock loan transactions in an OTC market.

The proposed Class is composed of investors who engaged in stock lending transactions directly with the Prime Broker Defendants.  Plaintiffs allege that, absent the conspiracy, AQS, SL-x, and Data Explorers would have made the stock loan market more competitive, efficient, and transparent for the benefit of class members.  (¶¶ 323-45.)  Empirical research and academic literature establish that investors benefit from more competitive and efficient trading protocols and additional pricing transparency.  (¶¶ 331-38.)  AQS's internal analyses, for example, showed it could save borrowers approximately $4.5 billion a year in fees paid on stock loan transactions, while also substantially increasing the fees paid to lenders.  (¶¶ 339-40.)  Defendants conspired to deny those benefits to investors so the Prime Broker Defendants could continue to enjoy their inflated profits in an inefficient over-the-counter market.

*(b) Defendants' statement of the principal defenses*.  Plaintiffs' assertions of an antitrust conspiracy lack merit:  Defendants did not collude to boycott AQS, SL-x or Data Explorers.  The Prime Broker Defendants vigorously compete with each other and many other large prime brokers in the stock loan market and charge fees that are proportionate to the risk and services provided, which vary widely based on difficulty of borrowing the particular stock at issue. (¶¶ 97(d) n.19, 331.)

Unlike stock trading, stock lending is ill-suited for anonymous, exchange trading due to the open nature of stock loans and borrowers' resulting desire to know the source of their stock loans.  In simply repurposing "remarkably similar conspiracy" allegations lifted from other lawsuits filed by their lawyers (¶ 360), Plaintiffs ignore the different regulatory framework that applies to securities lending, which "require[s] that a broker-dealer" such as the Prime Broker Defendants "be the legal borrowing entity in every stock loan transaction," (¶ 214), and the substantial barriers to anonymous, exchange trading of stock loans.  While several of the Prime Broker Defendants joined at least one of the allegedly boycotted trading platforms, they unsurprisingly did not shift billions of dollars in stock loans each day to unproven platforms that had obtained neither sufficient customer interest nor access to central clearing (through clearing brokers or otherwise) as needed to offer all-to-all anonymous, exchange trading.  The Prime Broker Defendants also lawfully participated as owners of Defendant EquiLend—a joint venture formed eight years before the start of the alleged conspiracy—along with several large agent-lenders that are the Prime Broker Defendants' counterparties in stock loan trades.

The Amended Complaint suffers from numerous legal and factual defects.

Plaintiffs fail to plead a plausible antitrust conspiracy under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Plaintiffs do not plead any direct evidence of an agreement, and their factual allegations do not plead meaningful parallel conduct by Defendants, much less the "plus factors" needed to allege a plausible antitrust conspiracy.  Moreover, Plaintiffs implausibly allege that the Prime Broker Defendants effectuated a conspiracy through their participation on the board of Defendant EquiLend together with several large agent-lenders—the representatives of the very stock lenders that supposedly were targeted by the conspiracy.  Furthermore, Plaintiffs' own allegations suggest that each Defendant had rational, unilateral reasons for not shifting its stock trading volume, *i.e.*, billions of dollars in stock loans each day, to unproven platforms that threatened to undercut its profits from securities lending.  It instead made perfect sense for each Prime Broker Defendant, acting unilaterally, to "sit[] tight and wait[] to see if [these new entrants] attracted sufficient support to survive." *In re IRS*, 261 F. Supp. 3d 430, 475

n.23 (S.D.N.Y. 2017). Lastly, the bulk of Plaintiffs' allegations is directed at conduct by the EquiLend joint venture and by the Prime Broker Defendants as participants in that joint venture. Such conduct is adjudged under the rule of reason. Yet Plaintiffs fail to plead an unreasonable restraint of trade under that standard. To the contrary, Plaintiffs' allegations regarding EquiLend "suggest competition at least as plausibly as [they] suggest anticompetitive conspiracy." *LLM Bar Exam, LLC v. Barbri, Inc*., 2017 WL 4280952, at *20 (S.D.N.Y. Sept. 25, 2017) (internal quotation marks and citation omitted).

Plaintiffs' claims also fail for lack of standing because Plaintiffs do not plausibly allege that anonymous trading of stock loans would have emerged but for Defendants' supposed conduct. SL-x and Data Explorers did not offer platforms that enabled anonymous lending of securities (¶¶ 179, 193), and no named Plaintiff alleges that it could or would have traded anonymously on AQS in contravention of market standards and clearinghouse rules. Thus, Plaintiffs have failed to allege an injury for which relief may be granted and, even if they have, any alleged injury is not "fairly traceable" to Defendants' conduct as required to confer Article III standing, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013), and their "alternative history of [stock lending] . . . requires too many leaps of imagination and guesswork" to satisfy the more demanding standard for antitrust standing, *In re IRS*, 261 F. Supp. 3d at 494.

Plaintiffs' unjust enrichment claim similarly fails because it is predicated on their flawed antitrust claim and is insufficiently pled.

Plaintiffs cannot plead claims stretching back over eight years to January 2009. Plaintiffs' antitrust claim pre-dating August 16, 2013 and their unjust enrichment claim pre-dating August 16, 2014 are time-barred under the applicable statutes of limitations.

*(c) **Joint statement of legal and factual issues that are most important to resolving the case.*** The parties agree that the major issues to be resolved in this case are: (i) whether a conspiracy actionable under the antitrust laws existed, (ii) whether the challenged conduct by the EquiLend joint venture and the joint venture participants was impermissible under the antitrust laws, (iii) whether Plaintiffs have standing to assert an antitrust claim, (iv) the scope (temporal and subject matter) of any antitrust conspiracy, (v) the identity of any participants in the alleged conspiracy, (vi) whether any injuries experienced by Plaintiffs and members of the proposed class were a result of the conspiracy, (vii) the timeliness of Plaintiffs' claims, (viii) whether Plaintiffs can satisfy the elements of unjust enrichment under New York law, (ix) whether the Court has jurisdiction over certain foreign Defendants, and (x) whether this case may be maintained as a class action under Federal Rule of Civil Procedure 23.

*(2) A brief explanation of why jurisdiction and venue lie in this Court.*

*(a) **Plaintiffs' statement.*** The Court has subject matter jurisdiction over this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26 and 28 U.S.C. §§ 1331 and 1337(a).

The Court has personal jurisdiction over Defendants pursuant to the nationwide contacts test provided for by 15 U.S.C. § 22. Most Defendants are subject to personal jurisdiction in the United States because they were formed in or have their principal places of business in the

United States.  The other Defendants are members of the conspiracy and are subject to personal jurisdiction in the United States because the conspiracy was directed at, carried out in, and had the intended effect of causing injury to Plaintiffs in the United States.

Defendants are also subject to personal jurisdiction because each transacted business in this District directly related to the claims in this action (the stock loans at issue were regularly traded through the desks of the Prime Broker Defendants located in New York City). Additionally, the Court has jurisdiction over most Defendants because they have their principal place of business in New York.  Jurisdiction is also satisfied under N.Y. C.P.L.R. § 302, because Defendants transact business in New York State; have substantial contacts with New York State; committed overt acts in furtherance of the alleged conspiracy in New York State; and directed the alleged conspiracy at persons residing in, located in, or doing business in New York State.

Venue is proper in this District pursuant to 15 U.S.C. §§ 15(a) and 22, because all Defendants are found or transact business in this District.  Venue is also proper pursuant to 28 U.S.C. § 1391(b), (c), and (d), because during the relevant period all Defendants resided, transacted business, were found, or had agents in this District; a substantial part of the events or omissions giving rise to these claims occurred in this District; and a substantial portion of the affected interstate trade and commerce discussed herein was carried out in this District.

*(b) **Defendants' statement**.*  After the original complaint was filed, counsel for the Defendants named in that complaint agreed to accept service of process on behalf of their respective clients, expressly reserving the right to contest whether any party is properly named, and without waiver of any defenses, including those related to personal jurisdiction.  Defendants are conferring with Plaintiffs concerning the possible voluntary dismissal of certain of the new Defendants named in the Amended Complaint.  Defendants expect to enter into a similar stipulation in which counsel for the Defendants would accept service of process on behalf of the remaining new Defendants, expressly reserving all rights and defenses.

Certain of the foreign Defendants may move to dismiss the claims against them for lack of personal jurisdiction because Plaintiffs fail to allege either general or specific personal jurisdiction over those Defendants.

*(3) A statement of all existing deadlines, due dates, and/or cut-off dates.*

Pursuant to the Court's September 20, 2017, Order (Dkt. 42), Defendants' deadline to answer, move or otherwise respond to Plaintiffs' Amended Complaint is January 26, 2018; Plaintiffs' deadline to file their opposition to any such motion(s) to dismiss is March 2, 2018; and Defendants' reply deadline is March 30, 2018.  By the same Order, all discovery has been stayed pending resolution of Defendants' motion(s) to dismiss.

> ***(4) A brief description of any outstanding motions.***

There are no outstanding motions at this time.  Defendants filed a pre-motion letter on December 13, 2017 (Dkt. 79), and Plaintiffs filed a response on December 20, 2017 (Dkt. 81). Defendants plan to file motion(s) to dismiss by January 26, 2018, the deadline set by the Court.

> ***(5) A brief description of any discovery that has already taken place and of any discovery that is necessary for the parties to engage in meaningful settlement negotiations.***

In light of the parties' agreement and the Court's Order staying all discovery pending resolution of Defendants' anticipated motion(s) to dismiss, no discovery has taken place.  The parties have conferred regarding settlement and agree that productive discussions are premature at this time.

> ***(6) A statement describing the status of any settlement discussions and whether the parties would like a settlement conference.***

The parties have not engaged in settlement discussions beyond conferral in connection with the initial pretrial conference.  The parties do not believe that a settlement conference would be productive at this point.

> ***(7) Any other information that the parties believe may assist the Court.***

Pursuant to the Court's September 20, 2017, Order (Dkt. 42), the parties have conferred regarding each of the subjects to be considered at a Federal Rule of Civil Procedure 16 conference and agree that productive discussions are premature at this time.  There is no other information that the parties wish to put before the Court at this time.

Respectfully submitted,

| /s/ Michael B. Eisenkraft | /s/ Daniel L. Brockett |
|---|---|

Michael B. Eisenkraft
Christopher J. Bateman
COHEN MILSTEIN SELLERS & TOLL
PLLC
88 Pine Street, 14th Floor
New York, NY 10005
Tel:  (212) 838-7797
Fax:  (212) 838-7745
meisenkraft@cohenmilstein.com
cbateman@cohenmilstein.com

Kit A. Pierson (*pro hac vice*)
Julie G. Reiser (*pro hac vice*)
Richard A. Koffman (*pro hac vice*)
David A. Young (*pro hac vice*)
Robert W. Cobbs
1100 New York Ave NW, Suite 500
Washington, DC 20005
Tel:  (202) 408-4600
Fax:  (202) 408-4699
kpierson@cohenmilstein.com
jreiser@cohenmilstein.com
rkoffman@cohenmilstein.com
dyoung@cohenmilstein.com
rcobbs@cohenmilstein.com

Daniel L. Brockett
Sascha N. Rand
Steig D. Olson
Maaren A. Shah
Thomas J. Lepri
Justin Reinheimer
Thomas Popejoy
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel:  (212) 849-7000
Fax:  (212) 849-7100
danbrockett@quinnemanuel.com
saschand@quinnemanuel.com
steigolson@quinnemanuel.com
maarenshah@quinnemanuel.com
thomaslepri@quinnemanuel.com
justinreinheimer@quinnemanuel.com
thomaspopejoy@quinnemanuel.com

Jeremy D. Andersen (*pro hac vice*
forthcoming)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel:  (213) 443-3000
Fax:  (213) 443-3100
jeremyandersen@quinnemanuel.com

*Attorneys for Plaintiffs Iowa Public Employees' Retirement System, Los Angeles County Employees Retirement Association, Orange County Employees Retirement System, Sonoma County Employees' Retirement Association, and Torus Capital, LLC*

/s/ Adam S. Hakki

Adam S. Hakki
Richard F. Schwed
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Tel:  (212) 848-4000
ahakki@shearman.com
richard.schwed@shearman.com

Ryan A. Shores (*pro hac vice*)
401 9th Street, N.W.
Washington, D.C. 20004
Tel:  (202) 508-8100
ryan.shores@shearman.com

**Attorneys for Defendants Bank of America Corporation, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Merrill Lynch L.P. Holdings, Inc., and Merrill Lynch Professional Clearing Corp.**

/s/ David G. Januszewski

David G. Januszewski
Herbert S. Washer
Elai Katz
Jason M. Hall
Sheila C. Ramesh
Margaret A. Barone
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, NY 10005
Tel:  (212) 701-3000
djanuszewski@cahill.com
hwasher@cahill.com
ekatz@cahill.com
jhall@cahill.com
sramesh@cahill.com
mbarone@cahill.com

**Attorneys for Defendants Credit Suisse AG, Credit Suisse Group AG, Credit Suisse Securities (USA) LLC, Credit Suisse First Boston Next Fund, Inc., and Credit Suisse Prime Securities Services (USA) LLC**

/s/ David I. Gelfand

David I. Gelfand (*pro hac vice*)
Alexis Collins (*pro hac vice*)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2000 Pennsylvania Avenue, NW
Washington, DC 20006
Tel:  (202) 974-1690
dgelfand@cgsh.com
alcollins@cgsh.com

Carmine D. Boccuzzi, Jr.
One Liberty Plaza
New York, NY 10006
Tel:  (212) 225-2000
cboccuzzi@cgsh.com

**Attorneys for Defendants EquiLend LLC, EquiLend Europe Limited, and EquiLend Holdings LLC**

/s/ Robert Y. Sperling

Robert Y. Sperling (*pro hac vice*)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
Tel:  (312) 558-7941
Fax:  (312) 558-5700
rsperling@winston.com

Richard C. Pepperman, II
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Tel:  (212) 558-3493
Fax:  (212) 558-3588
peppermanr@sullcrom.com

**Attorneys for Defendants The Goldman Sachs Group, Inc., Goldman, Sachs & Co. LLC, and Goldman Sachs Execution & Clearing, L.P.**

/s/ Robert D. Wick

Robert D. Wick (*pro hac vice*)
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001
Tel:  (202) 662-5487
Fax:  (202) 778-5487
rwick@cov.com

*Attorney for Defendants J.P. Morgan
Chase & Co., J.P. Morgan Securities LLC,
J.P. Morgan Prime, Inc., J.P. Morgan
Strategic Securities Lending Corp., J.P.
Morgan Chase Bank, N.A ., and J.P.
Morgan Institutional Investments Inc.*

/s/ Daniel Slifkin

Daniel Slifkin
Michael A. Paskin
Damaris Hernández
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Tel:  (212) 474-1760
Fax:  (212) 474-3700
dslifkin@cravath.com
mpaskin@cravath.com
dhernandez@cravath.com

*Attorneys for Defendants Morgan Stanley,
Morgan Stanley Capital Management,
Morgan Stanley & Co. LLC, Prime Dealer
Services Corp., Strategic Investments I, Inc.,
and Morgan Stanley Distribution, Inc.*

/s/ David C. Bohan

David C. Bohan
Peter G. Wilson
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL 60661
Tel:  (312) 902-5200
david.bohan@kattenlaw.com
peter.wilson1@kattenlaw.com

*Attorneys for Defendants UBS Group AG,
UBS AG, UBS Americas Inc., UBS
Securities LLC, UBS Financial Services
Inc., UBS Investment Bank, UBS Asset
Management (US) Inc., and UBS Fund
Services (USA) LLC*