**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IOWA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, *et al.*,

Plaintiffs,

-against-

BANK OF AMERICA CORPORATION *et al.*

Defendants.

Case No: 17 Civ. 6221 (KPF)

# MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR COST-SHIFTING OR IN THE ALTERNATIVE TO QUASH THIRD-PARTY SUBPOENAS

MANDEL BHANDARI LLP
Evan Mandel
Rishi Bhandari
Robert Glunt
80 Pine Street, 33rd Floor
New York, NY 10005
T: (212) 269-5600
F: (646) 964-6667
em@mandelbhandari.com

*Attorneys for Third Parties Sl-x IP S.À.R.L, SL-x Technology UK Limited, SL-x Trading Europe Limited, SL-x Technology USA LLC, and SL-x Trading USA LLC*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL BACKGROUND.......................................................................................2

ARGUMENT ..........................................................................................................5

I. DEFENDANTS MUST PAY SL-X'S COSTS ...................................................5

II. EVEN UNDER THE PRIOR RULE, COST SHIFTING WOULD BE APPROPRIATE...............................................................8

III. IN THE ALTERNATIVE, THE SUBPOENAS SHOULD BE QUASHED .........................................................................12

CONCLUSION.......................................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Concord Boat Corp. v. Brunswick Corp.*,
169 F.R.D. 44 (S.D.N.Y. 1996) .......... 13

*Cont'l 332 Fund, LLC v. Albertelli*,
Case No. 2:17-CV-41-FTM-38MRM, 2019 WL 4671007
(M.D. Fla. July 28, 2019) .......... 8

*Fears v. Wilhelmina Model Agency, Inc.*,
Case No. 02 CIV. 4911(HB)(HBP), 2004 WL 719185
(S.D.N.Y. Apr. 1, 2004 .......... 13

*In re Am. Nurses Ass'n*,
643 F. App'x 310 (4th Cir. 2016) .......... 6, 7

*In re Beltway Law Grp., LLP*,
Case No. 14-00380, 2017 WL 5035077
(Bankr. D.D.C. Nov. 1, 2017) .......... 7

*In re Exxon Valdez*,
142 F.R.D. 380 (D.D.C. 1992) .......... 9

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
Case No. 17 BK 3283-LTS, 2019 WL 4723718
(D.P.R. Apr. 18, 2019) .......... 10

*In re Gushlak*,
Case No. 11-MC-218 NGG, 2011 WL 3651268
(E.D.N.Y. Aug. 17, 2011) .......... 13

*In re Honeywell Int'l, Inc. Securities Litigation*,
230 F.R.D. 293 (S.D.N.Y. 2003), .......... 9

*In re Law Firms of McCourts & McGrigor Donald*,
Case No. M. 19-96 (JSM), 2001 WL 345233
(S.D.N.Y. Apr. 9, 2001) .......... 8, 9

*In re World Trade Ctr. Disaster Site Litig.*,
Case No. 21 MC 100 AKH, 2010 WL 3582921
(S.D.N.Y. Sept. 14, 2010) .......... 9

*In re: Modern Plastics Corp.*,
890 F.3d 244 (6th Cir. 2018) .......... 6, 10

*Legal Voice v. Stormans Inc.*,
738 F.3d 1178 (9th Cir. 2013) .................................................................. 6, 7, 9, 11

*Linder v. Calero-Portocarrero*,
251 F.3d 178 (D.C. Cir. 2001) ........................................................................ 6, 7, 11

*Nitsch v. DreamWorks Animation SKG Inc.*,
Case No. 514CV04062LHKSVK, 2017 WL 930809
(N.D. Cal. Mar. 9, 2017) ........................................................................................ 7, 8

*R.J. Reynolds Tobacco v. Philip Morris, Inc.*,
29 F. App'x 880 (3d Cir. 2002) ............................................................................... 6

*U.S. v. McGraw-Hill Companies, Inc.*,
302 F.R.D. 532 (C.D. Cal. 2014) ............................................................................. 9

*Walker v. Asset Mktg. Sys. Ins. Servs. LLC*,
Case No. 11-CV-2531-BTM JMA, 2012 WL 827010
(S.D. Cal. Mar. 9, 2012) .......................................................................................... 8

**Rules**

Advisory Comm. Notes Fed. R. Civ. P. 45(b) (1991 Amendments) ............................................ 8

Fed. R. Civ. P. 45 ........................................................................................... 5, 6, 12

## TABLE OF ABBREVIATIONS

| Abbreviation | Item |
|---|---|
| Dkt or Dkts. | Docket Entries in this action |
| Mandel Decl. | Declaration of Evan Mandel in Support of Motion for Cost-Shifting or in the Alternative to Quash Third Party Subpoenas |
| Def. Letter | Defendants' October 4, 2019 Letter to the Court (Dkt. 211) |
| JPM | Defendants J.P. Morgan Securities LLC, J.P. Morgan Prime, Inc., J.P. Morgan Strategic Securities Lending Corp., and JPMorgan Chase Bank, N.A. |
| Pritchard Decl. | Declaration of Gary Pritchard in Support of Motion for Cost-Shifting or in the Alternative to Quash Third Party Subpoenas |
| SL-x | Third Parties SL-x IP S.À.R.L., SL-x Trading Europe Limited, SL-x Technology UK Limited, SL-x USA Trading LLC, and SL-x Technology USA |

## PRELIMINARY STATEMENT

This is a dispute about cost-shifting under Fed. R. Civ. P. 45. Defendants, banks with billions of dollars of profits each year, have served five subpoenas on SL-x, a third party that has no customers, no sales, no profits, and no revenue. These subpoenas ask SL-x to review approximately 200,000 documents at its own expense and to produce substantially all of its corporate records to Defendants. Defendants have refused to bear any of the costs associated with this production.

The scope of the subpoenas is suspicious, given that the subpoenaed SL-x entities are plaintiffs in two other actions against Defendants in which discovery is currently stayed. Based on the scope and topics of the subpoenas, it appears that Defendants are attempting to use Rule 45 to circumvent those discovery stays – seeking substantially the same documents via a third-party subpoena that they would normally obtain through party discovery. Defendants deny this, claiming that the documents sought are needed only in connection with this action.

If this is true, and Defendants are using third party discovery devices in good faith, then they should be required to comply with the rules governing those devices. As set forth below, numerous Courts of Appeals have held that cost shifting is appropriate whenever a subpoena would impose a "significant expense" on a third-party. The expenses imposed here are indisputably significant, and Defendants should bear them. Indeed, even under the older version of Rule 45 (which Defendants continue to cite), cost shifting would be appropriate given the equities of this situation. Defendants can easily afford to advance the costs, which dwarf any financial resources that SL-x can muster.

SL-x respectfully requests that Defendants be ordered to advance the costs of compliance with the five subpoenas served by JPM.

In the alternative, given the unreasonable scope of the documents Defendants demand and the enormous burden that they would place upon SL-x as a third party, SL-x respectfully requests that the subpoenas be quashed in their entirety.

**FACTUAL BACKGROUND**

SL-x was a financial technology startup that focused on the securities lending market. Using its patented software, SL-x offered a fast, sophisticated system (the "SL-x Platform") where bids and offers for stock lending transactions could be communicated in real time, allowing market participants to compare rates and more efficiently execute stock loans. SL-x had no other products and no other business.

Unbeknownst to SL-x, Defendants, representing some of the largest players in the stock lending market, secretly reached an agreement to collectively boycott SL-x so that it could not threaten the control Defendants exercised over the lucrative industry. Defendants also threatened other potential customers to convince them not to do business with SL-x and interfered with efforts by SL-x to raise additional capital. Starved of customers and unable to raise money, SL-x was ultimately forced to sell its intellectual property to Defendants' cartel for a fraction of the value the asset would have had if there was no antitrust conspiracy.

Years later, on August 16, 2017, the Plaintiffs in this action (the "IPERS Action") commenced a putative class action lawsuit against Defendants, alleging that they had conspired to rig the securities lending markets and to boycott and/or sabotage new entrants, such as SL-x, AQS, and Data Explorers. Dkt. 1. The complaint set forth a litany of previously undisclosed information concerning Defendants' collective agreement to manipulate stock lending and their anticompetitive conduct done in service of that agreement. *Id.*

On November 1, 2018, SL-x IP S.À.R.L. commenced its own lawsuit against Defendants captioned *SL-x IP S.A.R.L. v. Bank of America Corporation et al.*, Case No. 18-10179 (S.D.N.Y.), later consolidated with an action filed by SL-x IP S.À.R.L.'s subsidiaries, captioned *SL-x Trading Europe Limited et al., v. Bank of America Corporation et al.*, Case No. 19-4885 (S.D.N.Y.) (collectively the "SL-x Actions"). The SL-x Actions are currently pending before Judge Sullivan in this district. Discovery in both cases has been stayed pending a decision on a consolidated motion to dismiss. Mandel Decl. Ex. A.

In June of 2019, JPM sent five third-party subpoenas to SL-x, one for each SL-x entity.[1] As set forth in detail below, the subpoenas were extraordinarily broad and facially improper. Each demanded production of 37 categories of information. *Id.* ¶ 4 & Ex. B. Defendants have since supplemented these requests with over 200 search terms that they want SL-x to run across broad swaths of its electronically stored information, including sixteen SL-x custodians. *Id.* ¶ 5 & Ex. C. Defendants have also asked SL-x to collect documents from the personal email accounts of its former employees. *Id.* ¶ 6. Taken together these demands sought essentially all documents concerning SL-x's business, including virtually every email sent by most of its key staff. In short, they appeared to be an attempt to circumvent the discovery stay issued by Judge Sullivan in the SL-x Actions and obtain all of the information that would normally be produced in connection with party discovery in those cases.

In light of this, SL-x reached out to Defendants and asked if they wished to make a joint application to Judge Sullivan to lift the discovery stays in the SL-x Actions. *Id.* ¶ 7 & Ex. D.

[1] While the Subpoenas were sent on behalf of JPM, we understand JPM to be acting on behalf of all Defendants in the IPERS Action in seeking third-party discovery from SL-x and that any documents provided to JPM will be shared with all Defendants.

This request was rebuffed. *Id.* Defendants indicated that they believed that they could use Rule 45 to obtain unilateral discovery from SL-x as a third party to the IPERS Action, obtaining enormous quantities of documents without having to produce anything in return.

SL-x served objections to the scope of the Subpoenas, including demanding that Defendants pay the enormous cost that the Subpoenas would impose on a non-party to the IPERS Action. *Id.* ¶ 8 & Ex. E. However, to avoid judicial intervention, SL-x has had over ten meet and confers with Defendants concerning the possible scope of production, and has collected over 200,000 ESI documents, including documents restored from backup files. *Id.* ¶ 10. While SL-x and the Defendants have made genuine progress concerning the scope of potentially relevant documents, SL-x has always made clear that its willingness to produce documents in this matter is conditioned on Defendants' bearing the burden of any production. *Id.* Despite SL-x's status as a non-party, Defendants have refused to shoulder any of the costs of the dramatic production that they seek. *Id.* This is improper.

There are three main categories of cost associated with the production of the SL-x documents. The first category are the collection, processing, hosting, and production fees charged by an e-discovery vendor to physically obtain the documents and convert them into a form that is usable by Defendants. The second category are the costs of paying an outsourced review vendor to examine the individual documents for privilege and responsiveness. The use of a specialized review vendor is generally accepted to be more cost-effective than hiring a traditional US law firm to review many thousands of documents. The third category of cost is the hourly attorney's fees that will be charged by SL-x's outside counsel, Mandel Bhandari, to prepare the guidelines for, coordinate, and supervise the review.

As itemized in the declaration of Evan Mandel, SL-x has consulted with an e-discovery and review vendor to obtain an estimate of the expenses associated with complying with the subpoenas. Mandel Decl. ¶ 13 & Ex. H. In addition, SL-x's outside counsel has estimated the total attorney's fees associated with supervising the review and production of the requested documents. *Id.* ¶ 14.

These expenses total over $300,000.

## ARGUMENT

### I. DEFENDANTS MUST PAY SL-X'S COSTS

Since the 1991 amendment, Rule 45 has stated that courts "must" shift costs if a non-party will incur a "significant expense" in complying with a subpoena. Specifically:

> (B) *Objections*. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
>
> (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
>
> (ii) These acts may be required only as directed in the order, and **the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.**

Fed. R. Civ. P. 45(d)(2)(b)(ii) (emphasis added). The prior version of Rule 45 did not contain the highlighted language and instead provided that a court "may" shift costs:

> (b) **For Production of Documentary Evidence**. A subpoena may also command the person to whom it is directed to produce the books,

> papers, documents, or tangible things designated therein; **but the court, upon motion** made promptly and in any event at or before the time specified in the subpoena for compliance therewith, **may** (1) quash or modify the subpoena if it is unreasonable and oppressive or (2) **condition denial of the motion upon the advancement by the person in whose behalf the subpoena is issued of the reasonable cost of producing the books, papers, documents, or tangible things**.

Fed. R. Civ. P. 45(b) (pre-1991 amendment) (emphasis added).

Each of the five Courts of Appeals that has considered the issue has held that, under the post-1991 language changing "may" to "must," cost-shifting to protect a third party from incurring "significant expense" is now mandatory not permissive. *See In re: Modern Plastics Corp.*, 890 F.3d 244, 252 (6th Cir. 2018) ("if an objection is made and the court orders the non-party to comply, the court must protect a non-party from significant expenses resulting from compliance.); *In re Am. Nurses Ass'n*, 643 F. App'x 310, 314 (4th Cir. 2016) ("if a court orders production on [a] subpoena, 'the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.'") (emphasis in original); *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) ("This language leaves no room for doubt that the rule is mandatory.") (internal quotation marks omitted); *R.J. Reynolds Tobacco v. Philip Morris, Inc.*, 29 F. App'x 880, 882–83 (3d Cir. 2002) (same); *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001) (same).

"[O]nly two considerations are relevant under the rule: '[1] whether the subpoena imposes expenses on the non-party, and [2] whether those expenses are 'significant.' If these two requirements are satisfied, "the court must protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder 'non-significant.'" *Legal Voice*, 738 F.3d at 1184 (*citing Linder*, 251 F.3d at 182). Costs properly shifted include "attorney's fees incurred by the non-party that are necessary to a discovery

proceeding under Rule 45" and "expenses for … e-discovery services." *Am. Nurses Ass'n*, 643 F.App'x at 314-15; *see also Nitsch v. DreamWorks Animation SKG Inc.*, Case No. 514CV04062LHKSVK, 2017 WL 930809, at *2 (N.D. Cal. Mar. 9, 2017) ("courts have concluded that fees incurred in production-related tasks like document review, creating a privilege log, and drafting protective orders are compensable expenses resulting from subpoena compliance") (internal marks omitted).

**A. Defendants' Subpoenas Impose "Significant" Costs**

The costs imposed by the instant subpoenas are indisputably significant. Here, Defendants are demanding that a third-party that has no meaningful assets (other than potential legal claims) and has not operated for years (1) collect approximately 200,000 documents from sixteen custodians in its corporate files, (2) collect documents from the personal email accounts of former employees, (3) run searches using hundreds of search terms on the corporate documents, and (4) review over 130,000 documents to determine if they fall within Defendants' 37 document requests. (Mandel Decl. ¶¶ 5-6, 9-12). The cost of this collection, review, and production is expected to be approximately $343,000.

Under these circumstances, Defendants' subpoenas indisputably impose "significant" costs on SL-x. *See Legal Voice*, 738 F.3d at 1185 ("[W]e have no trouble concluding that $20,000 is 'significant.'"); *Linder*, 251 F.3d at 182 ("no trouble concluding that" $200,000 is "significant"); *In re Beltway Law Grp., LLP*, Case No. 14-00380, 2017 WL 5035077, at *3 (Bankr. D.D.C. Nov. 1, 2017) ("The expense for compliance …totals…$10,087.50. The court has no difficulty finding that this amount is significant."); *Walker v. Asset Mktg. Sys. Ins. Servs. LLC*, Case No. 11-CV-2531-BTM JMA, 2012 WL 827010, at *5 (S.D. Cal. Mar. 9, 2012) (a search costing $8,850.00 constituted a "significant expense"); *Nitsch v. DreamWorks Animation*

*SKG Inc.*, at *4 (N.D. Cal. Mar. 9, 2017) ("The grand total: $67,787.30.5 …this court finds that this sum is significant").

Accordingly, the Court should order that the costs of production be advanced by Defendants. *See* Advisory Comm. Notes Fed. R. Civ. P. 45(b) (1991 Amendments) ("The court is not required to fix the costs in advance of production, although this will often be the most satisfactory accommodation to protect the party seeking discovery from excessive costs."); *see also, e.g., In re Law Firms of McCourts & McGrigor Donald*, Case No. M. 19-96 (JSM), 2001 WL 345233, at *3 (S.D.N.Y. Apr. 9, 2001) ("Respondents will be required to produce the requested documents only after receiving in advance the reasonably estimated costs of production, including the attorney's fees to be incurred by respondents in reviewing and selecting the documents to be produced."); *Cont'l 332 Fund, LLC v. Albertelli*, Case No. 2:17-CV-41-FTM-38MRM, 2019 WL 4671007, at *1 (M.D. Fla. July 28, 2019) ("the Court will require Plaintiffs to advance … costs to the third-party subpoena recipients for the costs they reasonably incurred in engaging KLDiscovery to assist them thus far in responding to the subpoenas.").

## II. EVEN UNDER THE PRIOR RULE, COST SHIFTING WOULD BE APPROPRIATE

In their pre-motion letter Defendants argue that the numerous Courts of Appeals decisions regarding cost shifting should be disregarded because they are "out-of-circuit." Def. Letter at 1. They instead argue that the Court should rely upon certain decisions of courts in this district and the District of Connecticut. *Id.* at 1-2. However, the decisions cited by Defendants rely upon a line of authority applying the pre-1991 version of Rule 45.[2] Under this line of

[2] Defendants' authorities, including *In re World Trade Ctr. Disaster Site Litig.*, Case No. 21 MC 100 AKH, 2010 WL 3582921 (S.D.N.Y. Sept. 14, 2010), *In re Law Firms of McCourts & McGrigor Donald*, Case No. M. 19-96 (JSM), 2001 WL 345233 (S.D.N.Y. Apr. 9, 2001), *In re Honeywell Int'l, Inc. Securities Litigation*, 230 F.R.D. 293 (S.D.N.Y. 2003), and *Wells Fargo*

authority, a district court applies a three-factor test to determine whether to require cost-shifting with respect to a third-party subpoena. This three-factor test emerges out of the language in the old version of Rule 45 that the court "**may**…(2) condition denial of the motion upon the advancement by the person in whose behalf the subpoena is issued of the reasonable cost of producing the books, papers, documents, or tangible things." (emphasis added)

However, these decisions "cannot be squared with the Ninth [and other] Circuit[s'] plain holding that, 'the **only question** before the court in considering whether to shift costs is whether the subpoena imposes **significant expense** on the non-party." *U.S. v. McGraw-Hill Companies, Inc.*, 302 F.R.D. 532, 535–36 (C.D. Cal. 2014) (emphasis added) (*quoting Legal Voice,* 738 F.3d at 1184). Indeed, just last year, the Sixth Circuit Court of Appeals also noted, in *dicta*, the inconsistency and anachronism in applying this three-part test:

> [B]efore the 1991 amendment to Rule 45, courts applied a number of equitable factors to determine whether to exercise discretion to shift the cost of production to the requesting party. 302 F.R.D. at 534-36. Some district courts have continued to consider three equitable factors in making that determination: (1) "whether the putative non-party actually has an interest in the outcome of the case"; (2) "whether it can more readily bear its costs than the requesting party"; and (3) "whether the litigation is of public importance." *In re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C. 1992) (citing cases). The bankruptcy court did not rely on those factors here, however, agreeing instead with two of our sister circuits that doing so would be inconsistent with the language of the current rule.

*In re: Modern Plastics Corp.*, 890 F.3d at 252.

---

*Bank, N.A. v. Konover*, 259 F.R.D. 206 (D. Conn. 2009) **all rely upon upon** *In re Exxon Valdez*, 142 F.R.D. 380 (D.D.C. 1992), for the proposition that a non-party can bear some of the costs of production. But *Exxon Valdez*, while acknowledging that the rule had changed, explicitly states that it will continue to apply caselaw based upon the pre-1991 wording. *Id.* at 383. And even *Exxon Valez* concluded that the new rule required the party seeking discovery to bear **the majority** of the costs of production. *Id.* at 484 ("new Rule 45(c) does require petitioners to bear the major portion of the costs of producing and copying the documents").

The only attempted defense of this approach, as articulated in *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, Case No. 17 BK 3283-LTS, 2019 WL 4723718, at *4 (D.P.R. Apr. 18, 2019), is that the three-part test that **was used to determine** whether a court properly exercised its discretionary right to shift costs **can now also be used to determine** whether the costs are "significant." Notably, neither the Second Circuit nor any other Court of Appeals, has endorsed this approach. And on its face, it makes little logical sense. The fact that information is of "public importance" would seem to have no bearing on whether the cost of producing it represents a "significant expense." Similarly, the fact that a third-party has an "interest" in a case would seem irrelevant to whether that party will incur a "significant expense" in complying with a subpoena. And this Court should look with extreme skepticism to analytical contortions that would permit a court to continue applying an old standard even after a discretionary rule is changed to a mandatory one. Accordingly, there is no basis to conclude that Second Circuit would be the first Court of Appeals to ignore the plain language of Rule 45 in favor of an inconsistent test arising out of a prior version of the rule. To the extent that the Court needs to reach the question, it should reject the three-factor test urged by Defendants.

But the Court need not reach this issue, because even if the three-part test endorsed by Defendants were applied, cost shifting would still be appropriate. ***First***, SL-x is not a member of the putative plaintiff class and has no stake in the outcome of the IPERS litigation. While SL-x has advanced claims against Defendants arising out of similar misconduct, it is not a party to this action and the actual outcome of the case does not control SL-x's fortunes. *See Legal Voice*, 738 F.3d at 1181, 1184-85 (requiring party challenging regulation to pay subpoena compliance costs of third-party that sought and participated in promulgation of regulation). Indeed, the IPERS plaintiffs may win or lose the instant case for any number of reasons that would have no

application to SL-x's claims. Obvious examples include anti-competitive conduct against parties other than SL-x, class certification, damages, fraudulent concealment against plaintiffs, reasonable reliance by plaintiffs, or other factors that do not touch on SL-x in any fashion.

Nor would a verdict in the IPERS Action have any peripheral benefit or harm to SL-x's financial interests, reputation, or assets. SL-x has not had customers or clients in many years. Pritchard Decl. ¶ 4. While it stands to win or lose in connection with the SL-x Actions, the success or failure of the IPERS Action is completely separate from its current fortunes.

***Second***, SL-x has no ability to bear the costs of compliance with Defendants' subpoena, expected to total approximately $343,000. Mandel Decl. ¶¶ 13-14 & Ex. H. As set forth in the Declaration of Gary Pritchard, SL-x has no significant assets and no obvious means of acquiring them. Pritchard Decl. ¶¶ 4-8. The cost of compliance in this case would be an enormous burden even on an operating company of significant size. SL-x was never such a company and has not had customers or clients for many years. In contrast, JPM alone earned more than $9 billion dollars last quarter on total revenues of more than $30 billion. *Id.* Ex. I. *See Linder*, at 251 F.3d at 179-80, 182 (requiring family that brought wrongful death action to pay CIA, Defense Department, and other federal agencies' costs incurred in complying with family's subpoena).

In their letter, Defendants insinuate that SL-x has made arrangements to have the costs of compliance paid for by another party. Def. Letter at 3. This is simply incorrect and no such arrangements have been made. Pritchard Decl. ¶ 10. And unlike a plaintiff engaged in party discovery in support of valuable claims – it is unlikely that any entity would lend SL-x money to pay for third-party subpoena compliance, since SL-x lacks any logical means of repayment.

***Third***, while the Defendants' efforts to rig the stock lending market and extract monopoly rents from virtually all equity investors in the United States are doubtlessly of public importance,

the impact on SL-x specifically – and the technical details concerning its software product and marketing efforts – simply do not rise to the same level of public interest.

* * *

In sum, compliance with Defendants' subpoenas would impose a "significant expense" on SL-x and cost-shifting is mandatory under the current version of Rule 45. But even if prior authority were relied upon, cost shifting would be appropriate given the equities and circumstances of this action. Defendants have used third-party subpoenas to obtain unilateral discovery against an impoverished adversary in contravention of two court-ordered discovery stays. To the extent such action is permissible, Defendants should be required to bear its expense, as they would against any other third party.

## III. IN THE ALTERNATIVE, THE SUBPOENAS SHOULD BE QUASHED

Should the Court deem cost shifting inappropriate, it should instead quash the facially overbroad and unduly burdensome subpoenas in their entirety. Even a cursory glance at their voluminous requests shows the subpoenas to drastically exceed the reasonable bounds of third-party discovery in a civil action.

Pursuant to Fed. R. Civ. P. 45(d)(3)(A), "the court for the district where compliance is required must quash or modify a subpoena that: … (iv) subjects a person to undue burden." Accordingly, courts in this circuit will not hesitate to quash a subpoena that is "overbroad on its face" or "effectively encompass documents relating to every transaction" undertaken by a third party. *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 50 (S.D.N.Y. 1996) (quashing subpoena in its entirety; *see also In re Gushlak*, Case No. 11-MC-218 NGG, 2011 WL 3651268, at *6 (E.D.N.Y. Aug. 17, 2011) ("It is also obviously unreasonable for Petitioner to seek from Furman and Lubin 'all documents' in their possession concerning themselves"), *aff'd sub nom. Gushlak v. Gushlak*, 486 F. App'x 215 (2d Cir. 2012). Indeed, "where, as here, discovery is

sought from a non party, the Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the non party." *Fears v. Wilhelmina Model Agency, Inc.*, Case No. 02 CIV. 4911(HB)(HBP), 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004).

In this case, the documents requested by Defendants' subpoenas are categorically overbroad, unduly burdensome, and in some cases vague beyond reason. A few examples are illustrative. Document Requests Nos. 5 and 8 seek:

> 5. Documents concerning efforts to create, launch, develop, or market Your Trading Platform.
>
> 8. Documents concerning Your Trading Platform's capabilities or performance, including comparisons of actual performance to projections, comparisons of Your Trading Platform to any other Trading Platform, challenges to Your Trading Platform's performance, perceived quality of Your Trading Platform's capabilities or performance, analyses of factors affecting Your Trading Platform's performance, and discussions of proposals for adjustments or improvements.

Taken together, these requests seek every document ever written concerning SL-x's software, from the earliest design plans all of the way through marketing materials prepared to sell the software to clients. These requests would sweep up virtually every communication ever drafted by members of SL-x's engineering or sales teams and a huge percentage of documents ever touched by its executives.

Similarly, Document Requests 13 and 14 seek:

> 13. Documents concerning the actual, expected, or projected financial performance of Your Trading Platform, including documents concerning Your Trading Platform's actual, expected, or projected revenues, costs, profits, losses, investments, capital expenditures, and payment of taxes.
>
> 14. Documents concerning potential or actual financing of, or investment in, Your Trading Platform by third parties, including: (1) documents, communications, or agreements concerning or involving You and any actual or potential investor of Your Trading Platform such as Palamon

> Capital Partners, LP, Markit Ltd., or GFI Group; (2) documents, communications, or agreements concerning or involving You and any actual or potential financer of Your Trading Platform such as Wells Fargo; or (3) documents concerning the withdrawal or termination of any agreement to finance or invest in Your Trading Platform.

Taken together, these requests call for the production of virtually all financial records maintained by SL-x, including all records relating to the financing of SL-x, the financial performance of its product, and every computation of revenues, costs, profits or losses.

Document Request No. 16 seeks:

> 16. Documents concerning communications, presentations, or reports You made to members of your management committee(s), executive committee(s), Boards of Directors, actual or potential Platform Clients, or actual or potential investors concerning Stock Lending, Your Trading Platform, any other Trading Platform, or Your business plans, strategies, results, or performance.

This request asks for literally every piece of paper submitted to SL-x's Board of Directors for the entirety of the company's existence.

In addition to overbreadth issues and the burden associated with producing documents in response to them, some of Defendants' requests are also incomprehensibly vague. For example, Document Request No. 2 seeks:

> 2. Documents concerning any actual or attempted support or assistance by any Defendant of exchange-based Stock Lending, Stock Lending consortiums, disintermediated Stock Lending, anonymous Stock Lending, all-to-all Stock Lending, any other form of Stock Lending, central clearing for Stock Loan transactions, Your Trading Platform, or any other Trading Platform.

It is extremely unclear what this run-on sentence means or what documents it seeks.

In a slightly different, but equally improper, fashion, Document Request No. 35 seeks, *in toto*: "Documents concerning this Action." SL-x submits that if this hopelessly vague request were appropriate, there would never be a need to articulate any other.

On their face, these requests are facially overbroad and improper. And to the extent there is any doubt about the intended scope, Defendants have supplemented them with over 200 search terms. The breadth of these terms makes clear that Defendants intend to indiscriminately sweep up documents in the possession of SL-x. This is not an appropriate use of third-party discovery. To the extent the Court deems cost shifting inappropriate, it should quash the JPM subpoenas in their entirety.

## CONCLUSION

SL-x respectfully requests that Defendants be ordered to advance the costs of compliance with the five subpoenas served by JPM. In the alternative, SL-x respectfully requests that the subpoenas be quashed in their entirety.

**Dated**: New York, New York
October 30, 2019

/s/ Evan Mandel

Evan Mandel
Rishi Bhandari
Robert Glunt
MANDEL BHANDARI LLP
80 Pine St., 33rd Floor
New York, NY 10005
(212) 269-5600
em@mandelbhandari.com

*Attorneys for Third Parties Sl-x IP S.À.R.L, SL-x Technology UK Limited, SL-x Trading Europe Limited, SL-x Technology USA LLC, and SL-x Trading USA LLC.*