quinn emanuel trial lawyers | new york                COHENMILSTEIN

December 11, 2019

**VIA ECF**

The Honorable Katherine Polk Failla
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:     *Iowa Pub. Emps.' Ret. Sys., et al. v. Bank of Am. Corp., et al.*, No. 17-cv-6221 (KPF)

Dear Judge Failla:

      Plaintiffs write to correct certain misrepresentations made by Defendant Merrill Lynch. Plaintiffs appreciate that in its response letter, ECF No. 256, Merrill Lynch specified—for the first time—a timeline for the production of certain P&L reports; however, that commitment, while welcome, is not sufficient and does not satisfy the concerns described in Plaintiffs' letter motion to compel the production of Merrill Lynch's P&L data. ECF No. 254 ("Mot.").

      *First*, Merrill Lynch is incorrect that the parties were not at impasse. After many, many months of meeting and conferring, on November 20, 2019, Plaintiffs gave Merrill Lynch a final deadline to provide a timeline for production of the reports Merrill Lynch itself had identified in August and agreed to produce in October. Exs. C & F to Mot., ECF Nos. 254-4, 254-7. Merrill Lynch let that deadline pass without any response whatsoever. Merrill Lynch's "pocket veto" of Plaintiffs' request constitutes impasse—Defendants cannot evade their discovery obligations by refusing to respond. *See Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979) ("The parties, and particularly their lawyers, must rise to the freedom granted by the Rules and cooperate in good faith both in question and response."). Moreover, Merrill Lynch provides no explanation as to why its investigation continued for so long, nor why that investigation—which Merrill Lynch claimed for months was incomplete— suddenly and coincidentally concluded right after Plaintiffs filed their letter with the Court.

      *Second*, Merrill Lynch's insistence that the P&L data Plaintiffs seek is duplicative of the transactional data it has already agreed to produce is disingenuous. This assertion was never raised during Merrill Lynch's months of "investigation" and P&L information (which appears to have been regularly reviewed and relied on by business participants) is unquestionably relevant to this case. Additionally, as Plaintiffs explained in their letter motion, confidentiality concerns raised by certain class members have already delayed the production of that data for months. The solutions Plaintiffs and the class members proposed to address those concerns—which Defendants recently rejected after weeks of consideration—will take time to execute and may prevent portions of data from being produced at all. The P&L data does not implicate these concerns and can—as Merrill Lynch demonstrated in its letter—be produced on a relatively short timeframe. Thus, it is of paramount importance that Plaintiffs obtain this data now.[1]

---

[1] Merrill Lynch's vague assertion that "Defendants do not maintain P&L data at the transaction level," ECF No. 256 at 3, is a red herring, and its reliance on a footnote in Plaintiffs' May 14,

*Third*, Plaintiffs believe the reports and data sources they are seeking are both relevant and proportional, but Plaintiffs seek the Court's intervention precisely because, despite extraordinary efforts, Plaintiffs continue to lack fulsome information about what is available.[2]  It is Merrill Lynch's obligation to identify potentially relevant sources of data, and in the ordinary course, it would be far more efficient to rely on counsel's discussions with their client to do so.  When it became clear that Merrill Lynch's counsel would not be timely providing fulsome information, Plaintiffs undertook their own investigation of the reports that were incidentally included in Merrill Lynch's document productions to better understand what was available and to tailor their requests.  Plaintiffs' presentation of the reports they identified to Merrill Lynch's counsel in July was met with more open-ended promises to "investigate," but those investigations never seemed to conclude or produce results.  Exs. B & C to Mot., ECF Nos. 254-3, 254-4.

Plaintiffs then took the extraordinary step of deposing an individual who *created* these reports, which in turn, revealed additional sources of relevant data Merrill Lynch's counsel had not disclosed.  Merrill Lynch's attempt to present its willingness to permit Plaintiffs to take this deposition as an example of their *cooperation* is misguided and contrary to the spirit of the Federal Rules.  *See Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 631 (2d Cir. 2018) ("The system functions because, in the vast majority of cases, we can rely on each side to . . . disclose relevant information when asked (and sometimes even before then) without being forced to proceed at the point of a court order.").  It is highly inefficient, unfair, and expensive to require Plaintiffs to take depositions simply to determine what data Merrill Lynch has in its possession when Merrill Lynch could have and should have asked this employee the same questions as part of its months-long "investigation."

*Finally*, Plaintiffs appreciate Merrill Lynch's willingness to provide the reports identified in its letter on the timeline it describes; however, more is needed to resolve Plaintiffs' concerns.  Most importantly, Merrill Lynch should produce the responsive data stored in the systems identified in Plaintiffs' letter motion.  Mot. at 2.  Additionally, Merrill Lynch should be required to supplement its prior representations regarding responsive data sources as described in the letter motion.  *Id.*  Merrill Lynch agreed to provide this information months ago and Plaintiffs

---

2019 letter to the Court describing Defendants' global assertion that P&L data "may not be available at a transaction-by-transaction level" is not convincing.  ECF No. 175 at 3 n.2.  Plaintiffs seek Merrill Lynch's daily, security-level P&L data, which they know exists, based on their investigation of Merrill Lynch's document production and their deposition of a person who created such reports.

[2]  Merrill Lynch's reference to Request No. 17 of the Plaintiffs' First Set of Requests for Production is similarly irrelevant.  As set out in the letter motion, the data Plaintiffs seek was requested under Plaintiffs' Second Set of Requests for Production, Ex. E to Mot., ECF No. 254-6, and thus was covered under the Transactional Data Protocol.  Indeed, as Plaintiffs explained in the same footnote Merrill Lynch cites, Plaintiffs have consistently maintained that this data should be handled in the same manner as other data.  *See* ECF No. 175 at 3 n.2.  Moreover, Merrill Lynch has waived this objection:  during the months of negotiations described above, Merrill Lynch has not rested on the claim that it already produced sufficient P&L data by virtue of its production of custodial documents in response to Request No. 17.

should not be prejudiced by Merrill Lynch's failure to conduct a reasonable investigation of its data sources. Thus, Plaintiffs respectfully request that the Court grant the motion to compel.

Respectfully submitted,

| | |
|---|---|
| */s/ Michael B. Eisenkraft* | */s/ Daniel L. Brockett* |
| Michael B. Eisenkraft | Daniel L. Brockett |
| COHEN MILSTEIN SELLERS & TOLL PLLC | QUINN EMANUEL URQUHART & SULLIVAN, LLP |