Defendants' letter motion requesting to file a 15-page sur-reply to Plaintiffs' motion for class certification (ECF Nos. 473, 475) is GRANTED IN PART AND DENIED IN PART. Defendants may file a twelve-page sur-reply (exclusive of supporting exhibits), within thirty days.

The Clerk of Court is respectfully directed to close ECF NO. 473.

SO ORDERED 10/21/2021

*SARAH L. CAVE*
*United States Magistrate Judge*

Magistrate Judge Sarah L. Cave
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1670
New York, NY 10007

October 19, 2021

RE:   *Iowa Pub. Emps.' Ret. Sys. et al. v. Bank of Am. Corp. et al.*,
       No. 17-cv-6221 (KPF/SLC)

Dear Magistrate Judge Cave:

Pursuant to Sections I.A and III.A of Your Honor's Individual Practices and Judge Failla's referral of Plaintiffs' motion for class certification to this Court (ECF No. 471), Defendants respectfully request leave to file a 15-page sur-reply to Plaintiffs' motion, together with narrow and targeted supporting materials, within thirty days of a ruling on this request.

Plaintiffs' core allegation—which Defendants deny—is that Defendants conspired to obstruct exchange-style execution of securities loans. Plaintiffs seek ▇▇▇▇ in damages on behalf of proposed classes of hedge funds and institutional investors that borrowed or loaned securities. Plaintiffs argue that a class should be certified because, among other things, the costs of using a securities loan exchange allegedly would have been low, and all class members allegedly would have received better prices if a securities loan exchange had achieved success. Defendants counter that many class members would not have benefitted from a securities loan exchange because, among other things, (i) many of them would have incurred high costs for using an exchange, and (ii) many received better prices in the actual world than those they would have received in the but-for world according to Plaintiffs' own estimates of but-for prices.

Plaintiffs filed their class certification motion together with a 50-page brief and supporting fact and expert materials on February 22, 2021. Defendants responded with a 50-page opposition and supporting fact and expert materials on June 29, 2021. On October 5, 2021, Plaintiffs filed a voluminous set of reply materials consisting of a 35-page brief, 400 pages of additional expert submissions, and 2,365 pages of additional factual materials. Defendants request leave to submit a short sur-reply to these submissions for the following reasons.

**First**, Plaintiffs' reply submissions contain sweeping new analyses, abrupt changes of position, and critical errors that Defendants have had no opportunity to address. For example:

- <u>New data analysis</u>. The expert reports submitted with Plaintiffs' opening brief were incomplete: Plaintiffs based those submissions solely on the transaction data of three out of six prime broker Defendants, and wholly ignored the data of the other three

**COVINGTON**
October 19, 2021
Page 2

    prime broker Defendants.  Plaintiffs then unveiled an extensive analysis of the other three Defendants' data for the first time in their reply.  This new analysis contends that "millions" of records in the newly-analyzed data should be thrown out, thus shrinking the percentage of class members that were unharmed by the alleged conspiracy according to Plaintiffs' own estimates of but-for prices.  For example, although UBS produced its short seller data *ten months* before Plaintiffs filed their motion, Plaintiffs waited until their reply to assert that *all* of the UBS short-seller data corresponding to roughly 25% of short-seller class members should be disregarded.  Plaintiffs thus ambushed Defendants with a belated attempt to erase and ignore large numbers of class members that contradict their purported proof of classwide antitrust injury.[1]

- <u>New cost analyses</u>.  Plaintiffs' experts originally ignored the fixed costs of using an exchange even though they agreed that these costs .  Defendants deserve a chance to respond: a correct accounting for these costs refutes Plaintiffs' claim that "common evidence" alone will be sufficient to determine the existence of classwide antitrust injury at trial.

- <u>New but-for world</u>.  Plaintiffs' experts originally asserted that   Defendants deserve a chance to explain why the latter of these new positions is fundamentally flawed and the former fatally undermines Plaintiffs' motion.

---

[1] Plaintiffs' experts are not merely applying the same exclusion criteria to the newly-analyzed data that they applied to the previously-analyzed data:  they apply *new* exclusion criteria to exclude large numbers of transactions that do *not* have zero loan rates and are *not* internal transfers.  Further, although two Defendants made supplemental productions of portions of their data, any suggestion that these supplemental productions by two out of seven Defendants are grounds for stripping Defendants of their right to respond to Plaintiffs' sweeping new data analyses would be meritless.  Indeed, Plaintiffs' opening expert reports failed to include any analysis of the larger and more important data productions that were not supplemented (*e.g.*, BAML data and UBS short seller data).

COVINGTON
October 19, 2021
Page 3

**Second**, courts in this District routinely accept sur-replies in opposition to class certification in complex cases like this one.[2]  As these courts have recognized, the threshold for granting a sur-reply is much lower than that for granting a motion to strike portions of a plaintiff's reply.

**Third**, Defendants will be unfairly prejudiced in a case in which Plaintiffs seek ▓▓▓ ▓▓▓ of dollars in damages in the absence of an opportunity to respond.  Plaintiffs' replies contain critical errors that are likely to go undetected in the absence of a written response.  Moreover, Plaintiffs' 35-page reply brief is nearly double the 20 pages implied by the usual briefing ratios in this Court (*i.e.*, the Court's usual practice of allowing a 10-page reply to a 25-page opposition implied a 20-page reply here).  Given the length and complexity of Plaintiffs' reply submissions, oral argument alone would be insufficient to correct Plaintiffs' errors or level the uneven playing field created by Plaintiffs' voluminous new submissions.

**Fourth**, a sur-reply will assist the Court and conserve judicial resources.  In the absence of a sur-reply, this Court would have to undertake the enormous task of scrutinizing Plaintiffs' replies and identifying the errors in those submissions on its own.  A sur-reply would assist the Court in identifying the relevant errors and disputes, crystallize the parties' positions on key issues, and avoid the burden associated with considering a motion to strike.

Defendants therefore respectfully request leave to file a sur-reply of up to 15 pages supported as appropriate by narrow and targeted expert and/or factual materials that would be vastly shorter than those submitted by Plaintiffs.  Defendants ask for 30 days from the Court's ruling on this motion in which to file a sur-reply, largely because the datasets in this case are so large and complex that it will take weeks just to assess the basic accuracy of Plaintiffs' new analyses.  Thirty days is modest and reasonable compared to the 98 days that Plaintiffs took for their reply.

Plaintiffs have indicated that they "will likely oppose" this request.  Defendants respectfully submit that Plaintiffs' anticipated opposition reflects a desire to obtain a tactical advantage in this litigation by shielding their flawed reply submissions from meaningful scrutiny.

---

[2] *See, e.g., In re Aluminum Warehousing Antitrust Litig.,* 336 F.R.D. 5, 25 (S.D.N.Y. 2020); *In re Interest Rate Swaps Antitrust Litig.,* No. 16-md-2704 (JPO), Dkt. No. 864 (S.D.N.Y. Oct. 21, 2019); *In re Vale SA Sec. Litig.*, 2019 WL 11032303, at *3 (S.D.N.Y. Sept. 27, 2019); *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13-cv-7789 (LGS), Dkt. No. 1176 (Feb. 8, 2019); *In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 105 & n.83 (S.D.N.Y. 2016); *Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 283 (S.D.N.Y. 2015) (Failla, J.); *In re Facebook, Inc., IPO Sec. and Derivative Litig.*, 312 F.R.D. 332, 344 (S.D.N.Y. 2015); *In re Elec. Books Antitrust Litig.*, 2014 WL 1282293, at *8 (S.D.N.Y. March 28, 2014); *MacNamara v. City of New York*, 275 F.R.D. 125, 136 n.5 (S.D.N.Y. 2011); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147, 168 (S.D.N.Y. 2007); *Freeland v. AT&T Corp.*, 238 F.R.D. 130, 138 (S.D.N.Y. 2006); *In re Public Offering Fee Antitrust Litig.*, 2006 WL 1026653, at *1 n.1 (S.D.N.Y. April 18, 2006); *In re Initial Public Offering Sec. Litig.*, 227 F.R.D. 65, 73 (S.D.N.Y. 2004); *Jones v. Ford Motor Credit Co.*, 2004 WL 1586412, at *1 (S.D.N.Y. July 15, 2004); *Dorchester Investors v. Peak Trends Trust*, 2002 WL 272404, at *5 (S.D.N.Y. Feb. 26, 2002).

COVINGTON
October 19, 2021
Page 4

        Respectfully submitted,

        */s/ Robert D. Wick*

        Robert D. Wick

        *Counsel for the JPMorgan Defendants*
        *writing on behalf of all Defendants*