quinn emanuel trial lawyers | new york



October 21, 2021

**VIA ECF**

Magistrate Judge Sarah L. Cave
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1670
New York, NY 10007

Re:   *Iowa Pub. Emps.' Ret. Sys. et al. v. Bank of Am. Corp. et al.*, No. 17-cv-6221 (KPF)

Dear Judge Cave:

      We write regarding Defendants' request for leave to file a sur-reply brief, and the Court's order on that request, which we just received this afternoon. Plaintiffs were preparing our response to Defendants' letter when we received the Court's order, which we respectfully ask be reconsidered. Plaintiffs further ask that, in the event the Court's order is not reconsidered, Defendants' filing be limited to 12 pages inclusive of expert reports, and Plaintiffs be permitted to file a 10-page response to Defendants' sur-reply.[1]

      Plaintiffs' class certification motion was fully briefed on October 5, 2021, after over ***seven months*** of briefing in accordance with the case schedule (ECF 428) and court rules limiting motion briefing to an opening, opposition, and reply.  SDNY L.R. 6.1(a); Failla Indiv. R. 4.B.; Cave Indiv. R. III.A. Briefing on this motion is thus complete, and Judge Failla made clear that "no further extensions will be permitted." ECF 428 at 7. Defendants' proposed sur-reply would operate as a more than 45-day extension and "serve only to delay resolution of the underlying motion." *Weems v. Hodnett*, 2011 WL 2731263, at *1 (W.D. La. July 13, 2011).[2]

      Defendants are simply wrong that sur-replies are "routinely accept[ed] … in opposition to class certification in complex cases like this one." ECF 473 at 3. "[S]urreplies are generally disfavored." *Banner Health v. Sebelius*, 905 F. Supp. 2d 174, 187 (D.D.C. 2012).  This is because they almost always "amount to little more than a strategic effort by the nonmovant to have the last word." *Weems*, 2011 WL 2731263, at *1. A sur-reply is "allowed solely when necessary to afford a party the opportunity to address arguments first raised in the opposing party's reply." *In re Old CarCo LLC*, 454 B.R. 38, 44 n.6 (Bankr. S.D.N.Y. 2011).  They are not

---

[1] As noted in Defendants' request, ECF 473 at 3, Plaintiffs indicated an intent to oppose their Request, and were preparing said objection at the time of the Court's order.

[2] Defendants' reference to the page counts of Plaintiffs' reply filing is misleading. Defendants submitted four expert declarations (totaling over 550 pages) with new fact declarations in support of their opposition brief, ECF 466—Plaintiffs' reply submission was necessary and reasonable to address Defendants' arguments.

allowed where, as here, Plaintiffs' "arguments in the reply were responses ... to issues raised by [Defendants] in [their] opposition papers." *Id.*; *see also Ramon v. Corp. City of New York*, 2019 WL 1306061, at *7 (E.D.N.Y. Mar. 21, 2019) (denying leave to file sur-reply and explaining that such briefing is warranted only "where the party against whom the sur-reply will be filed raises new arguments, and the proposed sur-reply provides rebuttal information relevant to the disposition of the case"). None of the specific reasons Defendants give justify a sur-reply.

Supposed New Data Analysis: Defendants assert that Plaintiffs' reply has "sweeping new data analysis" on three prime brokers (Bank of America, UBS, and Credit Suisse) whose data was not analyzed in Plaintiffs' opening papers. But this is misleading. In our opening, Plaintiffs' damages experts demonstrated that they had a workable model for quantifying the damages suffered by the Class by using the data of three Prime Broker Defendants (Goldman Sachs, Morgan Stanley, and JP Morgan). They demonstrated how their model could incorporate data provided by the other prime brokers as well. Plaintiffs' use of a subset of the data to show that we have a workable damages model is fully consistent with Plaintiffs' burden on class certification to show that we have a model "capable" of quantifying class-wide damages. *See Dial Corp. v. News Corp.*, 314 F.R.D. 108, 119 (S.D.N.Y. 2015).

It was then *Defendants' experts* who incorporated the datasets of the other three banks in their rebuttal reports. They did so in an effort to support Defendants' (erroneous) argument that the Plaintiffs' damages model supposedly shows large numbers of class members without positive damages when applied to all six banks' data. In our reply, Plaintiffs directly responded to these arguments and demonstrated that Defendants were wrong. Among other things, our damages experts show that Defendants' expert, Prof. McCrary, improperly added millions of trades of the UBS wealth management group that should not have been included. ECF 470-1 ¶¶ 351-62, 381-86. And our experts show Defendants made other mistakes as well. *Id.* ¶¶ 6-14 (Profs. Asquith and Pathak's summary of errors in Defendants' opposition papers); ECF 470-1 ¶¶ 3-25 (Prof. Zhu's summary of Defendants' errors). These were fair and direct responses to issues and data analyses *Defendants themselves* had interjected into the case.

"[R]eply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party." *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226-27 (2d Cir. 2000). Doing so does **not** create a right to a sur-reply: "when arguments raised for the first time in reply fall 'within the scope of the matters [the opposing party] raised in opposition,' and the reply 'does not expand the scope of the issues presented, leave to file a surreply will rarely be appropriate.'" *Banner Health*, 905 F. Supp. 2d at 188; *see also U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*, 238 F. Supp. 2d 270, 276-77 (D.D.C. 2002).

Defendants' argument that we "ambushed" them by revealing the flaws in their own data analyses is nonsense. Again, it was *Defendants*' experts who first purported to add the UBS data to our experts' damages model and make misleading assertions about what that showed. It was Plaintiffs' right to respond to those analyses and to expose Defendants' errors. Plaintiffs could not have anticipated Defendants' errors before they made them.

Supposed New Cost Analyses: Defendants accuse Plaintiffs of presenting a "new" cost analysis in their reply. Not so. As the citations to the record make clear, everything said about

costs in our expert reports and briefs was in direct response to the costs analysis of Defendants' expert, Prof. Hendershott. *See, e.g.*, ECF 470-1 ¶ 148 ("Prof. Hendershott makes numerous errors in Exhibit 16 of his report."), ¶ 151; *see also* ECF 470-2 ¶ 276 (responding to Prof. Hendershott's costs-based criticisms of the Asquith/Pathak report). Every argument our experts make about "costs" in their reply reports is a direct rebuttal to Prof. Hendershott, and again exposes the flaws of his work. *See DT v. Somers Cent. Sch. Dist.*, 2009 WL 10706891, at *2 (S.D.N.Y. Feb. 11, 2009) (rejecting sur-reply where reply arguments were responding to "matters that were raised for the first time" in opposition papers). Defendants complain ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. But that declaration was in response to the Declaration of ▇▇▇▇▇▇▇ that Defendants proffered in their opposition. It is also not "new material," as Defendants ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

<u>Supposed New But-For World</u>: Defendants argue that Plaintiffs' reply changes the but-for world to "a magical world of 'choice.'" But Defendants are wrong; Plaintiffs have been entirely consistent. Plaintiffs' lead impact expert, Prof. Zhu, models a world showing that all class members were impacted after the *entry* of viable platform trading, even where only a minority (22%) of trades were conducted on platform, with the rest OTC. ECF 414-9 ¶ 275. Prof. Zhu laid his assumptions out clearly, including his math, in his opening report. *Id*. ¶¶ 258-89. Defendants conspicuously do not cite Prof. Zhu's opening report in their letter, instead citing only his reply report in an effort to make it appear as if he shifted course. He did not. Instead, Defendants misleadingly cite snippets from the deposition of Plaintiffs' damages expert, Prof. Pathak, who was testifying about various scenarios about how more trades could move to platforms over time.[3] But Defendants' fail to mention that Plaintiffs' damages model conservatively assumes that all trades would take place at OTC prices, which means that the percentage of transactions that are OTC in the but-for world does not alter the results of the damages model. Defendants attacked a strawman in their opposition.

<u>Conservation of Judicial Resources</u>: Defendants assert a "sur-reply will assist the Court and conserve judicial resources." But Defendants' submission of more argument and expert reports would *add* to the Court's burden, and Plaintiffs would have to consider requesting the ability to respond in kind.[4] Plaintiffs respectfully request that the Court reconsider its grant of Defendants' request to file a sur-reply, or in the alternative clarify the permissible scope and length of Defendants' sur-reply expert reports given the absence of any "new" material in Plaintiffs' reply. To the extent reconsideration is denied, Plaintiffs respectfully request that the Court allow Plaintiffs a brief response to any new arguments made by Defendants in their sur-reply.

---

[3] The transcript cited by Defendants records Prof. Pathak as stating that he assumes all trades will be "*on* platform." ECF432-42 at 129:5-8. But this is an obvious mis-transcription, as Profs. Asquith and Pathak's damages model indisputably makes the conservative assumption that all trades will take place at the OTC price (*i.e.*, "off" platform). *E.g.*, ECF 414-10 ¶ 489 ("we apply OTC fees to every transaction within our model").

[4] *See United States v. Carton*, 2018 WL 4360781, at *2 (S.D.N.Y. Sept. 6, 2018) ("[T]his is the Government's motion and it gets the last word."). Indeed, in many of the cases Defendants cite where sur-replies were given, the plaintiffs were permitted to file a sur-sur-reply.

3

Respectfully submitted,

| | |
|---|---|
| */s/ Michael B. Eisenkraft* | */s/ Daniel L. Brockett* |
| Michael B. Eisenkraft | Daniel L. Brockett |
| COHEN MILSTEIN SELLERS & TOLL PLLC | QUINN EMANUEL URQUHART & SULLIVAN, LLP |