**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IOWA PUBLIC EMPLOYEES'
RETIREMENT SYSTEM, *et al.*,

        Plaintiffs,

                v.

BANK OF AMERICA CORPORATION,
*et al.*,

        Defendants.

Case No.  17-cv-6221 (KPF)


Hon. Katherine Polk Failla


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT WITH CREDIT**
**SUISSE**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

REQUESTED TWO-STEP PRELIMINARY APPROVAL PROCEDURE .................................2

PROCEDURAL BACKGROUND..............................................................................3

SUMMARY OF THE SETTLEMENT ........................................................................4

ARGUMENT ...................................................................................................7

I.      THE SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY
APPROVAL ...................................................................................................7

      A.     The Settlement Is Procedurally Fair .......................................................8

      B.     The Settlement Is Substantively Fair ......................................................9

            1.     The complexity, expense, and likely duration of the litigation.................10

            2.     The reaction of the Class to the settlement .................................10

            3.     The stage of the proceedings........................................................11

            4.     The risks of establishing liability and damages ..........................11

            5.     The risks of maintaining a class action through trial ...............13

            6.     The ability of Credit Suisse to withstand a greater judgment...................13

            7.     The reasonableness of the settlement in light of the best possible
recovery and attendant litigation risks .......................................14

      C.     The Rule 23(e)(2) Factors Support Preliminary Approval of the Settlement........16

            1.     Rule 23(e)(2)(A)—Plaintiffs and Co-Lead Counsel have
adequately represented the Settlement Class ...............................16

            2.     Rule 23(e)(2)(B)—the Settlement Agreement was negotiated at
arm's length ...................................................................................17

            3.     Rule 23(e)(2)(C)—the monetary relief is adequate .....................17

            4.     Rule 23(e)(2)(D)—the settlement treats Class members equitably
relative to each other....................................................................19

II.  THE SETTLEMENT CLASS SHOULD BE CERTIFIED ................................................20

    A.  The Requirements of Rule 23(a) Are Satisfied ........................................21

        1.  The Settlement Class satisfies the numerosity requirement ....................21

        2.  There are questions of law and fact common to all Settlement Class members ............................................................................21

        3.  Plaintiffs' claims are typical of those of the Settlement Class .................21

        4.  The Settlement Class is fairly and adequately represented .......................22

    B.  The Requirements of Rule 23(b)(3) Are Satisfied ...................................22

        1.  Common questions of law and fact predominate .......................................22

        2.  A class action is the superior method for resolving this case ...................23

    C.  Quinn and Cohen Should Be Appointed As Counsel for the Settlement Class ............................................................................................24

III.  APPOINTMENT OF ESCROW AGENT, SETTLEMENT ADMINISTRATOR, AND RELATED RELIEF ................................................................................24

CONCLUSION ................................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re "Agent Orange" Prod. Liab. Litig. MDL No. 381*,
 818 F.2d 145 (2d Cir. 1987)...........................................................................20

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
 No. 14-cv-7126 (JMF) (S.D.N.Y. May 11, 2016) ....................................................3

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
 689 F.3d 229 (2d Cir. 2012)......................................................................20, 23

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997)...............................................................................23, 24

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)........................................................11, 16

*In re Austrian & German Bank Holocaust Litig.*,
 80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche
 Bank*, 236 F.3d 78 (2d Cir. 2001) ...............................................................8, 9

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
 222 F.3d 52 (2d Cir. 2000)...........................................................................16

*Chhab v. Darden Rests., Inc.*,
 2016 WL 3004511 (S.D.N.Y. May 20, 2016) ........................................................23

*City of Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974), *abrogated in part on other grounds, Goldberger
 v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ....................................9, 10, 15

*In re: Commodity Exch. Inc. Gold Futures & Options Trading Litig.*,
 No. 14-md-2548 (VEC) (S.D.N.Y. Dec. 9, 2016) ....................................................2

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
 502 F.3d 91 (2d Cir. 2007)...........................................................................21

*In re Currency Conversion Fee Antitrust Litig.*,
 264 F.R.D. 100 (S.D.N.Y. 2010) ....................................................................22

*Dial Corp. v. News Corp.*,
 314 F.R.D. 108 (S.D.N.Y. 2015) ....................................................................22

*In re Domestic Airline Travel Antitrust Litig.*,
 378 F. Supp. 3d 10 (D.D.C. 2019) ..................................................................15

*In re Elec. Books Antitrust Litig.*,
  2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014) ..........................................................21, 22, 24

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
  104 F. Supp. 3d 290 (E.D.N.Y. 2015) .............................................................................11

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
  No. 13-cv-7789-LGS (S.D.N.Y. Dec. 15, 2015) ..............................................................3

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005)....................................................................................13

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019)....................................................................... *passim*

*Henry v. Little Mint, Inc.*,
  2014 WL 2199427 (S.D.N.Y. May 23, 2014) ..................................................................9

*In re London Silver Fixing, Ltd. Antitrust Litig.*,
  No. 14-md-2573-VE (S.D.N.Y. Nov. 23, 2016)................................................................3

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015)...............................................................................10

*In re Michael Milken & Assocs. Sec. Litig.*,
  150 F.R.D. 57 (S.D.N.Y. 1993) ........................................................................................9

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012)...............................................................................8

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  169 F.R.D. 493 (S.D.N.Y. 1996) ....................................................................................16

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................10, 12, 13, 20

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972)............................................................................................14

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ..............................................................................15, 16

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019)..........................................................................7, 8, 10, 18

*In re Petrobras Sec.*,
  862 F.3d 250 (2d Cir. 2017)......................................................................................22, 23

*In re Platinum & Palladium Commodities Litig.*,
2014 WL 3500655 (S.D.N.Y. July 15, 2014) ....................................................................7, 8

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
584 F. Supp. 2d 697 (M.D. Pa. 2008) ....................................................................14

*Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*,
237 F.R.D. 26 (E.D.N.Y. 2006) ....................................................................8, 11

*Roach v. T.L. Cannon Corp.*,
778 F.3d 401 (2d Cir. 2015) ....................................................................23

*Rosi v. Aclaris Therapeutics, Inc.*,
2021 WL 5847420 (S.D.N.Y. Dec. 9, 2021) ....................................................................17

*Shapiro v. JPMorgan Chase & Co.*,
2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ....................................................................14

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016) ....................................................................22

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
257 F.3d 256 (2d Cir. 2001) ....................................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ....................................................................21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) ....................................................................5, 6

*Wallace v. IntraLinks*,
302 F.R.D. 310 (S.D.N.Y. 2014) ....................................................................21

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985) ....................................................................12

*Weber v. Gov't Emps. Ins. Co.*,
262 F.R.D. 431 (D.N.J. 2009) ....................................................................13, 14

**Statutes**

Internal Revenue Code § 468B ....................................................................25

**Other Authorities**

Fed. R. Civ. P. 23 .................................................................... *passim*

2 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 6:23 (18th ed. 2021) ....................................................................20

6 William B. Rubenstein, *Newberg on Class Actions* § 20:25 (5th ed. 2021)..............................23

**PRELIMINARY STATEMENT**

Plaintiffs respectfully submit this memorandum in support of their motion for preliminary approval of the first "icebreaker" settlement with a Defendant in this class action concerning violations of the antitrust laws in connection with the stock loan market.  Specifically, Plaintiffs, on behalf of themselves and the proposed Settlement Class, have reached agreement with the Defendant Credit Suisse entities ("Credit Suisse").[1]  This first settlement agreement includes both an $81 million cash payment and an obligation on the part of Credit Suisse to provide cooperation to Plaintiffs in litigating and ultimately trying their case against the remaining Defendants.  *See* Decl. of Daniel L. Brockett ("Brockett Decl."), Ex. 1 ("Settlement Agreement" or "SA").  In return, Plaintiffs, on behalf of the proposed Settlement Class, release Credit Suisse from the claims arising from the factual predicate of this action.  Plaintiffs also agree to reduce the amount of any aggregate monetary final judgment against the remaining Defendants by 13.5%.

This icebreaker settlement represents an excellent recovery for the class and an important strategic milestone.  The settlement is the product of extensive arm's-length negotiations between experienced counsel.  Based on our experience and knowledge of the claims and defenses at issue in this action, Co-Lead Counsel believe that the settlement is in the best interests of the Settlement Class, and the Named Plaintiffs fully support the Settlement Agreement.  Plaintiffs thus respectfully submit that the settlement is fair, reasonable, and adequate, that it meets the requirements for certification of a settlement class, and that the Court

---

[1] The Defendant Credit Suisse entities are Credit Suisse Group AG, Credit Suisse AG, Credit Suisse Securities (USA) LLC, Credit Suisse First Boston Next Fund, Inc., and Credit Suisse Prime Securities Services (USA) LLC.

should preliminarily approve the settlement.  Plaintiffs seek entry of the proposed Preliminary Approval Order submitted herewith.  *See* SA, Ex. A ("Preliminary Approval Order").

## REQUESTED TWO-STEP PRELIMINARY APPROVAL PROCEDURE

Plaintiffs propose to file at a future date a separate motion for preliminary approval of the plans for providing notice and for allocating the settlement funds ("Notice Motion").  The Notice Motion would not be filed until Plaintiffs develop a proposed Plan of Distribution assisted by Credit Suisse's co-operation as set forth in the Settlement Agreement.  Only Court approval of the relief set out in the future Notice Motion would actually trigger notice in an approved form to the Settlement Class.

However, the timeline for Credit Suisse's obligations to deposit the Settlement Amount, to assist in the creation of a notice plan, and to provide cooperation (including data that may be used in an allocation plan), all do not begin until preliminary approval of the settlement terms at issue in the current motion.  *See, e.g.*, SA ¶¶ 3.1, 7.2, 10.5.  Having this motion go first makes sense in large and complex cases like this one.  Notice and allocation plans require substantial efforts from plaintiffs and settling defendants alike.  It would be potentially wasteful to undertake such efforts without some indication that the core settlement terms are likely to move forward.  Deferring notice can also potentially reduce the number of notices sent to the class members in the event further settlements are reached or the action reaches a merits conclusion. Accordingly, Plaintiffs request the Court approve a two-step preliminary approval process. Similar two-step preliminary approval processes have been adopted in several recent class action settlements.[2]  Plaintiffs' motion for final approval would follow in due course.

---

[2] *See, e.g.*, Order Preliminarily Approving the Deutsche Bank Settlement Agreement, *In re: Commodity Exch. Inc. Gold Futures & Options Trading Litig.*, No. 14-md-2548 (VEC) (S.D.N.Y. Dec. 9, 2016), ECF No. 187; Order Preliminarily Approving Class Action Settlement,

## PROCEDURAL BACKGROUND

Following a proprietary and independent investigation, Cohen Milstein Sellers & Toll PLLC and Quinn Emanuel Urquhart & Sullivan, LLP ("Co-Lead Counsel") filed an initial complaint in this class action litigation in August 2017.  Class Action Compl. ("Compl."), ECF No. 1.  No other complaints were filed by other counsel.  In November 2017, Co-Lead Counsel filed an amended complaint alleging a conspiracy among major dealers in stock loans to jointly boycott efficient, all-to-all trading platforms and price-transparency providers.  Am. Class Action Compl., ECF No. 73.  In September 2018, the Court denied Defendants' motions to dismiss in their entirety.  Op. & Order, ECF No. 123.  Since then, the parties have engaged in extensive discovery, reviewing millions of documents, analyzing terabytes of data, and completing more than 100 depositions of fact witnesses, Plaintiffs, third parties, and experts in multiple countries.  The parties also each have submitted multiple briefs on Plaintiffs' extensive class certification motion over the course of nearly a year, concluding in January 2022.  Mem. of Law in Supp. of Class Pls.' Mot. for Class Certification, ECF No. 415  ("Opening Cert. Br."); Defs.' Mem. of Law in Opp'n to Pls.' Mot. for Class Certification, ECF No. 431 ("Cert. Opp'n"); Reply Mem. of Law in Further Supp. of Class Pls.' Mot. for Class Certification, ECF No. 469 ("Reply Cert. Br."); Defs.' Sur-Reply in Opp'n to Pls.' Mot. for Class Certification, ECF No. 495 ("Cert. Sur-Reply"); Sur-Sur-Reply Mem. of Law in Further Supp. of Class Pls.' Mot. for Class Certification, ECF No. 513.  Plaintiffs now seek preliminary approval of the Settlement Agreement, entered into in January 2022 after extensive negotiations.

---

*In re London Silver Fixing, Ltd. Antitrust Litig.*, No. 14-md-2573-VE (S.D.N.Y. Nov. 23, 2016), ECF No. 166; Order Preliminarily Approving Settlement Agreements, *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-cv-7126 (JMF) (S.D.N.Y. May 11, 2016), ECF No. 228; Order Preliminarily Approving Settlements, *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13-cv-7789-LGS (S.D.N.Y. Dec. 15, 2015), ECF No. 536.

## <u>SUMMARY OF THE SETTLEMENT</u>

The primary terms of the settlement are as follows:

***Settlement Amount.***  The monetary component of the settlement is $81 million (the "Settlement Amount").  SA ¶ 1.39.  Following preliminary approval, the Settlement Amount will be paid into an Escrow Account and invested exclusively in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof.  *See* SA ¶¶ 3.1, 3.5.  The Settlement Amount, less any applicable taxes, attorneys' fees, and service awards and expenses, will be distributed to Authorized Claimants in accordance with an allocation plan to be approved by the Court and included in the Class Notice prior to Final Approval.  *See* SA § 7.  No portion of the Settlement Amount may be returned to Credit Suisse unless the Agreement is terminated due to the Court's disapproval or a materially significant portion of Settlement Class members opt out of the settlement.  *See* SA ¶¶  7.11, 9.4- 9.6.

***Settlement Class Definition.***  The Credit Suisse Settlement Agreement is made on behalf of a proposed Settlement Class defined as:

> [A]ll Persons or entities who, directly or through an agent, entered into Stock Loan Transactions with the Prime Broker Defendants, direct or indirect parents, subsidiaries, or divisions of the Prime Broker Defendants, or the Released Credit Suisse Parties, in the United States from January 7, 2009 through the Execution Date (the "Settlement Class Period"), inclusive.[3]

SA ¶ 1.40.  A Stock Loan Transaction, in turn, is defined as:

---

[3] Excluded from the Settlement Class are Defendants and their employees, affiliates, parents, subsidiaries, and co-conspirators, should any exist, whether or not named in the Amended Complaint, entities which previously requested exclusion from any Class in this Action, the United States Government, and all of the Released Credit Suisse Parties, provided, however, that Investment Vehicles shall not be excluded from the definition of the Settlement Class.  SA ¶ 1.40.

> [A]ny transaction, including any transaction facilitated by a prime broker or agent lender, in which an owner of a stock temporarily lends the stock in exchange for collateral or in which a borrower of a stock provides collateral to temporarily borrow a security, and in which the stock is ultimately returned to the lender at a later date, at which time the lender returns the collateral to the borrower.[4]

SA ¶ 1.45.  The proposed Settlement Class is broader than the class proposed for purposes of taking the case through trial, instead closely tracking the Complaint.  *See* Compl. ¶ 208; Opening Cert. Br. at 7-8.  Credit Suisse, seeking full peace, requested a release that tracks the claims *brought*, including with respect to the longer class period and types of transactions.  The law recognizes the propriety of releasing claims going beyond those that are actually litigated through trial.  *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106-107 (2d Cir. 2005).

    ***Release of Claims.***  With Court approval and after the judgment is final, the Action, all claims asserted in the Action, and all Released Claims belonging to Plaintiffs will be dismissed with prejudice as against Credit Suisse,[5] and Plaintiffs and each of the Settlement Class members (and anyone claiming through or on behalf of them) will be permanently barred and enjoined from asserting any of the Released Claims against the Released Credit Suisse Parties.  *See* SA § 6, ¶ 11.2.  "Released Class Claims" is defined to include:

> [A]ny and all manner of claims . . . against the Released Credit Suisse Parties, arising from or related in any way to the conduct alleged or that could have been alleged in this Action that also arise from or relate to the factual predicate of the Action, to the fullest extent allowed by law, from the beginning of time through the Execution Date.

---

[4] Excluded from the definition of "Stock Loan Transactions" are non-equity securities lending and stock repurchase (repo) transactions.  SA ¶ 1.45.

[5] Credit Suisse has denied and continues to deny each and all of the claims and allegations of wrongdoing made by Plaintiffs in this action and all charges of wrongdoing or liability arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in this action.  *See* SA § II.

5

SA ¶ 1.32.  *See, e.g.*, *Wal-Mart Stores*, 396 F.3d at 107 ("The law is well established in this Circuit and others that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct.").[6]

The settlement also includes a release of claims by the Releasing Credit Suisse Parties against Released Class Members for claims related to the "institution, prosecution, or settlement" of the Released Class Claims.  SA ¶ 1.35; *see also id.* ¶ 6.3.  The releases do not cover claims relating to enforcement of the settlement.

**Cooperation.**  Credit Suisse agrees to provide cooperation to Plaintiffs in their prosecution of this action against the other Defendants, including providing transactional data and making available for trial testimony up to four witnesses.  SA § 10.

**Reduction of Judgment.**  Plaintiffs have agreed that the maximum amount they will enforce from any judgment against the non-settling Defendants in this Action will be reduced by 13.5% of the jury's award.  SA ¶ 11.21.  Plaintiffs agreed to the term because they believe the total benefits of the settlement outweigh the total rights that are released, even accounting for this term.

The Settlement Agreement expressly reserves Plaintiffs' their right to challenge the propriety of any judgment sharing agreement or other agreement requiring such terms, which we will likely do without limitation should it become an impediment to negotiations with other Defendants.  SA ¶ 11.22.  Plaintiffs agree, however, that any such challenge will not impact the enforceability of the term vis-à-vis this Agreement.  *Id.*

---

[6] Internal citations, quotation marks and alterations are omitted throughout except where relevant.

***Termination Provisions***.  Termination is permitted within thirty days of any of the following events:  (i) the Court or any appellate court enters a final order declining to enter the Preliminary Approval Order in any material respect; (ii) the Court or any appellate court enters an order refusing to approve this Settlement Agreement or any material part of it; (iii) the Court enters an order declining to enter the Judgment and Order of Dismissal in any material respect; or (iv) the Judgment and Order of Dismissal is modified or reversed by a court of appeal or any higher court in any material respect.  *See* SA ¶ 9.2.  If opt outs are so extensive that they materially impair the value of the settlement to Credit Suisse, *and* a mediator determines, in their sole discretion, that the Settlement Fund cannot be reduced to preserve the essential benefits of the settlement, Credit Suisse may seek to terminate the settlement.  SA ¶¶ 9.4-9.7.

***Attorneys' Fees, Expenses, and Service Awards.***  The Settlement Agreement reserves Plaintiffs' right to request interim attorneys' fees, reimbursement of expenses, and/or class representative service awards.  *See* SA § 8.  The Settlement Class would be given notice of any such application or applications, which also would be subject to Court approval.

## ARGUMENT

## I.    THE SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL

Rule 23(e) requires court approval of a proposed class action settlement upon finding that the proposal "is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  The preliminary approval process is governed by a "likelihood standard," requiring the Court to assess whether the parties have shown that "the court will *likely* be able to grant final approval and certify the class."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 n.21 (E.D.N.Y. 2019).  In conducting a preliminary approval inquiry, a court considers both the "negotiating process leading up to the settlement, i.e., procedural fairness, as well as the

7

settlement's substantive terms, i.e., substantive fairness." *In re Platinum & Palladium Commodities Litig.*, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014).

Under Rule 23(e)(2), in weighing preliminary approval, the Court must consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). "Paragraphs (A) and (B) constitute the 'procedural' analysis factors, and examine 'the conduct of the litigation and of the negotiations leading up to the proposed settlement.' Paragraphs (C) and (D) constitute the 'substantive' analysis factors, examine '[t]he relief that the settlement is expected to provide to class members.'" *Payment Card*, 330 F.R.D. at 29 (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). These "factors . . . add to, rather than displace," the *Grinnell* factors (described and applied in I.B, below) traditionally considered in the Second Circuit during the preliminary approval process. *Id.* In undertaking this review, "a full fairness analysis is unnecessary at this stage; preliminary approval is appropriate where a proposed settlement is merely within the range of possible approval." *Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006).

As demonstrated below, the Credit Suisse Settlement Agreement warrants preliminary approval because it is procedurally and substantively fair.

### A.     The Settlement Is Procedurally Fair

"To determine procedural fairness, courts examine the negotiating process leading to the settlement." *Morris v. Affinity Health Plan, Inc*., 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012). Where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of

fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

The Credit Suisse Settlement Agreement is the product of arm's-length settlement negotiations among experienced counsel.  Over a series of communications, the parties' counsel exchanged views on the strengths and weaknesses of Plaintiffs' case and Credit Suisse's defenses, and engaged in significant back-and-forth on the Settlement Amount, the contours of Credit Suisse's cooperation with Plaintiffs' continuing prosecution of claims against the non-settling Defendants in this action, and other terms of the Settlement Agreement.  Moreover, the Named Plaintiffs, all sophisticated institutional investors, approved the settlement.

Co-Lead Counsel believe Plaintiffs' claims have substantial merit but acknowledge the expense, length, and uncertainty of continued litigation.  In recommending that the Court approve the settlement, Co-Lead Counsel considered the uncertain outcome and risks of further litigation and believe the settlement confers significant benefits on the Settlement Class in light of the circumstances here.  Based on these considerations, there is "a strong initial presumption that the compromise is fair and reasonable." *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *see also Henry v. Little Mint, Inc.*, 2014 WL 2199427, at *6 (S.D.N.Y. May 23, 2014) ("If the settlement was achieved through experienced counsels' arm's-length negotiations, absent fraud or collusion, courts should be hesitant to substitute their judgment for that of the parties who negotiated the settlement.").

### B.     The Settlement Is Substantively Fair

In granting preliminary approval, courts must make a preliminary determination that the substantive terms of the proposed settlement are "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Courts in this Circuit have traditionally analyzed the "*Grinnell* factors" in assessing whether a proposed settlement is fair, reasonable, and adequate.  *See City of Detroit v. Grinnell*

*Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (listing factors), *abrogated in part on other grounds,*

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  As noted above, the *Grinnell*

factors are complemented by the 2018 amendments to Rule 23(e); they were not displaced by

those amendments.  *See Payment Card*, 330 F.R.D. at 29.  Each factor supports preliminary

approval.

### 1.   The complexity, expense, and likely duration of the litigation

"Antitrust class actions are notoriously complex, protracted, and bitterly fought."

*Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 669 (S.D.N.Y. 2015); *see also Virgin Atl.*

*Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (noting the "factual

complexities of antitrust cases").  This case is no different.  From the initial motions to dismiss

through preliminary discovery, depositions, and class certification briefing, sophisticated counsel

intensely contested each stage of the case.  Plaintiffs, and presumably Defendants as well, have

spent many millions of dollars on expert fees and other expenses, and dedicated tens of millions

of dollars in attorney time to pursuing the litigation.  Further stages of the litigation, including

summary judgment, trial, and potentially appeals, will surely be just as extensively and

expensively contested.  Moreover, given the complexity of the case, it is likely that full

adjudication of the action would take years at a minimum, not including appeals.

Plaintiffs are confident of their case and the likelihood of prevailing at trial but also

mindful that all litigation presents risks no matter how strong the case, especially when opposing

counsel are as sophisticated and well-resourced as they are here.  In short, "[t]here can be no

doubt that this class action would be enormously expensive to continue, extraordinarily complex

to try, and ultimately uncertain of result."  *In re Nasdaq Mkt.-Makers Antitrust Litig.* ("*Nasdaq*

*III*"), 187 F.R.D. 465, 477 (S.D.N.Y. 1998).  This factor weighs in favor of preliminary approval.

2.     *The reaction of the Class to the settlement*

Because notice has yet to be provided to potential members of the Settlement Class,

courts generally do not consider this *Grinnell* factor at the preliminary approval stage.  *See*

*Reade-Alvarez*, 237 F.R.D. at 34 ("Clearly, some of these [*Grinnell*] factors, particularly the

reaction of the class to the settlement, are impossible to weigh prior to notice and a hearing.").

In any event, all of the Named Plaintiffs approve of this settlement, and should any objections

from Settlement Class members be received prior to the Fairness Hearing, Co-Lead Counsel will

address those concerns in the final approval papers.

3.     *The stage of the proceedings*

The "stage of the proceedings" factor ultimately concerns "whether the plaintiffs have

obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their

claims and the adequacy of the settlement."  *In re AOL Time Warner, Inc. Sec. & "ERISA"*

*Litig.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006).  Here, the parties have extensively

litigated and assessed the strengths and weaknesses of Plaintiffs' case.  They have the benefit of

millions of documents, more than 100 fact and expert depositions, and full ventilation of class

certification briefing, including multiple rounds of expert reports and a methodology for

assessing damages and Plaintiffs' aggregate damages estimate.  Due to this work, the depth of

Plaintiffs' and Co-Lead Counsels' knowledge of the strengths and potential weaknesses of their

claims is more than adequate to support the settlement.

4.     *The risks of establishing liability and damages*

In assessing this factor, "the Court should balance the benefits afforded the Class,

including the *immediacy* and *certainty* of a recovery, against the continuing risks of litigation."

*Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 303 (E.D.N.Y. 2015).  As

noted above, while Plaintiffs are confident of ultimately prevailing in this litigation, they

recognize that nothing in litigation is ever certain and that they will be opposed by sophisticated and well-resourced defense counsel.  Because six groups of Defendants remain in the litigation, Plaintiffs cannot discuss in detail potential risks in establishing liability, damages, and maintaining a class action through trial.  But some general possibilities are already evident.

Defendants have throughout made clear their intent to challenge, among other things: whether any conspiracy existed at all; the viability of the boycotted all-to-all trading platforms that would have reduced spreads in the but-for world; and the existence and extent of damages. For instance, as noted above, Defendants filed motions to dismiss, arguing primarily that the Amended Complaint's allegations: (i) were implausible; (ii) in large part, described conduct that is not unlawful; (iii) failed to adequately allege antitrust standing; (iv) were untimely; and (v) failed to adequately plead an unjust enrichment claim.  *See* Op. & Order at 2, ECF No. 123. Although, in Co-Lead Counsels' view, the Court was correct to reject those arguments at the motion to dismiss stage, and although discovery has revealed a wealth of evidence substantiating Plaintiffs' claims, absent this settlement, Credit Suisse was prepared to vigorously contest liability and damages on these and other grounds at summary judgment, trial, and on appeal.

Even if liability was established at trial, Plaintiffs would face the complexities inherent in proving damages to the jury.  There is no doubt that at trial the issue inevitably would involve a "battle of the experts." *Nasdaq III*, 187 F.R.D. at 476.  "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors . . . ." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985).  Thus, there is a risk that a jury might accept one or more of Defendants' damages arguments and award nothing at all or award less than the $81,000,000 that, if

approved, would be available to the Settlement Class under this settlement. "Indeed, the history

of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on

liability, but recovered no damages, or only negligible damages, at trial, or on appeal." *Nasdaq*

*III*, 187 F.R.D. at 476.

Put another way, there is no doubt that Credit Suisse, represented by experienced counsel,

would present sophisticated arguments to the Court at each step of the litigation and argue

against liability for *any* damages. When weighed against the risks of continued litigation, the

significant, immediate, and certain benefits to the Settlement Class weigh in favor of preliminary

approval.

5.   *The risks of maintaining a class action through trial*

Similarly, although Plaintiffs have presented extensive evidence which is more than

sufficient to establish that the case should be certified as a class action, the case is complex, and

the Court has not yet ruled on Plaintiffs' motion for certification. While Plaintiffs believe they

have amply demonstrated that Defendants' arguments in opposition to certification are incorrect,

there is no doubt that Defendants' papers represent a vigorous effort.

Certification can, of course, be reviewed and modified at any time. And the losing party

on class certification may petition the Circuit Court for permission to appeal. Thus, there is

some risk that the action might not be maintained as a class action through trial. *See Frank v.*

*Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that "[w]hile plaintiffs might

indeed prevail [on a motion for class certification], the risk that the case might be not certified is

not illusory"). This risk also weighs in favor of preliminary approval.

6.   *The ability of Credit Suisse to withstand a greater judgment*

"[I]n any class action against a large corporation, the defendant entity is likely to be able

to withstand a more substantial judgment, and, against the weight of the remaining factors, this

fact alone does not undermine the reasonableness of the instant settlement." *Weber v. Gov't Emps. Ins. Co.*, 262 F.R.D. 431, 447 (D.N.J. 2009). Here, the financial obligations the settlement imposes on Credit Suisse are substantial. Moreover, "the benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to withstand a larger judgment." *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008). This factor weighs in favor of preliminary approval.

> 7.   *The reasonableness of the settlement in light of the best possible recovery and attendant litigation risks*

The range-of-reasonableness factor weighs the relief provided in the settlement against the strength of the plaintiff's case, including the likelihood of obtaining a recovery at trial. This factor "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). In applying this factor "the Settlement must be judged 'not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987)).

Plaintiffs' experts Dr. Paul Asquith and Dr. Parag Pathak estimated recoverable damages to be in the range of $3.47 billion to $7.5 billion. Reply Expert Report of Paul Asquith & Parag Pathak Ex. C.15, ECF No. 470-2. Credit Suisse's proportional share of 13.5% of such a range would be $469 million to $1 billion, meaning the settlement is for approximately 8% to 17% of Credit Suisse's proportional share of Plaintiffs' estimated trial damages.

Of course, such a recovery against Credit Suisse would not be guaranteed given the risks of proving liability and damages. *See supra* § I.A.4. Defendants' attacks on Drs. Asquith and

Pathak's damages model in class certification papers demonstrate how vigorously Defendants can be expected to contest their ultimate damages estimates.  *See generally* Cert. Opp'n; Cert. Sur-Reply.  Moreover, Defendants attacked portions of Plaintiffs' class and the class period; were the Court to refuse to certify any part of the class, or reduce the class period, the recoverable damages would be substantially diminished.  *See supra* § I.A.5.

Given these risks and risks in the litigation generally, an 8% to 17% recovery on what amounts to a best-case range of estimated trial damages is an excellent result for the Settlement Class.  It is an especially good recovery given it is the first settlement so carries the additional value of "potentially helping to spur other parties to settlement."  *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 697 (S.D.N.Y. 2019); *see also In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 18-19 (D.D.C. 2019) (describing "discount" given to icebreakers).  Which is to say, Plaintiffs still hope to recover from other Defendants.  But even if Plaintiffs are unable to do so, as recognized by the Second Circuit, because of the riskiness of litigation, "[i]n fact there is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  *Grinnell*, 495 F.2d at 455 n.2.  Indeed, any failure to recover more from additional Defendants would only confirm, in hindsight, the risks of this litigation and thus the merit to this early settlement.  Credit Suisse's cooperation with trial witnesses also increases the value of the settlement.  *See GSE Bonds*, 414 F. Supp. 3d at 697.

Considering the risks and costs of continued litigation, the Credit Suisse Settlement Agreement provides excellent results for the Settlement Class.  *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("great weight is accorded to the

recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.")[7]

### C.  The Rule 23(e)(2) Factors Support Preliminary Approval of the Settlement

#### 1.  *Rule 23(e)(2)(A)—Plaintiffs and Co-Lead Counsel have adequately represented the Settlement Class*

Adequacy requires determining whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

As to Plaintiffs' adequacy, Plaintiffs are entities that borrowed and/or loaned securities as defined in the Settlement Class definition.  Brockett Decl. ¶ 6; SA ¶¶ 1.40, 1.45.  Where, as here, Plaintiffs and members of the Settlement Class share "an interest in proving the existence of Defendants' conspiracy" and "in maximizing the aggregate amount of classwide damages," the adequacy requirement is satisfied.  *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 513 (S.D.N.Y. 1996).  Plaintiffs have demonstrated their adequacy to serve by actively participating in the litigation and supervising Co-Lead Counsel.  For example, they have produced thousands of documents; responded to interrogatories and requests for admission; prepared and sat for 30(b)(6) depositions; reviewed pleadings and stayed apprised of case developments; and guided Co-Lead Counsel throughout the litigation.  Brockett Decl. ¶ 6; *see also* Opening Cert. Br. at 14-16; Reply Cert. Br. at 29-33.

As for Co-Lead Counsel, for more than four years, we have worked vigorously to investigate and prosecute this case—dedicating tens of thousands of hours and tens of millions of

---

[7] *See also AOL Time Warner*, 2006 WL 903236, at *13 (where settlement fund is in escrow earning interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").

dollars to its success.  We have significant experience successfully leading antitrust class actions

in this District and nationwide, recovering billions for plaintiffs and receiving numerous

accolades, from courts and in the form of various awards recognizing the quality of our work.

Brockett Decl. Exs. 2, 3.  Co-Lead Counsel have adequately represented the Settlement Class's

interests and should be appointed as Settlement Class Counsel.  *See* Rule 23(g); *Rosi v. Aclaris*

*Therapeutics, Inc.*, 2021 WL 5847420, at *4 (S.D.N.Y. Dec. 9, 2021) (finding class counsel

adequate for purposes of Rule 23(e)(2)(A) where counsel participated in discovery and motion

practice and also prepared documents in connection with settlement).

       2.    <u>Rule 23(e)(2)(B)—the Settlement Agreement was negotiated at arm's</u>
<u>length</u>

As discussed above, the Settlement Agreement is the product of arm's-length

negotiations.  *See supra* Section I.A.

       3.    <u>Rule 23(e)(2)(C)—the monetary relief is adequate</u>

Rule 23(e)(2)(C) asks the Court to consider whether the relief provided for the proposed

Settlement Class is adequate, taking into account four factors:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any
> proposed method of distributing relief to the class, including the method of
> processing class-member claims; (iii) the terms of any proposed award of
> attorney's fees, including timing of payment; and (iv) any agreement required to
> be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C)(i-iv).  Each factor supports preliminary approval.

***The costs, risks, and delay of trial and appeal***.  Plaintiffs discussed this factor above in

Sections I.B.1, I.B.3, I.B.4, and I.B.5.  The $81 million monetary payment (augmented by Credit

Suisse's required cooperation) represents a strong recovery, taking into account the potential

costs, risk, and delay associated with class certification, trial, and appeal.

***Effectiveness of the proposed method of distributing relief to the Settlement Class.*** This factor requires the Court to consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *GSE Bonds*, 414 F. Supp. 3d at 694.

As discussed above, Plaintiffs are not at this time asking the Court to review any proposed notice or allocation plans. Plaintiffs will move separately for preliminary approval of those plans before formal notice or any other steps are taken. Even if this factor were nonetheless found to still be relevant to the limited motion currently before the Court, Plaintiffs would need to show only a *likelihood* that the Court will be able to grant approval. *Payment Card*, 330 F.R.D. at 28 n.21. The basis for such a finding can be found in the Settlement Agreement, which requires Credit Suisse's assistance in the gathering of data and class member information (see SA ¶¶ 7.2, 10.5(a)), and outlines expectations for a standard process for receiving claim forms attested to under a penalty of perjury and subject to documentary audits (*see id.* ¶ 7.6), to be overseen by an industry-leading Settlement Administrator appointed by the Court (*see id.* ¶ 7.3). This process, to be detailed further when we move separately for preliminary approval of the notice and allocation plans, will be adequate to deter or defeat unjustified claims.

***The terms of any proposed award of attorneys' fees.*** Although the Settlement Agreement reserves Co-Lead Counsel's right to seek attorneys' fees, no set amount of fees or expenses is specified in the Settlement Agreement itself. Co-Lead Counsel will seek fees and expenses at an appropriate time, and Rule 23(h) requires the Court to vet the reasonableness of

18

Co-Lead Counsel's eventual request.  The Settlement Agreement contains no provisions that would permit Co-Lead Counsel to seek or receive unreasonable fees.

     ***Any agreement required to be identified under Rule 23(e)(3).***  This factor requires courts to consider "'any agreement required to be identified by Rule 23(e)(3),' that is, 'any agreement made in connection with the proposal.'"  *GSE Bonds*, 414 F. Supp. 3d at 696 (quoting Fed. R. Civ. P. 23(e)(2)(C)(iv) and 23(e)(3)).  Plaintiffs are not aware of the existence or terms of any agreement entered into between Plaintiffs and Credit Suisse bearing on the proposal other than the Settlement Agreement itself.  Though it is not clear they fall into Rule 23(e)(3), including because they already appear on the face of the Agreement itself, Plaintiffs in an abundance of caution note that (a) Credit Suisse has certain rights in the event that a material number of members of the Settlement Class opt out, *see* SA § 9, and (b) Plaintiffs have agreed to reduce any judgment entered into against the remaining Defendants in this Action, *see* SA ¶ 11.21.

        4.       <u>Rule 23(e)(2)(D)—the settlement treats Class members equitably relative to each other</u>

     This Rule 23(e)(2) factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(C-D) advisory committee's note to 2018 amendment.  The Settlement Agreement indisputably treats class-members "equitably."  The Settlement Agreement's release treats all members of the Settlement Class equitably relative to one another:  Subject to Court approval, all members of the Settlement Class will be giving Credit Suisse an identical release. And importantly, Credit Suisse's obligations are fixed—at $81 million.  The factor is thus met, as the settlement itself treats class members equitably.

To be clear, however, Plaintiffs will at a later date file a separate motion for preliminary approval for a plan of allocation that will provide further details as to how the net settlement fund will be distributed.  But the Settlement Agreement makes clear that even the eventual allocation plan will remain distinct from the terms of the Settlement Agreement itself.  SA ¶ 1.27.  Where the settlement terms are themselves set, as here, the Second Circuit has even approved of entering *final* approval of settlements without an allocation plan.  *See In re "Agent Orange" Prod. Liab. Litig. MDL No. 381*, 818 F.2d at 170 ("The prime function of the district court in holding a hearing on the fairness of the settlement is to determine that the amount paid is commensurate with the value of the case.  This can be done before a distribution scheme has been adopted so long as the distribution scheme does not affect the obligations of the defendants under the settlement agreement.").[8]  Here, at the preliminary approval stage, the question is only whether this Court will *likely* be able to approve the Settlement Agreement, making it all the more irrelevant that an allocation plan has not yet been proposed.

## II.   <u>THE SETTLEMENT CLASS SHOULD BE CERTIFIED</u>

A court may certify a settlement class where the proposed settlement class satisfies the requirements for Rule 23(a) as well as one of the three subsections of Rule 23(b).  *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012).  The proposed Settlement Class meets these requirements.

---

[8] *See also Nasdaq III*, 187 F.R.D. at 480; 2 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 6:23 (18th ed. 2021) ("Because court approval of a settlement as fair, reasonable and adequate is conceptually distinct from the approval of a proposed plan of allocation, however, courts frequently approve them separately.").

### A.     The Requirements of Rule 23(a) Are Satisfied

####     1.     *The Settlement Class satisfies the numerosity requirement*

In cases like this one involving widely traded financial instruments, the Rule 23(a)(1)

numerosity requirement is readily satisfied.  *See Wallace v. IntraLinks*, 302 F.R.D. 310, 315

(S.D.N.Y. 2014).  Co-Lead Counsel estimate that there are thousands of members of the

proposed Settlement Class.  *See* Opening Cert. Br. at 12.

####     2.     *There are questions of law and fact common to all Settlement Class members*

Rule 23(a)(2)'s commonality requirement is satisfied if at least one question exists that is

"capable of classwide resolution—which means that determination of its truth or falsity will

resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart*

*Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Courts routinely hold commonality exists in

antitrust claims where "allegations of the existence of . . . conspiracy are susceptible to common

proof."  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir.

2007).  This case requires resolution of common questions relating to the existence, scope, and

effectiveness of the alleged conspiracy, as well as common questions related to whether

Plaintiffs and Settlement Class members suffered injury in fact and the appropriate measure of

class-wide damages.  *See* Opening Cert. Brief at 12.  As such, commonality exists under Rule

23(a)(2).

####     3.     *Plaintiffs' claims are typical of those of the Settlement Class*

Rule 23(a)(3) requires that, "the claims or defenses of the representative parties are

typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  This requirement is

satisfied when, "each [class] member's claim arises from the same course of events, and each

class member makes similar legal arguments to prove the defendant's liability."  *In re Elec.*

*Books Antitrust Litig.*, 2014 WL 1282293, at *12 (S.D.N.Y. Mar. 28, 2014) (quoting *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010)).  Typicality is "not highly demanding," *Dial Corp. v. News Corp.*, 314 F.R.D. 108, 113 (S.D.N.Y. 2015), and is easily satisfied in antitrust cases alleging a conspiracy in violation of Section 1 of the Sherman Act which aim to prove "a conspiracy, its effectuation, and damages therefrom," *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 111 (S.D.N.Y. 2010) (collecting cases).  Plaintiffs allege Defendants conspired to prevent the adoption of exchange trading in the stock loan market, ensuring that the market remained opaque and causing Plaintiffs and members of the Settlement Class to pay more to borrow, or receive less to loan, their stocks.  Accordingly, the typicality requirement is satisfied. *See* Opening Cert. Br. at 12-14.

### 4.    *The Settlement Class is fairly and adequately represented*

As discussed in Section I.C.1, *supra*, Plaintiffs and Co-Lead Counsel have fairly and adequately represented the Settlement Class as required by Rule 23(a)(4).

### B.    **The Requirements of Rule 23(b)(3) Are Satisfied**

Rule 23(b)(3) permits a case to be litigated as a class action if (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Both requirements are met here.

### 1.    *Common questions of law and fact predominate*

"The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).  Plaintiffs need not show that "each element of [their] claim[s] is susceptible to classwide proof." *In re Petrobras Sec.*, 862 F.3d 250, 268 (2d Cir. 2017) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr.*

22

*Funds*, 568 U.S. 455, 469 (2013)).  Rather, predominance exists where the questions that are capable of common proof are "more substantial than the issues subject only to individualized proof."  *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015).

Predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Id.*  "Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *accord Am. Int'l Grp.*, 689 F.3d at 240; *see also* 6 William B. Rubenstein, *Newberg on Class Actions* § 20:25 (5th ed. 2021) ("Courts will generally certify for class treatment those group boycott claims that trigger a *per se* test.").  Here, each element of Plaintiffs' claims—collusion, causation, impact, and damages—would be proven through common evidence.  *See* Opening Cert. Br. at 16-50; Reply Cert. Br. at 4-29.  As the number and magnitude of the issues subject to class-wide resolution dwarf any individualized inquiries presented in this case, predominance is satisfied.

### 2.   *A class action is the superior method for resolving this case*

Finally, a case satisfies the superiority test if "the class device will achieve economies of scale, conserve judicial resources, preserve public confidence in the integrity of the judicial system by avoiding the waste and delay of repetitive proceedings, and prevent inconsistent adjudications of similar claims."  *Chhab v. Darden Rests., Inc.*, 2016 WL 3004511, at *3 (S.D.N.Y. May 20, 2016).  Superiority "is an 'explicitly comparative' inquiry, requiring the court to consider alternatives to class settlement."  *GSE Bonds*, 414 F. Supp. 3d at 702 (quoting *In re*

*Petrobras Secs.*, 862 F.3d at 268).[9]  Where, as here, the significant cost of prosecuting the case would render individual litigation uneconomical for many plaintiffs, proceeding as a class is the superior to alternative methods of resolution.  *See Elec. Books*, 2014 WL 1282293, at *23; *see also* Opening Cert. Br. at 49-50; Reply Cert. Br. at 33-34.  Moreover, the sheer size of the geographically disbursed Settlement Class, which contains thousands of members, renders resolution as a class superior.  *See GSE Bonds*, 414 F. Supp. 3d at 702.

### C.   Quinn and Cohen Should Be Appointed As Counsel for the Settlement Class

"An order that certifies a class action . . . must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B).  For the reasons discussed in Section I.C.1, *supra*, Plaintiffs request that Quinn Emanuel Urquhart & Sullivan, LLP and Cohen Milstein Sellers & Toll PLLC be appointed as counsel for the Settlement Class.

## III.   APPOINTMENT OF ESCROW AGENT, SETTLEMENT ADMINISTRATOR, AND RELATED RELIEF

As part of the Preliminary Approval Order, Plaintiffs seek the Court's preliminary approval of Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Settlement Administrator.  *See* Preliminary Approval Order ¶ 12.  Epiq is a nationally-recognized settlement administrator with a wealth of experience in administering settlements involving complex financial instruments, including credit default swaps, interest rate swaps and derivatives, and foreign exchange contracts.  *See* Brockett Decl. Ex. 4.

Plaintiffs also ask that the Court approve the appointment of The Huntington National Bank ("Huntington") as the Escrow Agent.  *See* Preliminary Approval Order ¶ 13.  Huntington is part of Huntington Bancshares, Inc., which is a large bank holding company and listed among

---

[9] In the settlement context, the superiority inquiry does not require analysis of the manageability of case at trial.  *See Amchem Prods.*, 521 U.S. at 620.

the S&P 500.  Huntington's National Settlement Team is one of the leading settlement account programs in the country and has handled escrow accounts in countless class action settlements. The Court should further approve the Settlement Fund as Qualified Settlement Funds ("QSFs") pursuant to Internal Revenue Code § 468B and related Treasury Regulations. *See* Preliminary Approval Order ¶ 14.

Finally, Plaintiffs ask that the Court approve disbursements from the Settlement Fund for purposes of paying costs (other than attorneys' fees) incurred in preparing and providing the Settlement Class Notice and paying other administrative expenses, including notice and administration expenses incurred by the Claims Administrator up to $3.5 million prior to the Effective Date.  *See* Preliminary Approval Order ¶¶ 15-17.[10]  Such funds are not recoverable if the settlement is terminated or does not become final.  *Id.* ¶ 15.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Preliminary Approval of the Settlement with Credit Suisse and enter the Preliminary Approval Order appointing the Escrow Agent and Settlement Administrator, and authorizing payment of certain administrative fees.

---

[10] Prior to the Effective Date, the settlement provides that Co-Lead Counsel may pay up to $2,500,000 in notice and administration fees from the Settlement Fund without approval of Credit Suisse, with an upper limit of $3,500,000.  *See* SA § 3.10.  After the Effective Date there are no limitations on Co-Lead Counsel's use of the Settlement Fund to pay reasonable and necessary notice and administration fees.  *Id.*

DATED: February 11, 2022

Respectfully submitted,

**COHEN MILSTEIN SELLERS & TOLL PLLC**

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: */s/ Michael B. Eisenkraft*
Michael B. Eisenkraft
Christopher J. Bateman
David O. Fisher
88 Pine Street, 14th Floor
New York, New York 10005
Telephone: (212) 838-7797
meisenkraft@cohenmilstein.com
cbateman@cohenmilstein.com
dfisher@cohenmilstein.com

Julie G. Reiser (*pro hac vice*)
Richard A. Koffman (*pro hac vice*)
Kit A. Pierson (*pro hac vice*)
Emmy L. Levens (*pro hac vice*)
Daniel McCuaig (*pro hac vice*)
Robert W. Cobbs (*pro hac vice*)
1100 New York Ave NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
jreiser@cohenmilstein.com
rkoffman@cohenmilstein.com
kpierson@cohenmilstein.com
elevens@cohenmilstein.com
dmccuaig@cohenmilstein.com
rcobbs@cohenmilstein.com

By: */s/ Daniel L. Brockett*
Daniel L. Brockett
Sascha N. Rand
Steig D. Olson
Deborah K. Brown
Daniel P. Mach
David LeRay
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
danbrockett@quinnemanuel.com
sascharand@quinnemnuel.com
steigolson@quinnemanuel.com
deborahbrown@quinnemanuel.com
danielmach@quinnemanuel.com
davidleray@quinnemanuel.com

Jeremy D. Andersen (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
jeremyandersen@quinnemanuel.com

**SAFIRSTEIN METCALF LLP**

Peter Safirstein
1345 Avenue of the Americas, 2nd Floor
New York, New York 10105
Telephone: (212) 201-2845
psafirstein@safirsteinmetcalf.com

*Counsel for Plaintiffs*