February 23, 2022

**VIA ECF**

Honorable Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007

Re:   *Iowa Pub. Emps.' Ret. Sys. et al. v. Bank of Am. Corp. et al.*, No. 17-cv-6221 (KPF-SLC)

Dear Judge Failla:

Plaintiffs respectfully move to reopen discovery for the limited purpose of serving three spoliation-related interrogatories on JPMorgan.  As set forth below, this is warranted because of recent government disclosures that indicate that JPMorgan and its counsel misled Plaintiffs about potential sources of relevant evidence and that JPMorgan may have destroyed relevant evidence while this lawsuit was ongoing.

On December 17, 2021, Plaintiffs learned, through orders released by the Securities and Exchange Commission ("SEC") and the Commodity Futures Trading Commission ("CFTC"), about the "widespread and longstanding failure of [Defendant] JPMorgan employees throughout the firm, including those at senior levels," to adhere to essential recordkeeping requirements.[1] According to the orders, "JPMorgan employees often communicated about securities business matters on their *personal devices, using text messaging applications* (including WhatsApp) and personal email accounts," and, because of JPMorgan's failure to track those communications, "*[n]one of these records was preserved by the firm*."[2]  This misconduct  "was *firm-wide*, and involved employees at all levels of authority."[3]  Because of JPMorgan's misconduct, the SEC "was often deprived of timely access to evidence and potential sources of information for extended periods of time and, in some instances, permanently."[4]

Plaintiffs were surprised by the agencies' findings because they are inconsistent with JPMorgan's discovery representations in this litigation and in *In re: Interest Rate Swaps Antitrust Litigation*.[5]  In these cases, JPMorgan's counsel represented that text messages and communications on its employees' personal devices were not an appropriate source of discovery because its personnel were not permitted to use them.

---

[1] In re J.P. Morgan Sec. LLC, Exchange Act Release No. 93807, 2021 WL 5986789, at 2 (Dec. 17, 2021) ("SEC Order") (Exhibit 1); *see also* In re JPMorgan Chase Bank, N.A., CFTC No. 22-07, 2021 WL 6098347 (Dec. 17, 2021) ("CFTC Order") (Exhibit 2).  All emphasis added unless otherwise noted.

[2] SEC Order at 2.

[3] *Id.*

[4] *Id.* 2-3.

[5] Plaintiffs have filed a similar letter motion in *In re: Interest Rate Swaps Antitrust Litig.*, No. 16-md-02704-JPO (S.D.N.Y. June 3, 2016) (hereinafter "*Interest Rate Swaps*").

February 23, 2022
Page 2

On February 23, 2018, JPMorgan's counsel wrote to Cohen Milstein and Quinn Emanuel attorneys, regarding discovery of text messages and other communications on the personal devices of the *Interest Rate Swaps* custodians, that "JPMorgan does not permit its employees to use them in the course of their employment."[6] That representation was plainly untrue or, at the very least, highly deceptive and misleading. While it may have been true that JPMorgan held itself out as having a policy prohibiting the use of such communications and devices, the SEC and CFTC have made clear that the policy was honored only in the breach, and that all levels of the organization were using text messaging applications and personal email accounts to communicate about the securities lending business. If JPMorgan's counsel knew (or became aware of) these facts, it was grossly misleading to maintain that JPMorgan did "not permit" its personnel to do what, it appears, many of its personnel were doing.

Relatedly, on March 12, 2019, JPMorgan's counsel refused to provide the same Cohen Milstein and Quinn Emanuel attorneys phone logs for all of the *Stock Loan* custodians because "investigating and excavating any available phone logs data . . . would be an extraordinarily expensive and time-intensive endeavor."[7] It now appears, however, that at this very time, business-related communications on its employees' phones were being regularly destroyed. Again, the failure to disclose these facts was, at a minimum, highly misleading.

Plaintiffs wrote JPMorgan on December 23, 2021, explaining their concerns and asking questions to determine whether any relevant documents were destroyed.[8] JPMorgan responded on January 12, 2022, declining to answer any of Plaintiffs' questions and instead arguing that its statements were not misleading or untruthful.[9] Plaintiffs responded on January 26, where we further explained that our negotiations were tainted by JPMorgan's undisclosed, widespread document retention failures and its counsel's false and misleading statements.[10]

On January 26, Plaintiffs also provided JPMorgan with three interrogatories designed to help Plaintiffs determine the extent to which discovery in this litigation was affected by JPMorgan's widespread and systematic record-keeping violations and lack of candor.[11] Plaintiffs explained that JPMorgan could either accept service of these interrogatories and respond appropriately or, in lieu of sworn discovery responses, substantially respond to Plaintiffs' December 23, 2021 questions.[12] Although JPMorgan promised that it would respond to those questions, it has not done so.[13] Instead, JPMorgan's February 9 response directed

---

[6] Feb. 23, 2018 Email from K. Cholera to W. Sears (copying, *inter alia*, M. Eisenkraft and D. Brockett) (Exhibit 3).

[7] Mar. 12, 2019 Email from K. Cholera to M. Meadows (copying, *inter alia*, M. Eisenkraft and D. Brockett) (Exhibit 4).

[8] Dec. 23, 2021 Letter from D. Brockett and M. Eisenkraft to R. Wick (Exhibit 5).

[9] Jan. 12, 2022 Letter from R. Wick to D. Brockett and M. Eisenkraft (Exhibit 6).

[10] Jan. 26, 2022 Letter from D. Brockett and M. Eisenkraft to R. Wick (Exhibit 7).

[11] Pls.' First Set of Interrogatories to JPMorgan, dated Jan. 26, 2022 (Exhibit 8).

[12] Jan. 31, 2022 Letter from D. Brockett and M. Eisenkraft to R. Wick (Exhibit 9). JPMorgan has refused to accept service of the Interrogatories.

[13] Feb. 3, 2022 Email from C. Weiland to D. Fisher (Exhibit 10); *see also*, Feb. 3, 2022 Email from D. Fisher to C. Weiland and R. Wick (Exhibit 11); Feb. 18, 2022 Email from C. Weiland to D. Fisher (Exhibit 12).

Plaintiffs back to JPMorgan's and its counsel's own statements during discovery, which beg the very questions JPMorgan has refused to answer.[14]

Thus, after more than eight weeks of written negotiations and a meet-and-confer over video conference, Plaintiffs still have no understanding of whether business-related communications existed on the personal devices, email, or other messaging services of JPMorgan custodians in this matter or what efforts, if any, JPMorgan took to collect, search, and recover such communications.[15] The Parties have therefore reached impasse on this issue.

There is good cause to reopen discovery for the limited purposes of investigating JPMorgan's potential spoliation.[16] While the discovery period ended in October 2020, no trial date or summary judgment briefing schedule has been set.[17] Plaintiffs first learned of JPMorgan's document retention failures when the SEC and CFTC Orders were released on December 17, 2021, and acted diligently in contacting JPMorgan to learn whether those failures may have affected discovery. Business-related communications on personal devices are particularly likely to be relevant in this case, as the Prime Broker Defendants often used personal devices and messaging services to plan and carry out the alleged conspiracy.[18] Finally, Plaintiffs' narrow, targeted interrogatories are no broader than necessary to uncover relevant information regarding any potential spoliation.[19]

Plaintiffs therefore respectfully request an informal conference on this issue pursuant to Rule 3(C) of this Court's Individual Rules. Plaintiffs also request that this Court issue an order reopening discovery and requiring JPMorgan to respond to Plaintiffs' First Set of Interrogatories on JPMorgan, enclosed as Exhibit 8 herein. Plaintiffs will inform the Court whether, in light of JPMorgan's answers, additional discovery or other action on the issue becomes necessary.

---

[14] Feb. 9, 2022 Letter from R. Wick to D. Brockett and M. Eisenkraft (Exhibit 13).

[15] JPMorgan's silence is especially curious considering that it provided some of the same information requested in *Interest Rate Swaps*. *See* Feb. 18, 2022 Letter from R. Wick to M. Eisenkraft (Exhibit 14) (noting that one custodian recalled using a personal messaging platform "to communicate about . . . IRS trading platforms during the discovery period").

[16] Fed. R. Civ. P. 16(b); *Bakalar v. Vavra*, 851 F. Supp. 2d 489, 493 (S.D.N.Y. 2011) (listing six factors for good-cause standard, including, *inter alia*, "whether trial is imminent . . . whether the moving party was diligent in obtaining discovery within the guidelines established by the court . . . and . . . the likelihood that the discovery will lead to relevant evidence"); *see also Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) ("A finding of good cause [under Rule 16(b)] depends on the diligence of the moving party."); *Jeannite v. City of N.Y. Dep't of Bldgs.*, No. 09 Civ. 3464 (DAB)(KNF), 2010 WL 2542050, at *2 (S.D.N.Y. June 21, 2010) (listing five elements in addition to the moving party's diligence).

[17] Fourth Am. Civil Case Management Plan & Scheduling Order, May 26, 2020, ECF No. 298; *Rivera v. United Parcel Serv.*, 325 F.R.D. 542, 548 (S.D.N.Y. 2018) (reopening discovery appropriate where "fact discovery has closed, [but] no summary judgment schedule has been ordered, and no trial date has been set").

[18] *See, e.g.*, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Bloomberg chat between ▓▓▓▓▓ and ▓▓▓▓▓▓▓▓▓ discussing ▓▓▓▓▓▓▓▓); ▓▓▓▓▓▓▓▓▓ (Email referencing cell phone call between ▓▓▓▓▓▓▓▓▓▓▓▓▓▓).

[19] *See Hawley v. Mphasis Corp.*, 302 F.R.D. 37, 53 (S.D.N.Y. 2014) (reopening discovery for 30 days for spoliation discovery).

Respectfully submitted,

*/s/ Michael B. Eisenkraft*  /s/ *Daniel L. Brockett*

Michael B. Eisenkraft
COHEN MILSTEIN SELLERS & TOLL PLLC

Daniel L. Brockett
QUINN EMANUEL URQUHART & SULLIVAN, LLP