UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IOWA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, *et al.*,<br><br>Defendants. | No. 17 Civ. 6221 (KPF) (SLC) |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR LIMITED OBJECTION TO PART IV.D OF MAGISTRATE JUDGE CAVE'S REPORT AND RECOMMENDATION**

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...............................................................................................................1

ARGUMENT ..............................................................................................................................................2

I.  Plaintiffs Did Not Waive Their Right To Seek Post-2017 Damages..................................2

II. The R&R Already Found That Plaintiffs Satisfied Their Rule 23 Burden.........................3

III. Defendants' Self-Interested Arguments About Burden And Delay Lack Merit..................5

    A.  Defendants' Supplemental Productions Will Not Introduce Delay .........................6

    B.  Plaintiffs Have Been Diligent In Seeking Supplemental Transactional Data..........9

IV. Plaintiffs Did Not Waive Their Arguments That The Class Period Should End In December Or November Of 2017......................................................................................10

CONCLUSION.........................................................................................................................................10

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Borger v. Yamaha Int'l Corp.*,
  625 F.2d 390 (2d Cir. 1980) ............................................................................................. 7

*Everlight Elecs. Co. v. Nichia Corp.*,
  2015 WL 412184 (E.D. Mich. Jan. 30, 2015) ................................................................. 6

*Hart v. Rick's NY Cabaret Int'l, Inc.*,
  2013 WL 11272536 (S.D.N.Y. Nov. 18, 2013) ...................................................... 4, 5, 8

*Hines v. Equifax Info. Servs.*,
  2022 WL 2841909 (E.D.N.Y. July 16, 2022) .................................................................. 4

*In re Ikon Office Sols., Inc.*,
  191 F.R.D. 467 (E.D. Pa. 2000) ....................................................................................... 4

*In re Int. Rate Swaps Antitrust Litig.*,
  2019 WL 1147149 (S.D.N.Y. Mar. 13, 2019) ................................................................. 9

*Lopez Espiritu v. Hartman*,
  2020 WL 93891 (E.D.N.Y. Jan. 8, 2020) ...................................................................... 10

*Magadia v. Wal-Mart Assocs., Inc.*,
  384 F. Supp. 3d 1058 (N.D. Cal. 2019), *rev'd & vacated on other grounds*,
  999 F.3d 668 (9th Cir. 2021) ........................................................................................... 3

*Merryman v. Citigroup, Inc.*,
  2018 WL 1621495 (S.D.N.Y. Mar. 22, 2018) ................................................................. 6

*N. Am. Soccer League v. Nat'l Football League*,
  1984 WL 726 (S.D.N.Y. Aug. 8, 1984) ........................................................................... 5

*Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*,
  473 F. Supp. 2d 365 (E.D.N.Y. 2007) ............................................................................. 3

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015) ............................................................................................ 4

*Smith v. United States*,
  568 U.S. 106 (2013) ......................................................................................................... 7

*Thomas v. FTS USA, LLC*,
  2017 WL 1148283 (E.D. Va. Jan. 9, 2017), *report and recommendation adopted*,
  2017 WL 1147460 (E.D. Va. Mar. 27, 2017) .................................................................. 5

*In re Urethane Antitrust Litig.*,
  768 F.3d 1245 (10th Cir. 2014) ........................................................................................... 5

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
  401 U.S. 321 (1971) .................................................................................................... 1, 2, 3

## Rules and Regulations

Fed. R. Civ. P. 23 ................................................................................................................ 1, 3, 4

Fed. R. Civ. P. 26 ........................................................................................................................ 6

## Other Authorities

Reporting of Securities Loans, 86 Fed. Reg. 69802 (Dec. 8, 2021) ............................................. 9

## TABLE OF RECORD CITATION ABBREVIATIONS

| Abbreviation | Full Description |
|---|---|
| A&P Rpt. | Expert Report of Paul Asquith and Parag Pathak in Support of Plaintiffs' Motion for Class Certification (ECF No. 414-10) |
| Hr'g Tr. | Transcription of oral argument held before Magistrate Judge Cave on April 28, 2022 (ECF No. 559-1) |
| Ltd. Obj. | Plaintiffs' Limited Objection to Part IV.D of Magistrate Judge Cave's Report and Recommendation (ECF No. 573) |
| Pls.' Rebuttal Slides | Plaintiffs' Rebuttal Oral Argument Slides (ECF No. 556-2) |
| Pls.' Reply | Reply Memorandum of Law in Further Support of Plaintiffs' Motion for Class Certification (ECF No. 469) |
| Resp. | Defendants' Response to Plaintiffs' Limited Objection to Part IV.D of Magistrate Judge Cave's Report and Recommendation (ECF No. 595) |
| R&R | Report and Recommendation of Magistrate Judge Cave regarding Class Certification (ECF No. 563) |
| ▓▓▓ Tr. | Transcription of the deposition of ▓▓▓ taken on October 15, 2020 (ECF 432-39) |

## PRELIMINARY STATEMENT

Plaintiffs filed this limited objection because, to the extent the R&R can be read to suggest that the Class cannot attempt to prove damages after 2017, it should be clarified. If the Class proves at trial that Defendants conspired to block and boycott new offerings in the U.S. Stock Loan market, then settled law provides that those Class members can seek to recover the *full* amount of damages they suffered, including any accruing after 2017. The policies underlying the antitrust laws (full compensation and effective deterrence) require this result.

Defendants argue that the Class's damages should be cut off in 2017 because they have not produced transactional data or other discovery beyond 2017. They further argue that Plaintiffs should be forbidden from seeking any further data and discovery at this point, even though the damages phase of the case has not been scheduled nor has a trial date been set. But Defendants do not even try to reconcile their arguments with the leading Supreme Court authority on antitrust damages (*Zenith Radio*; *see infra* § I) or the public policies underlying the antitrust laws. Rather, they base their arguments on (i) clear misstatements of the law regarding the application of class-certification standards to damages models, (ii) exaggerated claims about the burden of litigating post-2017 damages, and (iii) meritless procedural objections.

*First*, Defendants argue that Plaintiffs cannot satisfy Rule 23 specifically for the post-2017 time period without additional discovery. This argument is meritless. Judge Cave has already found that *this Class* satisfies all of the requirements of Rule 23, and none of those findings turn on the precise temporal scope of the Class's damages claims, which will be decided at trial. At the class-certification stage, Plaintiffs do not have to prove damages over any time period, much less have all of the discovery necessary to prove the full scope of their ultimate damages claims. Defendants are unable to cite any authority supporting their position and resort to misstating the holdings of the two district court decisions they cite.

1

*Second*, Defendants argue that producing any more data or discovery would be too "onerous" and would "delay" the case. These arguments are overblown. The Court would not need to extend *a single deadline* in the existing case schedule for the parties to supplement discovery to address post-2017 damages. As noted, the schedule for submitting merits reports has not even been set. Moreover, the modest burdens of producing post-2017 data are vastly outweighed by the importance of what is at stake. Defendants must not be allowed to retain ███████████ of conspiratorial profits if they lose at trial. A focused period for supplemental discovery can avoid this result and ensure that victims are properly compensated.

*Third*, Defendants argue that Plaintiffs did not raise this issue at the right time or in the right way. But Plaintiffs have been clear at every step of the case that Defendants' conspiracy has caused ongoing harm and that Plaintiffs would seek supplemental data to update the Class's damages calculations as a result. Moreover, this issue can be addressed most efficiently at this very stage. Assuming the Court adopts the R&R and certifies the Class, the parties can then focus on what is necessary to update the damages calculations *for that certified Class*. The existing schedule allows for this. And doing so is what justice demands.

## ARGUMENT

**I.     Plaintiffs Did Not Waive Their Right To Seek Post-2017 Damages**

Defendants do not contest the basic legal issue raised in Plaintiffs' objection: that class members can recover antitrust damages accruing after the end of a class period. Resp. at 6. Instead, they assert that Plaintiffs "waived" the ability to pursue these damages because they claim this legal proposition "was not presented to Judge Cave." Resp. at 5, 8. This is backwards. Plaintiffs did not argue this point because we had no reason to believe this settled principle was in dispute. It is a basic principle of antitrust law that "if a plaintiff feels the adverse impact of an antitrust conspiracy on a particular date, a cause of action immediately

2

accrues to him to recover all damages incurred by that date *and all provable damages that will flow in the future from the acts of the conspirators on that date*." *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 339 (1971) (emphasis added).  And it is a basic principle of class action litigation that "damages in a class action do not have to terminate at the date of class certification." *Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058, 1105 (N.D. Cal. 2019), *rev'd & vacated on other grounds*, 999 F.3d 668 (9th Cir. 2021).

Defendants did not argue otherwise before Judge Cave, and it was unclear to us whether the R&R actually intended to limit the ability of Class members to seek the full scope of damages to which they are legally entitled.  Plaintiffs properly submitted this limited objection to ensure the R&R is not misinterpreted or later applied in a way that would violate *Zenith Radio* by barring the Class's ability to seek damages that accrued after 2017.[1]

## II.   The R&R Already Found That Plaintiffs Satisfied Their Rule 23 Burden

Defendants next argue (Resp. § I.B) that, without additional discovery, Plaintiffs cannot satisfy Rule 23 for the post-2017 time period.  Not so—Judge Cave already found that *this Class* satisfies Rule 23, because, among other things, "the question whether Defendants engaged in an antitrust conspiracy that caused class-wide impact and damages is a question 'common to the class and capable of resolution through common proof.'"  R&R at 37.

The Court can clarify that the Class can seek damages accruing after 2017 without disturbing this finding in any way.  Acknowledging that the certified Class can seek post-2017

---

[1]   Defendants falsely assert that "Plaintiffs stated that class members could seek damages *only* during the class period."  Resp. at 7.  But Plaintiffs stated only that extending the Class Period through 2021 was one path towards recovering post-2017 damages.  *See, e.g.*, Pls.' Reply at 34-35; *see also, e.g., Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 473 F. Supp. 2d 365, 367 (E.D.N.Y. 2007) (district court deciding "an issue that was not decided in the R & R itself but was raised in the parties' objections and supplemental briefing, namely, whether any remaining damages issues in this case should be tried to the Court or to a jury").

3

damages has no bearing on liability or impact: the same Class members would be recovering damages attributable to the same conspiracy, and no new Class members would be added to the Class (and thus no new impact questions arise). Moreover, as to damages, the R&R already held that "Plaintiffs have succeeded in showing [] the availability of a reliable, formulaic model that they have used to [calculate] class-wide damages at the class certification stage, and will deploy to calculate Class Members' damages at the damages stage of the case." R&R at 56. That model remains available for the Class, and can be applied to post-2017 data as well. A&P Rpt. ¶ 532.[2]

Defendants nonetheless argue that Plaintiffs must re-litigate class certification as to post-2017 damages specifically. They cannot, however, cite any cases supporting this argument. They claim, "[i]mportantly here, a plaintiff's Rule 23(b)(3) burden must be satisfied for the entire period for which damages are sought." Resp. at 6. But the two district court cases they cite say no such thing, and one even undercuts their argument. *Hart v. Rick's NY Cabaret International, Inc.*, 2013 WL 11272536 (S.D.N.Y. Nov. 18, 2013), a FLSA case, and *In re Ikon Office Solutions, Inc.*, 191 F.R.D. 467 (E.D. Pa. 2000), an ERISA case, held only that class periods must have a definite end date. That has no relevance here, as Plaintiffs do not seek an open-ended class period. Notably, however, in *Hart* itself, the court certified a class period

---

[2] Even if it were the case (and it is not) that the post-2017 time period would raise any individualized damages issues, that is irrelevant. "[I]t is well-established in this Circuit that individualized damages determinations alone cannot preclude certification under Rule 23(b)(3), and proponents of class certification need not rely upon a class-wide damages model to demonstrate predominance." *Hines v. Equifax Info. Servs.*, 2022 WL 2841909, at *20 n.11 (E.D.N.Y. July 16, 2022) (internal quotation marks omitted); *accord Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015) ("*Comcast*, then, did not hold that a class cannot be certified under Rule 23(b)(3) simply because damages cannot be measured on a classwide basis.").

ending almost *two years after* the date of the class certification decision without requiring any separate Rule 23(b)(3) inquiry into that later time period. *Hart*, 2013 WL 11272536, at *5.

Even if Defendants do not produce any more data, Plaintiffs should be able to present expert reports during the next phase of the litigation estimating post-2017 damages for the Class using whatever data is available. Plaintiffs' experts have described a back-up extrapolation analysis that takes this approach. Despite Defendants' attacks (Resp. § I.B.3), this analysis easily meets the low bar applying to antitrust damages in the absence of more detailed data. *See* Ltd. Obj. at 10-11 (citing, among others, *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1256-57 (10th Cir. 2014) (affirming class-action verdict where plaintiffs' expert used statistical extrapolation "to approximate damages.")).

### III. Defendants' Self-Interested Arguments About Burden And Delay Lack Merit

Defendants' claims that further discovery would be "onerous" or would cause "delay" are disingenuous. Resp. at 8, 19-22. Providing for a short period of supplemental discovery will not require the Court to change a single date in the case schedule. While Plaintiffs want to move this case toward trial, we have a fiduciary obligation to "act to maximize recovery for the class at all times." *Thomas v. FTS USA, LLC*, 2017 WL 1148283, at *3 (E.D. Va. Jan. 9, 2017), *report and recommendation adopted*, 2017 WL 1147460 (E.D. Va. Mar. 27, 2017).[3] And, as noted, our efforts are supported by the law and public policy.

Defendants argue that we should have sought a supplemental production of transactional data at some earlier time. Resp. at 17-19. Defendants go so far as to argue that we should have

---

[3] Because of this obligation, we would have to consider a new lawsuit if damages are artificially cut off in this one. Defendants do not acknowledge the inefficiency that would arise if this choice were forced upon us or distinguish *N. Am. Soccer League*, which explains why denying supplementation can lead to wasteful duplicative actions. Ltd. Obj. at 8 n.4.

done the impossible, faulting us for not seeking 2021 and 2022 transaction records "before the close of fact discovery." Resp. at 9. But fact discovery closed in May 1, **2020**. In fact, it makes perfect sense, and is most efficient, to address the Class's need for additional transactional data to update damages calculations *after* the Class is certified and its membership defined.

Defendants also claim that Plaintiffs "cannot show 'good cause' to reopen fact discovery." Resp. at 17. First, no "good cause" must be shown—Defendants must supplement their discovery productions in accordance with Rule 26(e)(1) of the Federal Rules of Civil Procedure. Ltd. Obj. at 12-14. Defendants have no response to the on-point *Everlight Electronics Co.* decision,[4] but instead cite *Merryman* for the proposition that there is a duty to supplement "only if an existing disclosure is deficient." Resp. at 22-23. *Merryman* in fact says the opposite: "Disclosures under Rule 26(e) are continuing—they do not end when fact discovery closes." *Merryman v. Citigroup, Inc.*, 2018 WL 1621495, at *19 (S.D.N.Y. Mar. 22, 2018). Nonetheless, the additional discovery is necessary to ensure that, if the jury finds Defendants conspired, Defendants will not get to keep ▓▓▓▓▓▓▓▓▓▓ in conspiratorial profits, but instead will fully compensate their victims. That is "good cause" in spades.

### A. Defendants' Supplemental Productions Will Not Introduce Delay

Defendants argue (Resp. § I.C.2) that it will take them many months to produce supplemental data. But the parties have already worked through the laborious process of identifying the relevant databases and fields. Now that the scope and methods of data extraction have been established, generating incremental productions with the same specifications can proceed on an expedited basis. Ltd. Obj. at 12.

---

[4] Defendants claim certain of Plaintiffs' Rule 26(e)(1) authorities are distinguishable in that the parties there did not agree to "limit the scope of productions to a discrete period of time." Resp. at 23 n.3. The parties here also did not agree to limit the scope of productions. Ltd. Obj. 13-14.

Defendants also argue that "additional transactional data is only the tip of the iceberg" and that updating damages will require a broad reopening of discovery. Resp. at 9. Not true. As Defendants recognize (Resp. at 8), Plaintiffs have two independent theories for recovering post-2017 damages: (1) even if the conspiracy ended by 2017, its lingering effects continued to harm Class members thereafter, or (2) Defendants' group boycott continued beyond 2017.

The first of these (lingering effects) does not require Plaintiffs to prove that the conspiracy continued after 2017. At trial, Plaintiffs will prove that the very purpose of Defendants' boycott of AQS and other platforms was to have long-lasting effects—to preserve a "bilateral" market so Defendants could continue to charge inflated intermediary spreads. Even if Defendants did not actively maintain their conspiracy after December 31, 2017, because they had neutralized the most serious threats, damages would continue to flow from it. *See* Ltd. Obj. at 7 (citing case law). And Plaintiffs' experts can estimate the ongoing damages flowing from Defendants' conspiracy without any further liability-related discovery. Meanwhile, Defendants can produce whatever limited set of materials they think debunk this theory (if any).

As to the second theory, "a defendant's membership in the ongoing unlawful scheme continues until he withdraws." *Smith v. United States*, 568 U.S. 106, 107 (2013). No Defendant has proffered evidence of its withdrawal from the conspiracy. Defendants claim that Plaintiffs cannot point to any new "overt acts" after 2017. Resp. at 11-13.[5] But they are wrong—Plaintiffs can point to post-2017 "overt acts" from the *existing* discovery record. For instance, after Defendants crushed AQS and then acquired it, through EquiLend, they ▬▬▬▬

---

[5] Defendants observe that "[t]he Amended Complaint"—dated November 17, 2017—"is devoid of allegations" of "an overt act after 2017." Resp. at 12-13. But the Complaint expressly pled that the conspiracy was having ongoing effects. Ltd. Obj. at 4 n.1. Moreover, the Class is not limited by such pleadings, but may pursue "damages up to the time of trial." *Borger v. Yamaha Int'l Corp.*, 625 F.2d 390, 398 (2d Cir. 1980); *see also* Ltd. Obj. at 5-6.

7



[REDACTED] *See* [REDACTED] Tr. at 283:5-286:23. [REDACTED] EquiLend's [REDACTED], similarly testified about these post-2017 events and [REDACTED]. *See* Ex. A at 399:7-20, 403:2-17, 405:19-410:15, 448:7-449:23, 555:23-557:2.[6]

Defendants insist that Plaintiffs would require additional proof that the stock loan market did not change after 2017 to prove post-2017 damages. Resp. at 8-11. This position is contradicted by *Hart*, Defendants' cited authority. Resp. at 6. In *Hart*, the court rejected the argument that a class period should end in February 2010—when defendants claimed there was a material change in their employment practices—and instead certified the class through October 2012. 2013 WL 11272536, at *6. The court reasoned that defendants were on notice as to the plaintiffs' allegations running through that time period and thus "had the opportunity and incentive to take discovery as to [their] practices through" that date, but had failed to put forth any "evidence adduced during fact discovery suggest[ing]" a material change in their employment practices. *Id.* The same is true here: Defendants have long known that Plaintiffs contend Defendants' conspiracy causes ongoing harm. In fact, because they knew this was Plaintiffs' theory, Defendants themselves took discovery into post-2017 events. For example, *Defendants'* Counsel asked [REDACTED] EquiLend's [REDACTED] "[REDACTED]" Ex. A at 447:3-7 (emphasis added), and queried about [REDACTED], *id.* at 459:24-461:8.

It is indisputable that no multilateral trading platform exists in the U.S. Stock Loan market today. Defendants cannot name one. Instead, they misleadingly cite a vague reference

---

[6] "Ex. A" refers to the exhibit attached to the Declaration of Daniel L. Brockett filed herewith.

by the SEC regarding *attempts* by platforms to enter.  Resp. at 10.  Meanwhile, the very reason for the SEC's December 2021 proposal was that the market remains opaque for "*borrowers and lenders alike*" because of, among other things, the absence of a centralized trading platform.  SEC, Reporting of Securities Loans, 86 Fed. Reg. 69802, 69803 (Dec. 8, 2021) (emphasis added); *see also* Pls.' Rebuttal Slides at 31-34.

### B. Plaintiffs Have Been Diligent In Seeking Supplemental Transactional Data

Defendants falsely claim (Resp. § I.C.1) that Plaintiffs agreed to forego the requested supplemental discovery.  But Plaintiffs never relinquished their right to seek updated data to allow the Class to recover for harm Defendants inflicted after 2017.  Defendants rely on an earlier 2019 agreement about the cut-off date for *initial* data productions.  Resp. at 18.  But then and many times after, Plaintiffs expressly reserved the right to seek supplementation to bring that data up to date.  Ltd. Obj. 13-14.  The R&R stated that "the parties limited discovery to the period ending in 2017," R&R at 67, based on Defendants' misrepresentations to Judge Cave, which Plaintiffs' limited objection seeks to correct.

Defendants also claim that Plaintiffs forfeited their ability to update the Class's damages because Plaintiffs "never once informed the Court" that they wanted to do so.  Resp. at 18; *see also* Resp. at 21.[7]  But there was no reason to present any dispute about this issue to the Court (until now) as again, allowing this supplemental discovery does not require the Court to adjust *a single deadline* in the existing case schedule.  And Plaintiffs have always made clear that Defendants' conspiracy is imposing ongoing harm and expressly told Defendants that Plaintiffs reserved the right to seek supplemental transactional data productions.  Ltd. Obj. at 13-14.

---

[7] Defendants cite (Resp. at 11) *In re Interest Rate Swaps Antitrust Litigation*, 2019 WL 1147149 (S.D.N.Y. Mar. 13, 2019), where the court denied plaintiffs' motion for leave to amend their complaint to add *additional* claims.  Plaintiffs here are not seeking to add additional claims.

9

### IV. Plaintiffs Did Not Waive Their Arguments That The Class Period Should End In December Or November Of 2017

Finally, Defendants claim (Resp. § II) that Plaintiffs waived their argument that the Class Period should end later in 2017 because Plaintiffs had not suggested the specific end dates of December 31, 2017, or November 17, 2017, in briefing to Judge Cave. But it only became necessary to propose alternative dates in *response* to the R&R's conclusion that the Class Period should end on August 16, 2017. Plaintiffs could not have seen that coming, especially because *Defendants' themselves* advocated for the December 31, 2017 end date to the extent *any* class was certified. *See* Hr'g Tr. at 196:10-12 ("[I]f the court were to recommend that a class or subclass be certified, the end date must be set at December 31, 2017."). Defendants' case law (Resp. at 24-25) is thus inapposite—Plaintiffs do not present "new legal arguments" but rather, in response to the R&R, abridge their prior argument that February 22, 2021, is the proper end date for the Class Period. *Lopez Espiritu* v. *Hartman*, 2020 WL 93891, at *3 (E.D.N.Y. Jan. 8, 2020).

The sole reason the R&R rejected Plaintiffs' proposed end date was Judge Cave's determination that Plaintiffs could not establish good cause to reopen fact discovery to obtain additional data. But as Defendants themselves acknowledged at the hearing, that rationale plainly does not apply to the 2017 data that had *already been produced*. The R&R should, therefore, at a minimum be corrected on this ground.

### CONCLUSION

The Court should certify the Class with a Class Period ranging from January 1, 2012, to no earlier than December 31, 2017; clarify that Class members can seek to recover damages for harm suffered after the Class Period; and adopt the R&R in all other respects.

| | |
|---|---|
| DATED:  October 20, 2022 | Respectfully submitted, |
| **COHEN MILSTEIN SELLERS & TOLL PLLC** | **QUINN EMANUEL URQUHART & SULLIVAN, LLP** |
| By:  /s/ *Michael B. Eisenkraft* | By:  /s/ *Daniel L. Brockett* |
| Michael B. Eisenkraft<br>Christopher J. Bateman<br>David Fisher (*pro hac vice*)<br>88 Pine Street, 14th Floor<br>New York, New York 10005<br>Telephone: (212) 838-7797<br>meisenkraft@cohenmilstein.com<br>cbateman@cohenmilstein.com<br>dfisher@cohenmilstein.com<br><br>Julie G. Reiser (*pro hac vice*)<br>Richard A. Koffman (*pro hac vice*)<br>Kit A. Pierson (*pro hac vice*)<br>Emmy L. Levens (*pro hac vice*)<br>Daniel McCuaig (*pro hac vice*)<br>Robert W. Cobbs (*pro hac vice*)<br>1100 New York Ave NW, Suite 500<br>Washington, DC 20005<br>Telephone: (202) 408-4600<br>jreiser@cohenmilstein.com<br>rkoffman@cohenmilstein.com<br>kpierson@cohenmilstein.com<br>elevens@cohenmilstein.com<br>dmccuaig@cohenmilstein.com<br>rcobbs@cohenmilstein.com | Daniel L. Brockett<br>Sascha N. Rand<br>Steig D. Olson<br>Deborah K. Brown<br>Daniel P. Mach<br>David LeRay<br>Maxwell Deabler-Meadows<br>Avi Grunfeld<br>Nicolas Siebert<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>Telephone: (212) 849-7000<br>danbrockett@quinnemanuel.com<br>sascharand@quinnemnuel.com<br>steigolson@quinnemanuel.com<br>deborahbrown@quinnemanuel.com<br>danielmach@quinnemanuel.com<br>davidleray@quinnemanuel.com<br>maxmeadows@quinnemanuel.com<br>avigrunfeld@quinnemanuel.com<br>nicolassiebert@quinnemanuel.com<br><br>Jeremy D. Andersen (*pro hac vice*)<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, California 90017<br>Telephone: (213) 443-3000<br>jeremyandersen@quinnemanuel.com |

**SAFIRSTEIN METCALF LLP**

Peter Safirstein
1345 Avenue of the Americas, 2nd Floor
New York, New York 10105
Telephone: (212) 201-2845
psafirstein@safirsteinmetcalf.com

*Counsel for Torus Capital, LLC*