**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010
TEL (212) 849-7000 FAX (212) 849-7100

Daniel L. Brockett
(212) 849-7345
danbrockett@quinnemanuel.com

**COHEN MILSTEIN**

Michael B. Eisenkraft
(212) 838-0177
meisenkraft@cohenmilstein.com

July 31, 2023

**V**IA **ECF**

Hon. Katherine Polk Failla
United States District Court, Southern District of New York
40 Foley Square, Room 2101
 New York, NY 10007

Re:    *Iowa Pub. Emps.' Ret. Sys. et al. v. Bank of Am. Corp. et al.*, No. 17-cv-6221 (KPF) (SLC)

Dear Judge Failla:

    We write to bring to the Court's attention the recent *per curiam* decision of the D.C. Circuit in *National ATM Council, Inc. v. VISA Inc.*, No. 16-md-2704 (D.C. Cir., Jul. 25, 2023) ("*ATM*s *II*") (attached hereto as Exhibit A), which affirmed the district court's grant of class certification, 2021 WL 4099451 (D.D.C. 2021) ("*ATMs I*").  The D.C. Circuit's decision strongly supports Magistrate Judge Cave's report and recommendation ("R&R") to certify the proposed class.  Specifically, the D.C. Circuit's decision in *ATM*s *II* supports Judge Cave's analysis, and undermines Defendants' objections, with respect to the following points raised in Defendants' objections to the R&R:

    ***Relevant Legal Standard***:  The *ATMs I* district court held that plaintiffs "need only demonstrate a colorable method by which they intend to prove class-wide impact" and—contrary to Defendants' claims here—need not show that they "will in fact prove injury and damages for each class-member on the merits." *ATM*s *I* at \*6.  As the D.C. Circuit affirmed, the district court "aptly distinguished Plaintiffs' burden of establishing predominance at the class certification stage from their burden of prevailing on liability and damages at trial." Ex. A at 6.  The court correctly recognized that plaintiffs "need not conclusively establish class-wide liability and damages" but only "present creditable evidence from which questions common to the class members' claims could be resolved." *Id.* at 6; *see also id.* at 9-10 (assessing whether plaintiffs offered evidence of classwide injury that a "reasonable factfinder could credit").  In doing so, the D.C. Circuit did not break new ground, but rather relied on established authorities, including those cited by Judge Cave.  *See id.* at 6 (citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) and *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)); *see also* R&R at 59 (citing the same cases for the same propositions).  The opinion is also consonant with

the Ninth Circuit's decision in *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F. 4th 651, 681 (9th Cir. 2022), which, as Judge Cave noted, held that in determining class certification, the district court need only "satisfy itself that" plaintiffs' evidence is "capable of showing" class-wide impact, and that the "question of persuasiveness" between reliable experts reaching opposite conclusions is "one for the jury." *See* R&R at 59; *cf. ATMs II* at 6 ("[P]laintiffs need only genuinely contest, not definitively rule out, defendants' alternative ways that a reasonable factfinder might view the evidence.").

This disposes of one of Defendants' primary objections to the R&R—that Judge Cave "punted to the jury" the question of whether Plaintiffs were capable of proving classwide injury. Defs.' Objs. to R&R, ECF No. 576, at 39. But Judge Cave did *not* punt that question—she answered it in the affirmative, holding that "the question before the Court is whether Prof. Zhu's evidence is <u>capable</u> of showing class-wide impact" and that even if Defendants' arguments could persuade a jury, "*none of Defendants' criticisms of Prof. Zhu undermine Plaintiffs' ability to use* Prof. Zhu's opinions to prove class-wide impact." R&R at 59 (last emphasis added). The *ATMs II* decision confirms that Judge Cave was right, and Defendants' objections are wrong: At certification, Plaintiffs need only offer "creditable evidence from which questions common to the class members' claims could be resolved," Ex. A at 6, which Plaintiffs have done here.

The D.C. Circuit likewise debunks Defendants' arguments that, because Defendants can marshal their own evidence (including their own experts' testimony) to challenge Plaintiffs' classwide impact evidence, class certification should be denied. *E.g.*, Defs. Objs. at 31-38. As the D.C. Circuit explained, just because the defendants' expert in *ATMs* responded "with his *own* regression," that "separate expert analysis does not mean that the [] Plaintiffs' model is itself either necessarily flawed or incapable of establishing class-wide injury." Ex. A at 9-10. *ATMs II* also confirms that this Court need not resolve tangential disputes about which experts' opinions are more credible; rather, all that matters is that "Plaintiffs offered reliable, generalized proof of injury that a reasonable factfinder could credit and that, if credited, would enable resolution of class claims without piecemeal proof." *Id.* That is what Plaintiffs have offered here, too. Thus, Defendants cannot "defeat predominance simply by offering a contrary … model that the ultimate factfinder might or might not embrace." *Id.*

**Speculation About Uninjured Class Members Does Not Defeat Predominance**: *ATMs II* also confirms that Defendants' speculative threats to pick off thousands of class members with (undiscovered) individualized evidence do not defeat predominance. As the D.C. Circuit held:

> Defendants' contention that predominance is defeated by the lack of a mechanism for weeding out uninjured class members depends on a factfinder crediting their submission that such members exist. On this record, however, nothing requires a conclusion that the ATM Operator class includes uninjured members. The district court's predominance determination is thus unaffected by lack of a common method to identify uninjured members. The district court's holding that plaintiffs' evidence showed the requisite predominance was thus legally correct and supported by the record.

Ex. A at 11.

2

This ruling is significant because, here, one of Defendants' tentpole arguments is that *at trial* they will introduce evidence showing that individual class members were uninjured. Defs. Objs. at 19-30. But as *ATMs II* makes clear, a Defendant cannot just gesture at some future possibility of proving uninjured class members and use that to undermine predominance. Rather, where, as here, "nothing requires a conclusion that the [] class includes uninjured members," predominance still exists. Ex. A at 11. In the *Rail Freight* case on which Defendants rely, the *ATMs II* court noted, involved the unusual fact that the plaintiffs' expert's *own model* identified uninjured class members.[1] *Id.* at 12. In such cases, the common evidence establishes uninjured class members, and individual evidence would be needed to separate the wheat from the chaff. Here, though, in order to find in Defendants' favor with respect to any individual class member, a factfinder would have to *reject* the common evidence offered by Dr. Zhu, and the entire class's claims would fall. *See* Pls. Resp. to Defs. Objs., ECF No. 607, at 36-39.

***Significance of Academic Literature and Documentary Evidence***: The D.C. Circuit also affirmed the district court's conclusion that class-wide impact can be established using evidence such as academic literature and defendant-produced documents. This dispenses with one of Defendants' lead arguments here—that the "theoretical" impact analysis offered by Dr. Zhu must be discarded in favor of the *damages* model of Drs. Asquith and Pathak, which *conservatively* estimates the amount of damages suffered by class members. Defs. Objs. to R&R at 39-46. But The D.C. Circuit reiterated that, together with "statistical modeling," *ATM*s plaintiffs' expert's reliance on "'defendants' own documents,'" "'economic theory and empirical studies,'" and "'market structure analysis'" constituted "common sources of proof" that "all evidence harm" to the class. Ex. A at 9 (quoting *ATM*s *I*). In particular, the D.C. Circuit credited the use of a "yardstick" model that "computes antitrust damages by comparing the prices paid by plaintiffs with those paid by a consumer in a comparable market unaffected by the antitrust violation." *Id.* at 8. As the D.C. Circuit noted, such evidence is "appropriate in antitrust cases in which it is not possible to isolate the effect of assertedly anticompetitive conduct by performing a before-and-after comparison." *Id.* The opinion validates the approach of Plaintiffs here, where the lack of a "clean period" required that Plaintiffs prove classwide injury with data-driven evidence of impact, a "yardstick" model of the kind explicitly endorsed by the *ATMs II* court, and qualitative evidence including Defendants' own documents and admissions, academic literature, and economic theory. *Id*. at 21-30.

Respectfully submitted,

/s/ *Daniel L. Brockett*                                         /s/ *Michael Eisenkraft*


Daniel L. Brockett                                                Michael Eisenkraft
Co-Lead Counsel for Plaintiffs                         Co-Lead Counsel for Plaintiffs

---

[1] So too in *Asacol*. *In re: Asacol Antitrust Litig.*, 907 F.3d 42, 46-47 (1st Cir. 2018).