## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IOWA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> BANK OF AMERICA CORPORATION, *et al.*, <br><br> Defendants. | Case No.  17-cv-6221 (KPF) (SLC) <br><br><br> Hon. Katherine Polk Failla |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE NEW SETTLEMENT AGREEMENT WITH GOLDMAN SACHS, MORGAN STANLEY, JPMORGAN, UBS, AND EQUILEND

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................ I

TABLE OF AUTHORITIES ................................................................................................... III

PRELIMINARY STATEMENT ............................................................................................... 1

REQUESTED TWO-STEP PRELIMINARY APPROVAL PROCEDURE .............................. 2

PROCEDURAL BACKGROUND ............................................................................................ 2

SUMMARY OF THE SETTLEMENT ...................................................................................... 3

ARGUMENT ............................................................................................................................ 7

I.      THE SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY
        APPROVAL .................................................................................................................. 7

        A.      The Settlement Is Procedurally Fair ................................................................. 8

        B.      The Settlement Is Substantively Fair ................................................................ 9

                1.      The complexity, expense, and likely duration of the litigation ................. 9

                2.      The reaction of the class to the settlement ............................................. 10

                3.      The stage of the proceedings ................................................................. 10

                4.      The risks of establishing liability and damages ..................................... 11

                5.      The risks of maintaining a class action through trial ............................. 12

                6.      The ability of the Newly Settling Defendants to withstand a greater
                        judgment ............................................................................................... 12

                7.      The reasonableness of the settlement in light of the best possible
                        recovery and attendant litigation risks ................................................. 13

        C.      The Rule 23(e)(2) Factors Support Preliminary Approval of the Settlement ...... 14

                1.      Rule 23(e)(2)(A)—Plaintiffs and Co-Lead Counsel have
                        adequately represented the Settlement Class ......................................... 14

                2.      Rule 23(e)(2)(B)—the Settlement Agreement was negotiated at
                        arm's length ........................................................................................... 15

                3.      Rule 23(e)(2)(C)—the relief is adequate ............................................... 15

        4.      Rule 23(e)(2)(D)—the settlement treats class members equitably relative to each other ................................................................................... 17

II.      THE SETTLEMENT CLASS SHOULD BE CERTIFIED .......................................... 19

      A.     The Requirements Of Rule 23(a) Are Satisfied .................................... 19

            1.      The Settlement Class satisfies the numerosity requirement ................... 19

            2.      There are questions of law and fact common to all Settlement Class members .......................................................................................... 19

            3.      Plaintiffs' claims are typical of those of the Settlement Class ............... 20

            4.      The Settlement Class is fairly and adequately represented .................... 20

      B.     The Requirements Of Rule 23(b)(3) Are Satisfied ............................... 20

            1.      Common questions of law and fact predominate ................................... 21

            2.      A class action is the superior method for resolving this case ................. 21

      C.     Quinn And Cohen Should Be Appointed As Counsel for the Settlement Class .............................................................................................................. 22

III.     APPOINTMENT OF ESCROW AGENT, SETTLEMENT ADMINISTRATOR, AND RELATED RELIEF ........................................................................................ 22

CONCLUSION ........................................................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re "Agent Orange" Prod. Liab. Litig. MDL No. 381*,
  818 F.2d 145 (2d Cir. 1987) ................................................ 18

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  689 F.3d 229 (2d Cir. 2012) ...................................... 18, 19, 21

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................... 21, 22

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ......................................................... 21

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ........................... 10, 14

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ...................................... 8

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000) ................................................ 14

*Brown v. Kelly*,
  609 F.3d 467 (2d Cir. 2010) .............................................. 20

*Chhab v. Darden Rests., Inc.*,
  2016 WL 3004511 (S.D.N.Y. May 20, 2016) ............................ 21

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ............................................ 9, 13

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007) ................................................ 19

*In re Currency Conversion Fee Antitrust Litig.*,
  264 F.R.D. 100 (S.D.N.Y. 2010) .......................................... 20

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ................................................. 8

*Dial Corp. v. News Corp.*,
  314 F.R.D. 108 (S.D.N.Y. 2015) .......................................... 20

*In re Elec. Books Antitrust Litig.*,
    2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014) ...........................................................20, 22

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
    104 F. Supp. 3d 290 (E.D.N.Y. 2015)................................................................... 10

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)........................................................................ 12

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)................................................................................ 9

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019) ....................................................... 16, 17, 21, 22

*Henry v. Little Mint, Inc.*,
    2014 WL 2199427 (S.D.N.Y. May 23, 2014) ...........................................................8, 9

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015) ..................................................................... 9

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ............................................................................ 8

*Morris v. Affinity Health Plan, Inc*.,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012) ................................................................... 8

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    169 F.R.D. 493 (S.D.N.Y. 1996) .....................................................................14, 18

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) .............................................................. 9, 10, 11, 18

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) ............................................................................. 13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019).................................................................... 7, 8, 16

*In re Petrobras Sec.*,
    862 F.3d 250 (2d Cir. 2017).........................................................................21, 22

*In re Platinum & Palladium Commodities Litig.*,
    2014 WL 3500655 (S.D.N.Y. July 15, 2014) ............................................................ 7

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
    584 F. Supp. 2d 697 (M.D. Pa. 2008)................................................................... 12

iv

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
    237 F.R.D. 26 (E.D.N.Y. 2006) ................................................................ 10

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015) .................................................................... 21

*Rosi v. Aclaris Therapeutics, Inc.*,
    2021 WL 5847420 (S.D.N.Y. Dec. 9, 2021) .......................................... 22

*Shapiro v. JPMorgan Chase & Co.*,
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ........................................ 13

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ........................................................................... 20

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
    257 F.3d 256 (2d Cir. 2001) ...................................................................... 9

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................ 19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ........................................................................ 5

*Wallace v. IntraLinks*,
    302 F.R.D. 310 (S.D.N.Y. 2014) ............................................................ 19

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) ......................................................... 11

*Weber v. Gov't Emps. Ins. Co.*,
    262 F.R.D. 431 (D.N.J. 2009) ................................................................. 12

### Rules and Regulations

Fed. R. Civ. P. 23 .................................................................... 7, 9, 14-20, 22

### Other Authorities

Joseph M. McLaughlin, *McLaughlin on Class Actions* (18th ed. 2021) ................................. 18

William B. Rubenstein, *Newberg on Class Actions* (5th ed. 2021) ............................................ 21

## PRELIMINARY STATEMENT

Plaintiffs respectfully submit this memorandum in support of their motion for preliminary approval of the settlement with the "Newly Settling Defendants," which are all of the remaining active Defendants in the case with the exception of the Bank of America Defendants.[1]   The proposed settlement contains three components:  (i) a cash payment of $499,008,750; (ii) significant equitable relief in the form of governance changes further described below; and (iii) an obligation on the part of the Newly Settling Defendants to cooperate in Plaintiffs' remaining litigation against Bank of America.  *See* Decl. of Daniel L. Brockett ("Brockett Decl."), Ex. 1 ("New Settlement Agreement" or "NSA").

The New Settlement Agreement provides significant value to class members.  The cash payment of nearly $500 million brings the cash payment of the total proposed settlements to date to $581 million.  This is a significant sum and places this settlement among the larger antitrust settlements reached in the past decade.  The New Settlement Agreement includes forward-looking measures that Plaintiffs believe will further promote a competitive market for all stock-loan market participants.  It is rare that private plaintiffs (as opposed to the DOJ or FTC) are able to achieve such reforms as part of the settlement of a purely civil lawsuit.  And the Newly Settling Defendants have also agreed to certain cooperation provisions which will assist Plaintiffs' case against the one remaining defendant, Bank of America.

The settlement is fair, reasonable, and adequate; the proposed Settlement Class meets the requirements for certification; and the Court should, therefore, grant preliminary approval of the settlement.

---

[1]   The New Settling Defendants are the Goldman Sachs, Morgan Stanley, JPMorgan, UBS, and Equilend defendants.

## REQUESTED TWO-STEP PRELIMINARY APPROVAL PROCEDURE

As with the Credit Suisse settlement, Plaintiffs are seeking only to preliminarily approve the settlement at this time. We plan to seek approval for *notice and allocation plans* at a later date. It is important to obtain preliminary approval of the settlement not just because prompt action is a contractual requirement, but also because the class does not receive the settlement funds—and thus, cannot benefit from earning interest—until preliminary approval is granted. NSA ¶ 3.1. In previously approving a similar two-step process in connection with the Credit Suisse settlement, ECF No. 529, this Court followed the path of many other Courts in this District who have utilized the same approach.

## PROCEDURAL BACKGROUND

The case's general procedural history was summarized in connection with the preliminary approval of the Credit Suisse settlement. *See* ECF No. 520. In brief, this case was filed by Cohen Milstein Sellers & Toll PLLC and Quinn Emanuel Urquhart & Sullivan, LLP ("Co-Lead Counsel") after an extensive investigation in August 2017. *See* ECF No. 1 (Complaint). After defeating Defendants' motion to dismiss in 2018, the parties engaged in extensive discovery which included over 100 depositions, the production and review of terabytes of data and millions of pages of documents, and reports from (and depositions of) multiple experts from all sides.

The issue of class certification was fully (and extensively) briefed, with the last brief being filed in January 2022. *See, e.g.*, ECF Nos. 415, 431, 469, 495, 513. While that briefing was getting underway, Plaintiffs entered into a Settlement Agreement with Credit Suisse, which this Court preliminarily approved on February 25, 2022. ECF No. 529.

In June 2022, Magistrate Judge Cave issued a Report and Recommendation largely concluding that the class should be certified. ECF No. 563. Defendants objected to Judge

2

Cave's recommendation that the class be certified, while Plaintiffs filed a limited objection (or request for clarification) regarding the temporal scope of the class and ability of class members to seek damages after the end of the class period. *See* ECF Nos. 573, 576, 587, 595, 597, 604, 609, 615, 617, 627, 630.

After Judge Cave's Report and Recommendation, Plaintiffs entered into settlement negotiations with the Newly Settling Defendants. These negotiations included a multi-day, in-person mediation with the Honorable Layn R. Phillips, a former United States Attorney and a former United States District Judge. Following the in-person sessions, the negotiations continued over the following months under Judge Phillips's guidance. The negotiations concluded when both sides accepted a mediator's proposal put forward by Judge Phillips.

## SUMMARY OF THE SETTLEMENT

The primary terms of the settlement are as follows.

**Settlement Amount.** The monetary component of the settlement is $499,008,750 (the "Settlement Amount"). NSA ¶ 1.39. Using the percentages requested by Credit Suisse and the Newly Settling Defendants for their respective releases (*see* NSA ¶ 12.20), this comes out to significantly more than the previously approved settlement on a per-point basis.

***Significant equitable relief as additional, non-monetary compensation.*** The central allegation in this case is that Defendants agreed to boycott new entrants who could act as intermediaries in the stock lending market. Plaintiffs specifically alleged that this plan was hatched at EquiLend, a joint venture between the Defendants, which served as a forum for information sharing and collusion. Although Defendants continue to dispute these allegations, Plaintiffs' counsel obtained reforms at EquiLend as part of their settlement strategy that Plaintiffs believe to be meaningful.

For instance, one part involves reforming the functioning of EquiLend meetings. Those provisions impose: (1) a maximum number of seats each EquiLend Board Member can hold (which Plaintiffs believe will help prevent concentration of power they alleged to be at issue in the case), (2) a "time out" period for EquiLend Board Members (which Plaintiffs believe will help encourage rotation and discourage the type of collusion Plaintiffs alleged was present in the case), (3) rotation of outside antitrust counsel (which Plaintiffs believe will help prevent "capture" of the Counsel), and (4) recordkeeping requirements for EquiLend Board Meetings (which Plaintiffs believe will help increase transparency and decrease opportunities for collusion of the type they alleged in the case).

Another part pertains to information sharing at EquiLend meetings. Those provisions: (1) restrict information sharing among board members, (2) require outside antitrust counsel to attend certain meetings, (3) require antitrust training for board members, (4) require annual reports of compliance to designated antitrust counsel, and (5) mandate reporting of potential breaches.

By way of a final example, EquiLend will also implement an Antitrust Code of Conduct for EquiLend, and require all of EquiLend's Board Members and Alternate Board Members certify on an annual basis that they will comply with the provisions of the Code of Conduct.

While Defendants have denied any wrongdoing and that any reforms were necessary, Plaintiffs believe that the equitable relief they designed and negotiated for will help align EquiLend to the best practices and guidelines for anti-cartel and collaborations among competitors. Plaintiffs believe the reforms should materially decrease the likelihood of future collusion in the stock lending market, and thus Plaintiffs believe the reforms thereby increase the chances the industry would transition to a more competitive trading environment. By facilitating

the ability of the stock lending market to become more competitive and transparent, Plaintiffs believe that these reforms generate significant value for both existing class members and future borrowers and lenders in the stock lending market. Plaintiffs' analysis of other financial markets shows that platform entry, increased transparency, or other incremental improvements in efficiency can generate significant financial benefits for consumers.

**Settlement Class Definition.** The New Settlement Agreement is made on behalf of a proposed Settlement Class defined as:

> [A]ll Persons who, directly or through an agent, entered into Stock Loan Transactions with the Prime Broker Defendants, direct or indirect parents, subsidiaries, or divisions of the Prime Broker Defendants in the United States from January 7, 2009 through the Execution Date (the "Settlement Class Period"), inclusive.

NSA ¶ 1.40. The class definition and related definitions largely track those used in the Credit Suisse settlement. However, because the class definition in both agreements extends through the *execution date*, the New Settlement Agreement has a class definition that is slightly longer than that in the Credit Suisse agreement. The law recognizes the propriety of releasing claims going beyond those that are actually litigated through trial. *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106-107 (2d Cir. 2005). Co-Lead Counsel will make a proposal for handling this in their future notice and allocation plans, but it should not be relevant to the current motion.

**Release of Claims.** Similar to the Credit Suisse agreement, "Released Class Claims" is defined to include:

> [A]ny and all manner of claims . . . against the Released Settling Defendant Parties, arising from or related in any way to the conduct alleged in this Action, or that could have been alleged in this Action that also arise from or relate to the factual predicate of the Action, to the fullest extent allowed by law, from the beginning of time through the Execution Date.

NSA ¶ 1.32. *See, e.g.*, *Wal-Mart Stores*, 396 F.3d at 107 ("The law is well established in this Circuit and others that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct.").

**Cooperation.**  The Newly Settling Defendants agree to provide cooperation to Plaintiffs in their prosecution of this action against the Bank of America Defendants.  This cooperation includes making available for trial up to four witnesses and providing declarations or certifications to facilitate the admission of documents into evidence.  NSA ¶ 11.

**Reduction of Judgment.**  As with the Credit Suisse agreement, the Newly Settling Defendants insisted on a term Plaintiffs infer is related to what Defendants might call a judgment-sharing agreement.  Plaintiffs have agreed that the maximum amount they will enforce from any judgment against the non-settling Defendants in this Action will be reduced by 75.41% of the jury's award.  NSA ¶ 12.20.  Plaintiffs agreed to the term because they believe the total benefits of the settlement outweigh the total rights that are released, even accounting for this term.

**Termination Provisions.**  As with the Credit Suisse agreement, termination is permitted within thirty days of any of the following events:  (i) the Court or any appellate court enters a final order declining to enter the Preliminary Approval Order in any material respect; (ii) the Court or any appellate court enters an order refusing to approve this Settlement Agreement or any material part of it; (iii) the Court enters an order declining to enter the Judgment and Order of Dismissal in any material respect; or (iv) the Judgment and Order of Dismissal is modified or reversed by a court of appeal or any higher court in any material respect.  NSA ¶ 10.1.  If opt outs are so extensive that they materially impair the value of the settlement to the Newly Settling

Defendants, *and* a mediator determines, in his or her discretion, that the Settlement Fund cannot be reduced to preserve the essential benefits of the settlement, the Newly Settling Defendants may seek to terminate the settlement.  NSA ¶ 10.2.

   ***Attorneys' Fees, Expenses, and Service Awards.***  As with the Credit Suisse agreement, the New Settlement Agreement reserves Plaintiffs' right to request interim attorneys' fees, reimbursement of expenses, and/or class representative service awards.  NSA ¶ 8.  The Settlement Class would be given notice of any such applications.

<b><u>ARGUMENT</u></b>

## I.  THE SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL

   Rule 23(e) requires court approval of a proposed class action settlement upon finding that the proposal "is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  The preliminary approval process is governed by a "likelihood standard," requiring the Court to assess whether the parties have shown that "the court will *likely* be able to grant final approval and certify the class." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 n.21 (E.D.N.Y. 2019).  In conducting a preliminary approval inquiry, a court considers both the "negotiating process leading up to the settlement, i.e., procedural fairness, as well as the settlement's substantive terms, i.e., substantive fairness." *In re Platinum & Palladium Commodities Litig.*, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014).

   Under Rule 23(e)(2), courts consider whether:  "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).  "Paragraphs (A) and (B) constitute the 'procedural' analysis factors, and examine 'the conduct of the litigation and of the

negotiations leading up to the proposed settlement.'  Paragraphs (C) and (D) constitute the 'substantive' analysis factors, and examine '[t]he relief that the settlement is expected to provide to class members.'"  *Payment Card*, 330 F.R.D. at 29 (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment).  These "factors . . . add to, rather than displace," the *Grinnell* factors (described and applied in Section I.B, *infra*) traditionally considered in the Second Circuit during the preliminary approval process.  *Id.*

### A.    The Settlement Is Procedurally Fair

"To determine procedural fairness, courts examine the negotiating process leading to the settlement."  *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012).  Where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

The New Settlement Agreement is the product of arm's-length settlement negotiations among experienced counsel.  The settlement negotiations began with a multi-day in person negotiation under the guidance of a highly respected mediator, the Honorable Layn Phillips.  The negotiations then continued over the following months in a series of conversations with and enabled by Judge Phillips and his team.  The negotiations concluded when both sides accepted a mediator's proposal put forward by Judge Phillips based on his own, independent assessment of the material factors.  The Named Plaintiffs, all sophisticated institutional investors, expressly approved the settlement.  In recommending that the Court approve the settlement, Co-Lead Counsel considered the uncertain outcome and risks of further litigation and believe the settlement confers significant benefits on the Settlement Class in light of the circumstances here.  Based on these considerations, there is "a strong initial presumption that the compromise is fair

and reasonable." *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *see also Henry v. Little Mint, Inc.*, 2014 WL 2199427, at *6 (S.D.N.Y. May 23, 2014) ("If the settlement was achieved through experienced counsels' arm's-length negotiations, absent fraud or collusion, courts should be hesitant to substitute their judgment for that of the parties who negotiated the settlement.").

**B.      The Settlement Is Substantively Fair**

In granting preliminary approval, courts must make a preliminary determination that the substantive terms of the proposed settlement are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  Courts in this Circuit have traditionally analyzed the "*Grinnell* factors" in assessing whether a proposed settlement is fair, reasonable, and adequate.  *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (listing factors), *abrogated in part on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  As noted above, the *Grinnell* factors are complemented by the 2018 amendments to Rule 23(e).

*1.      The complexity, expense, and likely duration of the litigation*

"Antitrust class actions are notoriously complex, protracted, and bitterly fought." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 669 (S.D.N.Y. 2015); *see also Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (noting the "factual complexities of antitrust cases").  This case is no different.  From the initial motions to dismiss through preliminary discovery, depositions, and class certification briefing, sophisticated counsel intensely contested each stage of the case.  The class certification process itself included numerous briefs, replies, sur-replies, declarations—all done once for the magistrate and then effectively re-done as part of the objection process.  Plaintiffs, and presumably Defendants as well, have spent many millions of dollars on expert fees and other expenses, and dedicated tens of millions of dollars in attorney time to pursuing the litigation.  Further stages of the litigation,

9

including summary judgment, trial, and potentially appeals, would surely be just as extensively and expensively contested. In short, Plaintiffs are confident of their case and the likelihood of prevailing at trial, but "[t]here can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result." *In re Nasdaq Mkt.-Makers Antitrust Litig.* ("*Nasdaq II*"), 187 F.R.D. 465, 477 (S.D.N.Y. 1998). This factor weighs in favor of preliminary approval.

### 2.  *The reaction of the class to the settlement*

Because notice has yet to be provided to potential members of the Settlement Class, courts generally do not consider this *Grinnell* factor at the preliminary approval stage. *See Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006). However, all of the Named Plaintiffs approve of this settlement, and should any objections from Settlement Class members be received prior to the Fairness Hearing, Co-Lead Counsel will address those concerns in the final approval papers.

### 3.  *The stage of the proceedings*

The "stage of the proceedings" factor ultimately concerns "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006). Here, the parties have the benefit of millions of documents, more than 100 fact and expert depositions, and full ventilation of class certification briefing, including multiple rounds of expert reports and a methodology for assessing Plaintiffs' aggregate damages estimate. Due to this work, the depth of Plaintiffs' and Co-Lead Counsels' knowledge of the strengths and potential weaknesses of their claims is more than adequate to support the settlement.

4.   *The risks of establishing liability and damages*

In assessing this factor, "the Court should balance the benefits afforded the Class, including the *immediacy* and *certainty* of a recovery, against the continuing risks of litigation." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 303 (E.D.N.Y. 2015).  As noted above, while Plaintiffs are confident in ultimately prevailing, they recognize that nothing in litigation is ever certain and that they will be opposed by sophisticated and well-resourced defense counsel.  Because the Bank of America Defendants remain in the litigation, Plaintiffs cannot discuss in detail potential risks in establishing liability, damages, and maintaining a class action through trial.  But some general possibilities are already evident.

Defendants have throughout made clear their intent to challenge, among other things: whether any conspiracy existed at all; the viability of the boycotted trading platforms; and the existence and extent of damages.  *See* ECF No. 123 (Op. & Order on Defendants' motion to dismiss) at 2.  Although, in Co-Lead Counsels' view, fact discovery has revealed a wealth of evidence substantiating Plaintiffs' claims, the Newly Settling Defendants were prepared to vigorously contest liability and damages on these and other grounds at summary judgment, trial, and on appeal.

Even if liability were established at trial, Plaintiffs would face the complexities inherent in proving damages to the jury.  There is no doubt that at trial the issue inevitably would involve a "battle of the experts." *Nasdaq II*, 187 F.R.D. at 476.  "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors . . . ."  *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985).  Thus, there is a risk that a jury might accept one or more of Defendants' damages arguments and award nothing at all or award less than the $499,008,750 that, if

approved, would be available under this settlement. "Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal." *Nasdaq II*, 187 F.R.D. at 476.

Put another way, there is no doubt that the Newly Settling Defendants, represented by experienced counsel, would present sophisticated arguments to the Court and to the jury at each step of the litigation and argue against liability and against having to pay *any* damages. When weighed against the risks of continued litigation, the significant, immediate, and certain benefits to the Settlement Class weigh in favor of preliminary approval.

## 5.     *The risks of maintaining a class action through trial*

Defendants objected to Judge Cave's recommendation that the class be certified, and that objection is pending. And certification can, of course, be reviewed and modified at any time. Furthermore, the losing party on class certification may petition the Circuit Court for permission to appeal. Thus, there is some risk that the action might not be maintained as a class action through trial. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that "[w]hile plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might be not certified is not illusory"). This risk also weighs in favor of preliminary approval.

## 6.     *The ability of the Newly Settling Defendants to withstand a greater judgment*

"[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." *Weber v. Gov't Emps. Ins. Co.*, 262 F.R.D. 431, 447 (D.N.J. 2009). Here, the financial obligations the settlement imposes on the Newly Settling Defendants are substantial. The benefits from equitable relief and

cooperation further minimizes the relevance of this factor.  *See In re Pressure Sensitive*

*Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008).

> 7.  *The reasonableness of the settlement in light of the best possible recovery and attendant litigation risks*

The range-of-reasonableness factor weighs the relief provided in the settlement against

the strength of the plaintiffs' case, including the likelihood of obtaining a recovery at trial.  This

factor "recognizes the uncertainties of law and fact in any particular case and the concomitant

risks and costs necessarily inherent in taking any litigation to completion."  *Newman v. Stein*,

464 F.2d 689, 693 (2d Cir. 1972).  In applying this factor, "the Settlement must be judged 'not in

comparison with the possible recovery in the best of all possible worlds, but rather in light of the

strengths and weaknesses of plaintiffs' case.'"  *Shapiro v. JPMorgan Chase & Co.*, 2014 WL

1224666, at *11 (S.D.N.Y. Mar. 24, 2014).

Plaintiffs' experts Dr. Paul Asquith and Dr. Parag Pathak estimated recoverable damages

in the billions of dollars.  *See* ECF No. 470-2.  The combined settlement value of approximately

$580 million thus far ($81 million for Credit Suisse plus $499 million in cash for the Newly

Settling Defendants), plus the very significant equitable-relief value from the Newly Settling

Defendants, is a significant percentage of Plaintiffs' most optimistic damage estimates and

represents a recovery that is of course far more than the zero-recovery Defendants have argued

Plaintiffs are entitled to.

Given the risks of proceeding to trial, this recovery is an excellent result for the

Settlement Class.  Moreover, Plaintiffs still hope to recover from the Bank of America

Defendants.  But even if Plaintiffs are unable to do so, as recognized by the Second Circuit,

because of the riskiness of litigation, "[i]n fact there is no reason . . . why a satisfactory

settlement could not amount to a hundredth or even a thousandth part of a single percent of the

potential recovery." *Grinnell*, 495 F.2d at 455 n.2.  Indeed, any failure to recover additional

damages from the Bank of America Defendants would only confirm, in hindsight, the risks of

this litigation and thus the merit to this settlement.

Considering the risks and costs of continued litigation, the New Settlement Agreement

provides excellent results for the Settlement Class.[2]

**C.     The Rule 23(e)(2) Factors Support Preliminary Approval of the Settlement**

*1.     Rule 23(e)(2)(A)—Plaintiffs and Co-Lead Counsel have adequately
represented the Settlement Class*

Adequacy requires determining whether "1) plaintiff's interests are antagonistic to the

interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and

able to conduct the litigation."  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52,

60 (2d Cir. 2000).

As to Plaintiffs' adequacy, Plaintiffs are entities that borrowed and/or loaned securities as

defined in the Settlement Class Definition.  NSA ¶ 1.40.  Where, as here, Plaintiffs and members

of the Settlement Class share "an interest in proving the existence of Defendants' conspiracy"

and "in maximizing the aggregate amount of classwide damages," the adequacy requirement is

satisfied.  *In re NASDAQ Mkt.-Makers Antitrust Litig.* ("*NASDAQ I*"), 169 F.R.D. 493, 513

(S.D.N.Y. 1996).  Plaintiffs have demonstrated their adequacy to serve by actively participating

in the litigation and supervising Co-Lead Counsel.  For example, they have produced thousands

of documents; responded to interrogatories and requests for admission; prepared and sat for

depositions; reviewed pleadings and stayed apprised of case developments; and guided Co-Lead

---

[2]  *See AOL Time Warner*, 2006 WL 903236, at *13 (where settlement fund is in escrow earning interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").

Counsel throughout the litigation and the settlement negotiations. *See, e.g.*, Brockett Decl. ¶ 3; ECF No. 415 at 15-16.

As for Co-Lead Counsel, for more than six years, we have worked vigorously to investigate and prosecute this case—dedicating tens of thousands of hours and tens of millions of dollars to its success. *See, e.g.*, Brockett Decl. ¶ 5; ECF No. 415 at 15-16. We have significant experience successfully leading antitrust class actions in this District and nationwide, recovering billions for plaintiffs and receiving numerous accolades from courts and in the form of various awards recognizing the quality of our work, as set forth in our prior submissions. ECF Nos. 521-2, 521-3.

       2.     *Rule 23(e)(2)(B)—the Settlement Agreement was negotiated at arm's length*

As discussed above, the New Settlement Agreement is the product of arm's-length negotiations. *See* Section I.A, *supra*.

       3.     *Rule 23(e)(2)(C)—the relief is adequate*

Rule 23(e)(2)(C) asks the Court to consider whether the relief provided for the proposed Settlement Class is adequate, taking four factors into account:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C)(i-iv). Each factor supports preliminary approval.

**The costs, risks, and delay of trial and appeal**. Plaintiffs discussed this factor in Sections I.B.1, I.B.3, I.B.4, and I.B.5, *supra*. The $499,008,750 monetary payment (augmented by the substantial reforms and Newly Settling Defendants' required cooperation) represents a

strong recovery, taking into account the potential costs, risk, and delay associated with class certification, trial, and appeal.

      ***Effectiveness of the proposed method of distributing relief to the Settlement Class.***  This factor requires the Court to consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii).  As discussed above, Plaintiffs are not at this time asking the Court to review any proposed notice or allocation plans.  Plaintiffs will move separately for preliminary approval of those plans before formal notice or any other steps are taken.  Even if this factor were nonetheless found to be relevant to the limited motion currently before the Court, Plaintiffs would need to show only a *likelihood* that the Court will be able to grant approval.  *Payment Card*, 330 F.R.D. at 28 n.21.  The basis for such a finding can be found in the New Settlement Agreement, which requires the Newly Settling Defendants' assistance in the gathering of data and class member information (NSA ¶ 11.5), and outlines expectations for a standard process for receiving claim forms attested to under a penalty of perjury and subject to documentary audits (*id.* ¶ 7.6), to be overseen by an industry-leading Settlement Administrator appointed by the Court (*see id.* ¶ 5.1).

      ***The terms of any proposed award of attorneys' fees.***  Although the New Settlement Agreement reserves Co-Lead Counsel's right to seek attorneys' fees, no set amount of fees or expenses is specified in the New Settlement Agreement itself.  Co-Lead Counsel will seek fees and expenses at an appropriate time, and Rule 23(h) requires the Court to vet the reasonableness of Co-Lead Counsel's eventual request.  The New Settlement Agreement contains no provisions that would permit Co-Lead Counsel to seek or receive unreasonable fees.

16

***Any agreement required to be identified under Rule 23(e)(3).***  This factor requires

courts to consider "'any agreement required to be identified by Rule 23(e)(3),' that is, 'any

agreement made in connection with the proposal.'"  *In re GSE Bonds Antitrust Litig.*, 414 F.

Supp. 3d 686, 696 (S.D.N.Y. 2019) (quoting Fed. R. Civ. P. 23(e)(2)(C)(iv) and 23(e)(3)).

Plaintiffs are not aware of the existence or terms of any agreement entered into between

Plaintiffs and the Newly Settling Defendants bearing on the proposal other than the New

Settlement Agreement itself.  Though it is not clear they fall into Rule 23(e)(3), including

because they already appear on the face of the New Settlement Agreement itself, Plaintiffs in an

abundance of caution note that (a) the Newly Settling Defendants have certain rights in the event

that a material number of members of the Settlement Class opt out (NSA ¶¶ 9.3, 9.4, 10.2), and

(b) Plaintiffs have agreed to reduce any judgment entered into against the remaining Defendants

in this Action (NSA ¶ 12.20).

> 4.  <u>Rule 23(e)(2)(D)—the settlement treats class members equitably relative
> to each other</u>

This Rule 23(e)(2) factor "could include whether the apportionment of relief among class

members takes appropriate account of differences among their claims, and whether the scope of

the release may affect class members in different ways that bear on the apportionment of relief."

Fed. R. Civ. P. 23(e)(2)(C-D) advisory committee's note to 2018 amendment.

Subject to Court approval, all members of the Settlement Class will be giving the Newly

Settling Defendants an identical release.  And importantly, the Newly Settling Defendants'

monetary obligations are fixed.  The Newly Settling Defendants will pay a single fixed amount,

and neither the total settlement amount nor ultimate agreement with the Newly Settling

Defendants depended on how funds are ultimately allocated.  Indeed, the future plan of

allocation—which is not being proposed to the Court at this time—is expressly agreed to *not* be a

part of the deal with defendants.  NSA ¶ 1.27.  Moreover, all class members will benefit from the increased competition in the marketplace that may result from the important reforms to which Defendants agreed.  Thus, the New Settlement Agreement indisputably treats class members "equitably" because it treats them all identically.  Any issues with regard to how the benefits of the New Settlement Agreement will be distributed are not presently an issue for this Court.

Where the settlement terms are themselves set, as here, the Second Circuit has even approved of entering *final* approval of settlements without an allocation plan.  *See In re "Agent Orange" Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145, 170 (2d Cir. 1987) ("The prime function of the district court in holding a hearing on the fairness of the settlement is to determine that the amount paid is commensurate with the value of the case.  This can be done before a distribution scheme has been adopted so long as the distribution scheme does not affect the obligations of the defendants under the settlement agreement.").[3]  Here, at the preliminary-approval stage, the question is only whether this Court will *likely* be able to approve the New Settlement Agreement, making it all the more irrelevant that an allocation plan has not yet been proposed.[4]

---

[3]  *See also Nasdaq II*, 187 F.R.D. at 480; 2 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 6:23 (18th ed. 2021) ("Because court approval of a settlement as fair, reasonable and adequate is conceptually distinct from the approval of a proposed plan of allocation, however, courts frequently approve them separately.").

[4]  Class Counsel acknowledge that Defendants raised class conflicts arguments during the class certification briefing and subsequent objections to Magistrate Judge Cave's Report and Recommendation.  *See, e.g.*, ECF 576 at 8-18.  Of course, Bank of America as a defendant lacks standing to object to the NSA on this or any other ground.  But the purported concerns underlying Defendants' prior arguments are irrelevant on this motion for the reasons set forth above.  They are also substantively baseless, as set forth in Plaintiffs class certification briefs and as Magistrate Judge Cave correctly found.  *See* ECF 563 at 41-48.  This is because, among other reasons, any purported conflict as to damages or recovery allocation is not fundamental and therefore does not defeat certification.  *See, e.g.*, *NASDAQ I* at 513 (finding no fundamental conflict where conspiracy preserved spreads paid by buyers and sellers of securities).

## II.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED

A court may certify a settlement class where the proposed settlement class satisfies the requirements for Rule 23(a) as well as one of the three subsections of Rule 23(b).  *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012).  The proposed Settlement Class meets these requirements.

### A.   The Requirements Of Rule 23(a) Are Satisfied for Purposes of this Settlement

#### 1.   *The Settlement Class satisfies the numerosity requirement*

In cases like this one involving widely traded financial instruments, the Rule 23(a)(1) numerosity requirement is readily satisfied.  *See Wallace v. IntraLinks*, 302 F.R.D. 310, 315 (S.D.N.Y. 2014).  Co-Lead Counsel estimate that there are thousands of members of the proposed Settlement Class.  *See* ECF No. 415 at 12.

#### 2.   *There are questions of law and fact common to all Settlement Class members*

Rule 23(a)(2)'s commonality requirement is satisfied if at least one question exists that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Courts routinely hold that commonality exists in antitrust claims where "allegations of the existence of . . . conspiracy are susceptible to common proof."  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007).  This case requires resolution of common questions relating to the existence, scope, and effectiveness of the alleged conspiracy, as well as common questions related to whether Plaintiffs and Settlement Class members suffered injury in fact and the appropriate measure of class-wide damages.  *See* ECF No. 415 at 12.  Accordingly, commonality exists under Rule 23(a)(2).

19

3.    *Plaintiffs' claims are typical of those of the Settlement Class*

Rule 23(a)(3) requires that, "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement is satisfied when "each [class] member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Elec. Books Antitrust Litig.*, 2014 WL 1282293, at *12 (S.D.N.Y. Mar. 28, 2014) (quoting *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010)). Typicality is "not highly demanding," *Dial Corp. v. News Corp.*, 314 F.R.D. 108, 113 (S.D.N.Y. 2015), and is easily satisfied in antitrust cases alleging a conspiracy in violation of Section 1 of the Sherman Act which aim to prove "a conspiracy, its effectuation, and damages therefrom," *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 111 (S.D.N.Y. 2010) (collecting cases). Plaintiffs allege Defendants conspired to prevent the adoption of exchange trading in the stock lending market, ensuring that the market remained opaque and causing Plaintiffs and members of the Settlement Class to pay more to borrow, or receive less to loan, their stocks. Accordingly, the typicality requirement is satisfied. *See* ECF No. 415 at 12-14.

4.    *The Settlement Class is fairly and adequately represented*

As discussed in Section I.C.1, *supra*, Plaintiffs and Co-Lead Counsel have fairly and adequately represented the Settlement Class as required by Rule 23(a)(4).

**B.    The Requirements Of Rule 23(b)(3) Are Satisfied for Purposes of this Settlement**

Rule 23(b)(3) permits a case to be litigated as a class action if (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both requirements are met here.

       1.    *Common questions of law and fact predominate*

"The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). Plaintiffs need not show that "each element of [their] claim[s] is susceptible to classwide proof." *In re Petrobras Sec.*, 862 F.3d 250, 268 (2d Cir. 2017) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013)). Rather, predominance exists where the questions that are capable of common proof are "more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015).

Predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Id.* "Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *accord Am. Int'l Grp.*, 689 F.3d at 240; *see also* 6 William B. Rubenstein, *Newberg on Class Actions* § 20:25 (5th ed. 2021) ("Courts will generally certify for class treatment those group boycott claims that trigger a *per se* test."). Here, each element of Plaintiffs' claims—collusion, causation, impact, and damages—would be proven through common evidence. *See* ECF No. 415 at 16-50; ECF No. 469 at 4-29. As the number and magnitude of the issues subject to class-wide resolution dwarf any individualized inquiries presented in this case, predominance is satisfied.

       2.    *A class action is the superior method for resolving this case*

Finally, a case satisfies the superiority test if "the class device will achieve economies of scale, conserve judicial resources, preserve public confidence in the integrity of the judicial

system by avoiding the waste and delay of repetitive proceedings, and prevent inconsistent adjudications of similar claims." *Chhab v. Darden Rests., Inc.*, 2016 WL 3004511, at *3 (S.D.N.Y. May 20, 2016). Superiority "is an 'explicitly comparative' inquiry, requiring the court to consider alternatives to class settlement." *GSE Bonds*, 414 F. Supp. 3d at 702 (quoting *In re Petrobras Secs.*, 862 F.3d at 268).[5] Where, as here, the significant cost of prosecuting the case would render individual litigation uneconomical for many plaintiffs, proceeding as a class is the superior to alternative methods of resolution. *See Elec. Books*, 2014 WL 1282293, at *23; *see also* ECF No. 415 at 49-50; ECF No. 469 at 33-34. Moreover, the sheer size of the geographically disbursed Settlement Class, which contains thousands of members, renders resolution as a class superior. *See GSE Bonds*, 414 F. Supp. 3d at 702.

### C. Quinn And Cohen Should Be Appointed As Counsel for the Settlement Class

"An order that certifies a class action . . . must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). For the reasons discussed in Section I.C.1, *supra*, Plaintiffs request that Quinn Emanuel Urquhart & Sullivan, LLP and Cohen Milstein Sellers & Toll PLLC be appointed as counsel for the Settlement Class. *See* Rule 23(g); *Rosi v. Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at *4 (S.D.N.Y. Dec. 9, 2021) (finding class counsel adequate for purposes of Rule 23(e)(2)(A) where counsel participated in discovery and motion practice and also prepared documents in connection with settlement).

### III. APPOINTMENT OF ESCROW AGENT, SETTLEMENT ADMINISTRATOR, AND RELATED RELIEF

As part of the Preliminary Approval Order, Plaintiffs seek the Court's preliminary approval of Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Settlement

---

[5] In the settlement context, the superiority inquiry does not require analysis of the manageability of case at trial. *See Amchem Prods.*, 521 U.S. at 620.

Administrator.  Epiq is a nationally recognized settlement administrator with a wealth of experience in administering settlements involving complex financial instruments, including credit default swaps, interest rate swaps and derivatives, and foreign exchange contracts and has already been approved as Settlement Administrator for the Credit Suisse settlement.

Plaintiffs also ask that the Court approve the appointment of The Huntington National Bank ("Huntington") as the Escrow Agent.  Huntington is part of Huntington Bancshares, Inc., which is a large bank holding company and listed among the S&P 500.  Huntington's National Settlement Team is one of the leading settlement account programs in the country and has handled escrow accounts in countless class action settlements.  Huntington is already the Escrow Agent for the Credit Suisse Settlement and Plaintiffs ask the Court for permission to combine both settlements in a single escrow account.  The Court should further approve the Settlement Fund as Qualified Settlement Funds ("QSFs") pursuant to Internal Revenue Code § 468B and related Treasury Regulations.

Finally, Plaintiffs ask that the Court approve disbursements from the Settlement Fund for purposes of paying costs (other than attorneys' fees) incurred in preparing and providing the Settlement Class Notice and paying other administrative expenses, including notice and administration expenses incurred by the Claims Administrator, up to $2,500,000 million prior to the Effective Date.[6]  Such funds are not recoverable if the settlement is terminated or does not become final.  NSA ¶ 3.12.

---

[6]  Prior to the Effective Date, the settlement provides that Co-Lead Counsel may pay up to $2,500,000 in notice and administration fees from the Settlement Fund without approval of the Newly Settling Defendants, with the ability to ask for Court approval for additional expenditures. *See* NSA § 3.12.  After the Effective Date there are no limitations on Co-Lead Counsel's use of the Settlement Fund to pay reasonable and necessary notice and administration fees. *Id.*

## **CONCLUSION**

For these reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Preliminary Approval of the Settlement with the Newly Settling Defendants and enter the Preliminary Approval Order appointing the Escrow Agent and Settlement Administrator, and authorizing payment of certain administrative fees.

DATED: August 23, 2023

Respectfully submitted,

**COHEN MILSTEIN SELLER & TOLL PLLC**

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: */s/ Michael B. Eisenkraft*
Michael B. Eisenkraft
Christopher J. Bateman
88 Pine Street, 14th Floor
New York, New York 10005
Telephone: (212) 838-7797
meisenkraft@cohenmilstein.com
cbateman@cohenmilstein.com

By: */s/ Daniel L. Brockett*
Daniel L. Brockett
Sascha N. Rand
Steig D. Olson
Deborah K. Brown
David LeRay
Maxwell Deabler-Meadows
Avi Grunfeld
Nicolas Siebert
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
danbrockett@quinnemanuel.com
sascharand@quinnemanuel.com
steigolson@quinnemanuel.com
deborahbrown@quinnemanuel.com
davidleray@quinnemanuel.com
maxmeadows@quinnemanuel.com
avigrunfeld@quinnemanuel.com
nicolassiebert@quinnemanuel.com

Julie G. Reiser (*pro hac vice*)
Richard A. Koffman (*pro hac vice*)
Kit A. Pierson (*pro hac vice*)
Emmy L. Levens (*pro hac vice*)
Daniel McCuaig (*pro hac vice*)
Robert W. Cobbs (*pro hac vice*)
1100 New York Ave NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
jreiser@cohenmilstein.com
rkoffman@cohenmilstein.com
kpierson@cohenmilsetin.com
elevens@cohenmilstein.com
dmccuaig@cohenmilstein.com
rcobbs@cohenmilstein.com

Jeremy D. Andersen (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
jeremyandersen@quinnemanuel.com

**SAFIRSTEIN METCALF LLP**

Peter Safirstein
1345 Avenue of the Americas, 2nd Floor
New York, New York 10105
Telephone: (212) 201-2845
psafirstein@safirsteinmetcalf.com

*Counsel for Plaintiffs*

25