**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IOWA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, *et al.*, <br><br> Plaintiffs, <br><br>v. <br><br> BANK OF AMERICA CORPORATION, *et al.*, <br><br> Defendants. | Case No.  17-cv-6221 (KPF) (SLC) <br><br><br> Hon. Katherine Polk Failla |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER PROVIDING FOR NOTICE TO THE SETTLEMENT CLASSES AND PRELIMINARILY APPROVING THE PLANS OF ALLOCATION**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT..........................................................................................................................3

I.      THE PROPOSED MANNER AND FORMS OF NOTICE SHOULD BE
        APPROVED ..............................................................................................................3

        A.      The Proposed Manner of Notice Should Be Approved ...........................................4

        B.      The Proposed Forms of Notice Should Be Approved ............................................7

II.     THE PLANS OF ALLOCATION SHOULD BE PRELIMINARILY APPROVED..........9

III.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS ................................................14

CONCLUSION.....................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Case**                                                                                                          **Page(s)**

*In re Agent Orange Prods. Liab. Litig.*,
   818 F.2d 145 (2d Cir. 1987)...................................................................................4

*In re Credit Default Swaps Antitrust Litig.*,
   2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016)...................................................7, 12

*In re Gilat Satellite Networks, Ltd.*,
   2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) ......................................................13

*In re Glob. Crossing Sec. and ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .........................................................................13

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019) ........................................................ *passim*

*Guevoura Fund Ltd. v. Sillerman*,
   2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ...............................................7, 8, 10

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)..............................................................4

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd* 117 F.3d 721 (2d Cir. 1997).........................10, 13, 14

*In re Patriot Nat'l, Inc. Sec. Litig.*,
   2019 WL 5882171 (S.D.N.Y. Nov. 6, 2019) ...........................................................7

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019*)* ...........................................................................7

*In re Vitamin C Antitrust Litig.*,
   2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ........................................................7

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005).....................................................................................7

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005)...................................................................10

*Yang v. Focus Media Holding Ltd.*,
   2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014)........................................................10

**Other Authorities**

Fed. R. Civ. P. 23(c)(2)(B) ..............................................................................4, 5, 8

Fed. R. Civ. P. 23(e)(1)......................................................................................................3, 4

Manual for Complex Litigation §21.312 (4th ed.).......................................................................13

Plaintiffs respectfully submit this memorandum in support of their Motion for an Order Providing for Notice to the Settlement Classes and Preliminarily Approving the Plans of Allocation under Federal Rule of Civil Procedure 23(c) and (e).

## PRELIMINARY STATEMENT

Plaintiffs and the Credit Suisse, Goldman Sachs, Morgan Stanley, JPMorgan, UBS, and EquiLend Defendants[1] have reached proposed Settlements in this action that would resolve all claims against Settling Defendants in exchange for cash payments of $580,008,750, certain forward-looking measures that will provide value to the class by promoting a competitive market for all stock-loan market participants, and cooperation against the Bank of America Defendants, all for the benefit of the Settlement Classes.[2]  The Court previously entered orders preliminarily approving the proposed Settlements, certifying the Settlement Classes, and appointing Co-Lead Counsel and class representatives.  *See* ECF No. 529, 654.  The cash portion of the Settlements has been deposited by the Settling Defendants into the escrow account for the classes.

As requested by Co-Lead Counsel at the time of preliminary approval of the Settlements, determinations related to notice to members of the Settlement Classes and the distribution of settlement funds were deferred until the Settlement Defendants had provided information to assist in notifying class members.  Plaintiffs now propose: (i) a Notice Plan to notify class members of both Settlements and provide information regarding the claims process, and (ii) a Plan of Allocation for each Settlement distributing the respective Net Settlement Funds.

---

[1]   The Credit Suisse defendants are referred to as the "Credit Suisse Settling Defendants."  The Goldman Sachs, Morgan Stanley, JPMorgan, UBS, and EquiLend defendants are referred to as the "Newly Settling Defendants."  Combined, the "Settling Defendants."

[2]   All capitalized terms not defined herein have the same meaning as in the "Credit Suisse Agreement" and the "New Settlement Agreement" (together the "Settlement Agreements") the Court previously approved.

1

***Notice Plan.*** Co-Lead Counsel and the Settlement Administrator Epiq Class Actions & Claims Solutions, LLC ("Epiq") have developed an effective Notice Plan that includes direct notice by mail, supplemented by publication of summary notice in prominent and widely distributed national and global news outlets. Epiq also plans to provide robust online notice via online search initiatives targeted to various financial publications and newsletters, social media, and a dedicated settlement website. The proposed mail and publication notices (the "Notices")— attached as Exhibits 1 (the "Long Form Notice") and 3 (the "Summary Notice") to the Declaration of Daniel Brockett, dated February 28, 2024 ("Brockett Declaration"), respectively—explain clearly and concisely the terms of the proposed Settlements, options for members of the Settlement Classes, and deadlines for exercising them. The Notices also explain the terms of the proposed Settlements, and provide further resources, including contact information for the Settlement Administrator and Co-Lead Counsel, should potential settlement class members have any questions.

***Plans of Allocation.*** Plaintiffs' proposed Plans of Allocation, attached as Exhibits 4 and 5 to the Brockett Declaration, have been drafted by experienced and informed counsel to efficiently and equitably distribute the settlement funds to qualified members of the Settlement Class. As described more fully in the Plans of Allocation themselves, class members will be allocated proceeds *pro rata* based on their relative volume of their qualifying activity, adjusted for (1) a factor estimating damages to their activity, based on whether the class member acted as a borrower or lender and the "temperature" of the transaction (determined by the loan cost of the transaction); and (2) a factor accounting for legal risks associated with certain kinds of claims, based on borrower/lender status, transaction temperature, and transaction date. As more fully

2

detailed below, similar volume-and-risk based plans of distribution in financial services antitrust class actions have been regularly approved in this District.

At this time, Plaintiffs seek preliminary approval of the proposed Plans of Allocation, which requires only that the Plans be sufficiently reasonable to be sent to members of the Settlement Classes for their consideration prior to the Fairness Hearing to be set by the Court. Entry of the Proposed Order (Exhibit 6 to the Brockett Declaration) will permit Plaintiffs to begin the process of providing notice of the Settlements and their terms to persons and entities believed to be potential members of the Settlement Classes.

***Proposed Order.*** The Proposed Order (Exhibit 6 to the Brockett Declaration) submitted with this memorandum approves the form and content of the Notices (Exhibits 1 and 3 to the Brockett Declaration, as noted above) and the proposed Proof of Claim and Release Form (the "Claim Form," attached as Exhibit 2 to the Brockett Declaration); and finds that the procedures for distribution of the Notices and Claim Form and publication of the Notice constitute the best notice practicable under the circumstances and complies with the requirements of due process and Federal Rule of Civil Procedure 23. The Proposed Order also sets a schedule and procedures for mailing and publishing the Notices; requesting exclusion from the Settlements; objecting to the Settlements, the proposed Plan of Allocation, and/or Co-Lead Counsel's application for attorneys' fees and expenses; submitting papers in support of final approval of the Settlements and Co-Lead Counsel's application for attorneys' fees and expenses; and the Fairness Hearing.

## **ARGUMENT**

## I.   **THE PROPOSED MANNER AND FORMS OF NOTICE SHOULD BE APPROVED**

Federal Rule of Civil Procedure 23(e)(1) provides "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]."

Fed. R. Civ. P. 23(e)(1)(B).  Where a settlement class is to be certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

There are no "rigid rules" that apply when determining the adequacy of notice for a class action settlement.  Ultimately, the test for proposed notice to class members is reasonableness. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 702 (S.D.N.Y. 2019).  Rule 23 "accords considerable discretion to a district court in fashioning notice to a class."  *In re Agent Orange Prods. Liab. Litig.*, 818 F.2d 145, 168 (2d Cir. 1987); *see also Manual for Complex Litigation* §21.311 (4th ed.) ("Determination of whether a given notification is reasonable under the circumstances of the case is discretionary.").  Accordingly, "[n]otice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members."  *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 2007 WL 313474, at *8 (S.D.N.Y. Feb. 1, 2007).

Plaintiffs respectfully submit that both (A) the proposed manner of notice and (B) the proposed form of notice are reasonable and constitute the best notice that is practicable under the circumstances and should be approved.

### A.     <u>The Proposed Manner of Notice Should Be Approved</u>

Plaintiffs here propose a robust Notice plan that would direct the best notice practicable. Plaintiffs' proposed Notice plan seeks to reach the greatest number of Settlement Class members possible through a wide distribution in a variety of channels, including:  individual notice to members of the Settlement Classes by mail, supplemented by mail notice to likely nominee holders who acted on behalf of the Settlement Classes; the use of a Summary Notice in widely

circulated publications; the use of online notice to various financial websites; and the establishment of a dedicated settlement website, e-mail address for the administrator, a toll-free telephone number, and a postal mailing address.

*Mail Notice Procedures*.  The Settlement Administrator will distribute the Long Form Notice and Claim Form via United States Postal Service First Class mail, postage prepaid.

The mailing program will use addresses from multiple sources.  Addresses for mailing will be used from data provided by Defendants to Co-Lead Counsel, which Defendants represent constitutes the reasonably available information they have.  Moreover, Plaintiffs will send the Long Form Notice and Claim Packet to entities in a proprietary database Epiq maintains for use in antitrust and securities cases, which includes banks, brokers, and other entities likely to have engaged in relevant transactions on behalf of clients who would be members of the Settlement Classes.  The notice contains instructions to forward the notice to their clients or provide their list of clients to Epiq for the purpose of sending individual notice.  Azari Decl. ¶¶ 12-15.  Epiq's proprietary "Nominee Database" includes approximately 1,100 U.S. banks, brokerage firms, and nominees, many of which act as executing or introducing broker for their customers' transactions across many types of securities transactions.  Azari Decl. ¶ 13.  Firms that maintain trading records for client accounts, and generate and distribute trading records to clients, are typically a reliable source from which to ascertain the names and addresses of additional potential class members in an administratively feasible manner.

In this way, Plaintiffs propose to provide individual notice of the Settlement Agreements to potential members of the Settlement Class "who can be identified through reasonable effort[s]" using Defendants' data and other information.  Fed. R. Civ. P. 23(c)(2)(B).

***Summary Notice in Widely Circulated Media***.  In addition to the mail Notice, the Settlement Administrator will publish the Summary Notice in widely circulated newspapers and on widely viewed financial websites of interest to potential members of the Settlement Classes. Specifically, the Settlement Administrator shall cause the Summary Notice, substantially in the form attached as Exhibit 3 to the Brockett Declaration, to be published once in *The Wall Street Journal*, the *Financial Times*, and *Investor's Business Daily (IBD) Weekly*.  *See* Azari Decl. ¶¶ 16-17.  Additionally, online banner notices will be placed on relevant financial focused websites including *Yahoo! Finance*, *Investors.com*, and *WSJ.com*; a press release will be sent over *PR Newswire*; and sponsored internet search listings across additional websites via a targeted digital advertising buy collectively aimed to generate 28 million views nationwide and internationally that will be used to direct traffic to the settlement website (discussed below).  Azari Decl. ¶¶ 18-21.  Plaintiffs believe Summary Notice in these publications and through a dedicated website will provide a valuable supplement to the already thorough individual mail Notice plan.

***Settlement Website, Phone Contact Information, and Postal Mailing Address***. Plaintiffs will also engage the Settlement Administrator to establish a website dedicated to the Settlements at www.StockLoanSettlements.com.  *Id.* ¶ 24.  This will enable any potential member of the Settlement Classes to easily access information about the proposed Settlements, including the notices and claims process, and to file claims.  All documents related to the notices and claims process, including copies of the Long Form and Summary Notices, along with the Settlement Agreements and key case materials (such as the operative complaint and the Court's rulings on the motion to dismiss), will also be posted on the Settlement website.  The Settlement Administrator will also establish a toll-free telephone number and email and postal mailing addresses to answer potential settlement class members' questions.

Courts routinely approve multi-faceted notice programs like the one proposed by Plaintiffs here, that combine individualized mail notice and summary notice as components of the plan.[3]  Plaintiffs therefore respectfully submit the proposed Notice plan summarized above, and further detailed in the Azari Declaration, satisfies the requirements of Rule 23(e) and 23(c)(2)(B), and should thus be approved by the Court.

**B.** **The Proposed Forms of Notice Should Be Approved**

"There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings'" in a manner understandable "by the average class member." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005); *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *12 (S.D.N.Y. Dec. 18, 2019) ("[N]otice is adequate if the average settlement class member understands the terms of the proposed settlement and the options they have.").[4]

---

[3]  *See, e.g.*, *In re Commodity Exchange, Inc. Gold Futures and Options Trading Litig.*, No. 14-md-02548, Dkt. 625 (S.D.N.Y. Jan. 13, 2022); *In re Patriot Nat'l, Inc. Sec. Litig.*, 2019 WL 5882171, at *1-*2 (S.D.N.Y. Nov. 6, 2019) (approving notice plan consisting of mail or e-mail notice to 13,530 potential settlement class members coupled with summary notice via publication in *Investor's Business Daily* and *PR Newswire*); *GSE Bonds*, 414 F. Supp. 3d at 702 (approving notice plan consisting of mail and publication notice); *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *5 (S.D.N.Y. Apr. 26, 2016) ("Class Counsel mailed notice packets to each of 13,923 identified Class members. . . .  The Summary Notice was also published on January 11 in several important business publications . . . [and] the 'Settlement Administrator' launched a website for the Settlement which posted the Settlement agreements, notices, court documents, and other information relevant to the Settlement."); *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *2 (E.D.N.Y. Oct. 23, 2012).

[4]  *See also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 58 (E.D.N.Y. 2019*)* ("Courts in [the Second] Circuit have explained that a Rule 23 Notice will satisfy due process when it 'describe[s] the terms of the settlement generally,' 'inform[s] the class about the allocation of attorneys' fees, and provide[s] specific information regarding the date, time, and place of the final approval hearing.'").

"Settlement notices under Fed. R. Civ. P. 23 do not need to delve into excessive details about the specifics of the settlement and the legal claims of the parties;" rather, settlement notices "should be concise and simple." *Guevoura*, 2019 WL 6889901, at *12.  Ultimately, the notice must "enable class members to make an informed decision about their participation." *Manual for Complex Litigation* §21.311 (4th ed.).  Notice must state, "in plain, easily understood language," (1) the nature of the action; (2) the class definition; (3) the claims, issues, or defenses; (4) that a class member may enter an appearance through an attorney if the member so desires; (5) that the court will exclude any member from the class who so requests; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment.  Fed. R. Civ. P. 23(c)(2)(B).

The mail Notice—consisting of the Long Form Notice and Claim Form—provides members of the Settlement Classes with clear, concise, and comprehensive information about the proposed Settlements.  The mail Notice describes, among other things: (i) the nature of the lawsuit; (ii) the claims involved and the parties' positions; (iii) what it means for the Settlements to have been reached; (iv) a summary of the terms of the Settlements, including the monetary relief, forward-looking relief, scope of the release, and cooperation obligations; (v) the definition of the Settlement Classes; (vi) a description of the Plans of Allocation and where on the Settlement website to find more detailed information about Settlement Fund allocations;[5] (vii) the procedures and deadlines for submitting a Claim Form in order to receive a payment from a Settlement Fund; (viii) the deadlines and procedures for exclusion from the Settlement Classes,

---

[5]  Plans of allocation are commonly described in a summary fashion in the notice.  *See, e.g.*, *Sonterra Capital Master Fund Ltd. v. UBS AG*, No. 15-cv-05844 (S.D.N.Y.) (ECF Nos. 221, 223, 261, 263-5, 264) (granting preliminary approval where plan of distribution was described in summary form with "artificiality tables" to be published on settlement website 30 days before opt out deadline).

objecting to the Settlements, and attending the Fairness Hearing; (ix) that members of the Settlement Classes may, but need not, appear through their own counsel at the Fairness Hearing; (x) the binding effect of participating in the Settlements; (xi) the identity of Co-Lead Counsel; and (xii) Co-Lead Counsel's intention to move for an award of fees, expenses, and incentive awards.

Similarly, the Summary Notice communicates to potential members of the Settlement Classes, in clear and concise language, the information required to reach an informed decision. This includes Defendants' alleged misconduct; the scope of the Settlement Classes; the amount of the Settlements and the presence of forward-looking relief; the rights of the members of the Settlement Class to opt out or object to the Settlements; and the date and location of the Fairness Hearing to be set by the Court. The Summary Notice also directs members of the Settlement Classes to the designated Settlement website referenced above, tells them where the Long Form Notice and other Settlement-related documents are available, and provides contact information for the Settlement Administrator and Co-Lead Counsel. Like the language in the mail Notice, the Summary Notice's language is designed to be readily understood by settlement class members.

Plaintiffs submit that the proposed Long Form Notice, Summary Notice, and Claim Form meet the requirements of Rule 23(e) and 23(c)(2)(B) and, thus, should be approved by the Court.

## II.    THE PLANS OF ALLOCATION SHOULD BE PRELIMINARILY APPROVED

Plaintiffs' proposed Plans of Allocation[6] were crafted based on the knowledge and experience of Co-Lead Counsel, including insights reached about the stock-lending market by

---

[6] To be clear, there are technically two "Plans of Allocation"—one for the Credit Suisse Settlement Agreement and one for the New Settlement Agreement. But they are functionally identical. Information for both Settlement Classes will be obtained via a single Claim Form.

Plaintiffs' experts in connection with the contested motion for class certification. The proposed Plans of Allocation are summarized below. The mail Notice advises members of the Settlement Classes to visit the Settlement Website for updates about the Plans of Allocation, in case details change over the course of time due to Court order or otherwise.

With respect to how the funds are to be allocated, "[w]hile the plan of allocation 'must be fair and adequate,' it 'need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.'" *GSE Bonds*, 414 F. Supp. 3d at 694; *Guevoura*, 2019 WL 6889901, at *11 ("[C]ourts give great weight to the opinion of experienced and informed counsel when assessing a proposed plan of allocation as part of a settlement agreement.").[7]

Each Net Settlement Fund will be distributed to Claimants *pro rata* based on the relative notional value of their stock loan transactions after adjustments designed to reflect the rough value of their claims, as determined from information each Claimant will provide on their Claim Form.

---

And it is likely that if both Settlements are approved, for administrative ease payments to settlement class members will be made in amounts representing their interest in both Settlement Classes. But underlying calculations will be run within each Settlement Fund separately. Thus, for example, the Claim Form requires class members to state their trade information for the January 21, 2022, to August 22, 2023, period, which will only be considered for the New Settlement Agreement, due to its longer Settlement Class Period.

[7]   *See also Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *9 (S.D.N.Y. Sept. 4, 2014) (in evaluating a proposed plan of distribution, courts accord substantial weight to the opinions of experienced counsel); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997) ("[W]hen real and cognizable differences exist between the likelihood of ultimate success for different plaintiffs, it is appropriate to weigh distribution of the settlement in favor of plaintiffs whose claims comprise the set that was more likely to succeed."), *aff'd* 117 F.3d 721 (2d Cir. 1997).

First, the Settlement Administrator will multiply the notional value of each Claimant's stock loan transactions by a "damages multiplier" reflecting average damages per unit of notional value for claims of that type.  Damages multipliers account for (1) whether the Claimant was a borrower or lender with respect to each transaction; and (2) the "temperature" of each transaction based on its loan cost.  Damages multipliers were estimated based on the findings of Plaintiffs' expert economists, Profs. Paul Asquith and Parag Pathak, in their opening report in support of class certification.  *See* ECF No. 414-10 at 237-38, tbls. XI.27-28.  These estimates approximate the average damages per unit of notional volume attributable to each transaction.[8]

Second, the Settlement Administrator will multiply the product derived above by a "litigation risk multiplier," which approximates the relative values of certain claims owing to particular kinds of legal risk.  Specifically, stock loan transactions meeting the class definition proposed by Magistrate Judge Cave in her Report and Recommendation to the Court are assigned a litigation risk multiplier of 1; stock loan transactions executed from August 17, 2017 to the end of each Settlement Class Period are assigned a litigation risk multiplier of 0.25, reflecting legal obstacles class members would face, absent the Settlements, in seeking to recover damages for these transactions.  Transactions which were not included in the class definition Plaintiffs proposed to the Court in their class certification motion are assigned a legal risk multiplier of 0.1, reflecting what Plaintiffs' counsel believe to be greater difficulties in recovering damages for these transactions absent the Settlements.

---

[8]   Specifically, for each combination of borrower/lender status and transaction "temperature," the damages multiplier is found by dividing the aggregated estimated damages for that category of transaction by the total notional volume of transactions from which those damages were calculated.  For transactions in which a Claimant loaned stock at general collateral prices, which were not included in the proposed class and for which Profs. Asquith and Pathak did not calculate damages, the damages multiplier is estimated at one-half their closest analog, "warm" lending transactions.

As can be seen, the multipliers are not, of course, equal for each transaction.  The differing allocations are a reasonable attempt to allocate the funds in light of the different likelihood of success, in different amounts, had the claims against the Settling Defendants proceeded to trial.  For instance, all else equal, qualifying notional associated with transactions that are "hot" will be given a higher multiplier because the evidence of this case—including the opinions of Plaintiffs' experts proffered in support of Plaintiffs' motion for class certification—shows these transactions are more likely to have been harmed in a proportionally greater amount than other class transactions.  By contrast, all else equal, qualifying notional associated with transactions after August 16, 2017 are given a lower multiplier because they are not within the scope of Magistrate Cave's recommended class.

Every qualifying transaction will be adjusted in this way.  The result will be that each class member will have a sum total of damages-and-risk-adjusted notional—or "Credited Claim Value."  Each class member will then be allocated the portion of the Net Settlement Proceeds for each class associated with that class member's Credited Claim Value, as a proportion to the total qualifying Credited Claim Value of all class members in that class.  This method ensures an equitable distribution that accounts for the most important drivers of class members' actual damages, while allowing for efficient administration that will preserve the Settlement Funds and distribute class members' awards quickly.  Similar volume-based plans of distribution in financial services antitrust class actions have been regularly approved in this District.  *See In re London Silver Fixing, Ltd. Antitrust Litig.*, No. 14-MD-2573, ECF No. 464 (S.D.N.Y. Aug. 5, 2020); *GSE Bonds¸* 414 F. Supp. 3d at 698-99 (finding that under volume-based plan of distribution, "claimants will be treated equitably"); *CDS Antitrust*, 2016 WL 2731524, at *9 (holding that a similar allocation scheme "achieves a fair distribution" of the settlement fund).

Where it is reasonably determined that the cost of administering a claim would exceed the value of the claim under the Plan of Allocation, Co-Lead Counsel will direct the Settlement Administrator to preserve the value of the Settlement Fund and make an alternative minimum payment to the Authorized Claimant to satisfy such claims.  The alternative minimum payment will be a set amount for all such Authorized Claimants, and will be based on the participation rate of the class in each Settlement.  Courts routinely approve plans that provide for flat *de minimis* allocations in similar circumstances.  *See, e.g.*, *In re Gilat Satellite Networks, Ltd.*, 2007 WL 1191048, at *9-*10 (E.D.N.Y. Apr. 19, 2007) (*de minimis* threshold would "save the settlement fund from being depleted by the administrative costs associated with claims unlikely to exceed those costs"); *In re Glob. Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 463 (S.D.N.Y. 2004) (approving a *de minimis* threshold because "[c]lass counsel are entitled to use their discretion . . . to avoid excessive expense to the class as a whole").[9]  In addition, if a Class Member submits a Claim that does not conform to the data standards required by Section II of the Plans of Allocation, Co-Lead Counsel, at their discretion, may direct the Settlement Administrator to accept the Claim, deny the Claim, or assign it a discounted value.

Finally, with respect to how claims will be processed, "[a] claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."  *GSE Bonds*, 414 F. Supp. 3d at 694.  A principal goal of the plan of distribution must be "the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund."  *Id.* at 695; *see also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 135 (S.D.N.Y. 1997) ("Efficiency, ease of

---

[9]   Determinations as to the *de minimis* threshold will be made after the claim deadline. *See* Manual for Complex Litigation §21.312 (4th ed.) ("Often . . . the details of allocation and distribution are not established until after the settlement is approved.").

administration and conservation of public and private resources are highly relevant to the reasonableness of a settlement, particularly where, as here, the issues are complex, the outcome of the litigation unclear, and the class large."). Similar to the requirements for notice, whether a plan of distribution is fair and reasonable is "squarely within the discretion of the district court." *Id.* at 132.

Each Class Member wishing to receive proceeds from a Net Settlement Fund must submit a Claim Form, which, inter alia, releases all Released Claims against all Released Parties (as defined in the Settlement Agreements) and is signed under penalty of perjury by an authorized Person. The Claim Form requires detailed information about the Class Member's transactions, as seen in Exhibit 2 to the Brockett Declaration. On receipt and processing of Claimants' data and records, the Settlement Administrator will determine if a Claim Deficiency Notice is required for any transaction and will calculate the Claimant's Transaction Claim Amount. Class Members also must agree to subject themselves to "audits" if requested, including in providing backup documentation for their claims. Such audits and other quality-control processes will be conducted by the Settlement Administrator.

Plaintiffs respectfully submit that the proposed Plans of Allocation have a reasonable, rational basis, treat settlement class members equitably, and should both be preliminarily approved by the Court.

## III.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Finally, Plaintiffs respectfully propose the following schedule for remaining events and submissions related to the Settlements.

| EVENT | PROPOSED DATE |
|---|---|
| Commencement of mail Notice to potential members of the Settlement Class, and launch of Settlement website | No later than 30 days after Court order approving final form of notice materials.  30 days from the Court's order is referred to as the "Notice Date." |
| Publish Summary Notice | As close to within 10 days after the Notice Date as possible given submission and publication cycles in the chosen medium. |
| File papers in support of final approval and application for fees, expenses, and incentive awards | 30 days after the Notice Date. |
| Last day to mail Request for Exclusion<br><br>Last day to object to final approval and application for fees, expenses, and incentive awards | 60 days after the Notice Date (the "Objection Deadline"/the "Exclusion Bar Date"). |
| Last day for Settling Defendants to request relief under paragraph 9.4 (Credit Suisse Agreement)/9.3 (New Settlement Agreement) based on volume of requests for exclusion | Within 3 days of receipt of affidavit from Settlement Administrator as to received Requests for Exclusion. |
| Deadline to submit Claim Forms | 90 days after Notice Date ("Claims Deadline"). |
| Reply papers in support of final approval and application for fees, expenses, and incentive awards (including responses to any objections to final approval and application for fees, expenses, and incentive awards) | 21 days after Claims Deadline (in this schedule, 111 days after the Notice Date) |
| Fairness Hearing | At the Court's convenience, but Plaintiffs would suggest 14 days after the filing of reply papers (in this schedule, 125 days after the Notice Date) |

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court enter the Proposed Order approving notice to the Settlement Class and preliminarily approving the Plans of Allocation.

DATED: February 28, 2024

Respectfully submitted,

**COHEN MILSTEIN SELLER & TOLL PLLC**

By: */s/ Michael B. Eisenkraft*
Michael B. Eisenkraft
Christopher J. Bateman
88 Pine Street, 14th Floor
New York, New York 10005
Telephone: (212) 838-7797
meisenkraft@cohenmilstein.com
cbateman@cohenmilstein.com

Julie G. Reiser (*pro hac vice*)
Richard A. Koffman (*pro hac vice*)
Emmy L. Levens (*pro hac vice*)
Daniel McCuaig (*pro hac vice*)
Robert W. Cobbs (*pro hac vice*)
1100 New York Ave NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
jreiser@cohenmilstein.com
rkoffman@cohenmilstein.com
elevens@cohenmilstein.com
dmccuaig@cohenmilstein.com
rcobbs@cohenmilstein.com

**SAFIRSTEIN LAW LLC**

Peter Safirstein
45 N. Broad Street
Suite 100
Ridgewood, NJ 07450
Telephone: (917) 952-9458
psafirstein@safirsteinlaw.com

*Counsel for Plaintiffs*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: */s/ Daniel L. Brockett*
Daniel L. Brockett
Sascha N. Rand
Steig D. Olson
Deborah K. Brown
David LeRay
Maxwell Deabler-Meadows
Avi Grunfeld
Nicolas Siebert
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
danbrockett@quinnemanuel.com
sascharand@quinnemnuel.com
steigolson@quinnemanuel.com
deborahbrown@quinnemanuel.com
davidleray@quinnemanuel.com
maxmeadows@quinnemanuel.com
avigrunfeld@quinnemanuel.com
nicolassiebert@quinnemanuel.com

Jeremy D. Andersen (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
jeremyandersen@quinnemanuel.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 28, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

*/s/ Michael B. Eisenkraft*

Michael B. Eisenkraft
88 Pine Street, 14th Floor
New York, New York 10005
Telephone: (212) 838-7797
meisenkraft@cohenmilstein.com

17