# EXHIBIT 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IOWA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, *et al.*,<br><br>Defendants. | Case No. 17-cv-6221 (KPF) (SLC)<br><br>Hon. Katherine Polk Failla |

**PROPOSED PLAN OF ALLOCATION OF SETTLEMENT FUNDS—CREDIT SUISSE SETTLEMENT**

1.      This Proposed Plan of Allocation of Settlement Funds—Credit Suisse Settlement ("Plan of Allocation" or "POA") sets forth the method by which Plaintiffs propose to distribute funds available to Settlement Class Members in connection with the Settlement Agreement with Credit Suisse Defendants dated January 20, 2022 (the "Credit Suisse Settlement Agreement"). The Plan of Allocation is substantially the same as and should be considered in conjunction with the Plan of Allocation of Settlement Funds—New Settlement filed herewith; the documents are drafted separately only to avoid confusion as to how the Settlements will be administered. For more information concerning these Settlements and the rights of Settlement Class Members, see the Settlement Website at www.StockLoanSettlements.com.

2.      The Credit Suisse Settlement Agreement differs somewhat from the Settlement Agreement dated August 22, 2023 between Plaintiffs and the Goldman Sachs, JPMorgan, Morgan Stanley, and UBS Defendants (the "New Settlement Agreement"). In particular, the

Execution Date and Released Parties of the two Settlement Agreements differ, as do the definitions within each Agreement of "Investment Vehicles"; each difference effects differences in the composition of the two Settlement Classes and the eligibility of transactions to be considered in allocating Net Settlement Funds. Distributions from each Settlement's Net Settlement Fund will be calculated independently by the Settlement Administrator. Claimants need not and should not submit duplicate Claim Forms to participate in both Settlements, or submit Claim Forms with duplicate transactions.

3. The Plan of Allocation must be approved by the Court before it is administered. It may be changed at any time without further notice to Claimants, before or after the Court's Fairness Hearing and/or Final Approval of the Settlements, by Court order. Changes to the Proposed Plan of Allocation and any Court-approved Plan of Allocation will be made available to Claimants on the Settlement Website. Settlement Class Members should regularly visit the Settlement Website to be apprised of important developments.

## I.  DEFINITIONS

4. Capitalized terms not defined below have the meaning given to them in the Settlement Agreements. To the extent there are differences in the meanings of undefined terms between the Settlement Agreements, those terms mean what they mean in the Credit Suisse Settlement Agreement for the purposes of allocating funds from the Credit Suisse Net Settlement Fund, and mean what they mean in the New Settlement Agreement for the purposes of allocating funds from the New Net Settlement Fund.

5. "Authorized Claimant" means any Settlement Class Member who will be entitled to a distribution from the Net Settlement Fund pursuant to the Settlement Agreement and Plan of Allocation approved by the Court.

6. "Claimant" means a Person who submits a Claim Form.

7. "Claim Deficiency Notice" means the notice sent by the Claims Administrator to a Claimant whose Claim Form is deficient in one or more ways such as, for example, failure to provide required information or documentation.

8. "Claims Bar Date" means the deadline established by the Court by which Class Members must submit Claim Forms to the Settlement Administrator.

9. "Class Counsel" means Cohen Milstein Sellers & Toll PLLC and Quinn Emanuel Urquhart & Sullivan, LLP.

10. "Class Plaintiffs" are Iowa Public Employees' Retirement System, Los Angeles County Employees Retirement Association, Orange County Employees Retirement System, Sonoma County Employees' Retirement Association, and Torus Capital, LLC.

11. "Court" means the United States District Court for the Southern District of New York.

12. "Credited Claim Value" means the credited claim value of each eligible Stock Loan Transaction as calculated pursuant to Section III, *infra*.

13. "Damages Multiplier" means the damages multiplier applied to the notional value of each eligible Stock Loan Transaction, as appropriate for the type of transaction, described in Section III, *infra*.

14. "Execution Date" means January 20, 2022.

15. "Investment Vehicles" means any investment company or Pooled investment fund, including, but not limited to: (i) mutual fund families, exchange-traded funds, fund of funds and hedge funds, in which a Defendant has or may have a direct or indirect interest, or as to which its affiliates may act as an investment advisor, but of which a Defendant or its representative affiliates is not a majority owner or does not hold a majority of beneficial interest,

and (ii) any Employee Benefit Plan as to which a Defendant or its affiliates acts as an investment advisor or otherwise may be a fiduciary.

16. "Legal Risk Multiplier" means the legal risk multiplier applied to the notional value of each eligible Stock Loan Transaction, as appropriate for the type of transaction, described in Section III, *infra*.

17. "Loan Cost" means the basis-points-denominated loan cost value calculated by the Settlement Administrator for each Stock Loan Transaction pursuant to Section III, *infra*.

18. "Net Settlement Fund," used in the singular, means the Settlement Fund less (i) the amount of the Fee and Expense Award and any Plaintiffs' Service Award, if requested, and to the extent allowed by the Court; (ii) Class Notice and Administration Expenses; (iii) Taxes and Tax Expenses; and (iv) any other fees or expenses approved by the Court.  Used in the plural, "Net Settlement Funds" means the Net Settlement Fund attributable to the Credit Suisse Settlement Agreement and the Net Settlement Fund attributable to the New Settlement Agreement collectively, but not in aggregate; *i.e.*, the distributions from each fund will be calculated independently.

19. "Open Stock Loan Transaction" means a Stock Loan Transaction in which the borrower of stock may return it at their discretion and the lender of stock may recall the stock at their discretion (triggering a requirement that the borrower return the stock within a defined settlement time).  *Compare* "Term Stock Loan Transaction."  For the purposes of this Plan of Allocation, all Open Stock Loan Transactions are treated as a separate transaction with respect to each day the loan remains open.

20. "Prime Broker Defendants" means Settling Credit Suisse Defendants and Goldman Sachs, Morgan Stanley JPMorgan, UBS, and Bank of America Merrill Lynch,

including affiliates named in the Amended Complaint in this Action (ECF No. 73). As used in this Plan of Allocation except in the definition of "Settlement Class," *infra*, the term includes these parties and their direct and indirect parents, subsidiaries and divisions.

21. "Proof of Claim and Release Form" means the form so titled provided to, requested by, or submitted by Settlement Class Members, whether submitted on paper or electronically, and includes any electronic claim data submitted by Settlement Class Members.

22. "Released Credit Suisse Parties" means Settling Credit Suisse Defendants and each of their respective past or present direct and indirect parents (including holding companies), subsidiaries, affiliates, associates (all as defined in SEC Rule 12b-2, promulgated pursuant to the Securities Exchange Act of 1934, as amended), divisions, joint ventures, predecessors, successors, and each of their respective past, present, and future officers, directors, managers, members, partners, shareholders, insurers, employees, agents, attorneys, legal or other representatives, trustees, heirs, executors, administrators, advisors, and assigns, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

23. "Settlement," used in the singular, means the settlement described in the Credit Suisse Settlement Agreement. "Settlements" means the settlements described in the Credit Suisse Settlement Agreement and the New Settlement Agreement, collectively.

24. "Settlement Administrator" means Epiq Systems, Inc.

25. "Settlement Amount" means the sum of $81,000,000.

26. "Settlement Class" means all Persons or entities who, directly or through an agent, entered into Stock Loan Transactions with the Prime Broker Defendants, direct or indirect parents, subsidiaries or divisions of the Prime Broker Defendants, or the Released Credit Suisse Parties, in the United States from January 7, 2009 through the Execution Date (the "Settlement

Class Period"), inclusive.  Excluded from the Settlement Class are Defendants and their employees, affiliates, parents, subsidiaries, and co-conspirators, should any exist, whether or not named in the Amended Complaint, entities which previously requested exclusion from any Class in this Action,[1] the United States Government, and all of the Released Credit Suisse Parties, provided, however, that Investment Vehicles shall not be excluded from the definition of the Settlement Class.

27.    "Settlement Class Member" means a Person who falls within the definition of the Settlement Class and has not submitted a Request for Exclusion of the Settlement Class in connection with the Notice that has been accepted by the Court.

28.    "Settlement Fund" means the Settlement Amount, together with all interest and income earned thereon after being transferred to the Escrow Account.

29.    "Settlement Website" means the website located at www.StockLoanSettlements.com.

30.    "Stock Loan Transaction(s)" means any transaction, including any transaction facilitated by a prime broker or agent lender, in which an owner of a stock temporarily lends the stock in exchange for collateral or in which a borrower of a stock provides collateral to temporarily borrow a security, and in which the stock is ultimately returned to the lender at a later date, at which time the lender returns the collateral to the borrower.  "Stock Loan Transactions" do not include non-equity securities lending or stock repurchase (repo) transactions.

---

[1] These entities are Citadel LLC, Two Sigma Investments, PDT Partners, Renaissance Technologies LLC, TGS Management, Voloridge Investment Management, and D.E. Shaw Group and their corporate parents, subsidiaries, and wholly-owned affiliates (the "Opt-out Entities").

31. "Term Stock Loan Transactions" are Stock Loan Transactions in which either or both the borrower and lender may not return or recall the stock for a specified time exceeding one business day.

32. "Settling Credit Suisse Defendants" means Credit Suisse Group AG; Credit Suisse AG; Credit Suisse Securities (USA) LLC; Credit Suisse First Boston Next Fund, Inc.; and Credit Suisse Prime Securities Services (USA) LLC.

## II. ELIGIBILITY OF CLAIMANTS

33. The proceeds of the Net Settlement Fund will be paid to Authorized Claimants who submit a valid Proof of Claim and Release Form by the Claims Bar Date. This section describes the administrative procedures that will apply to determine eligibility and the effect of Class Members submitting (or not submitting) Proof of Claim and Release Forms.

A. <u>Requirement to Submit a Proof of Claim and Release Form</u>

34. Each Settlement Class Member wishing to receive proceeds from the Net Settlement Fund must complete and submit a Proof of Claim and Release Form which, *inter alia*, releases all Released Class Claims against all Released Credit Suisse Parties (as those terms are defined in the Credit Suisse Settlement Agreement), is signed under penalty of perjury by an authorized Person, consents to the disclosure, waiver, and instruction paragraphs in Section V of the Proof of Claim and Release Form, and is supported by such documents or proof as set out in the Proof of Claim and Release Form.

B. <u>Effect of Not Submitting a Proof of Claim and Release Form</u>

35. Any Settlement Class Member who does not submit a complete Proof of Claim and Release Form by the Claims Bar Date, or whose Proof of Claim and Release Form is rejected by the Settlement Administrator and not re-submitted correctly by the Claims Bar Date, will not be entitled to receive any of the proceeds from the Net Settlement Fund, but will in all

other respects be subject to and bound by the provisions of the Credit Suisse Settlement Agreement, the releases contained therein, and the Judgement and Order of Dismissal, and will be barred from bringing any action or proceeding against the Released Credit Suisse Parties concerning the Released Class Claims. Class Counsel shall have the discretion, but not the obligation, to accept late-submitted claims for processing by the Settlement Administrator, so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed.

   C. <u>Determination of Eligibility; Claim Deficiency Notices</u>

  36. The Settlement Administrator will review each Proof of Claim and Release Form submitted by the Claims Bar Date. The Settlement Administrator will determine: (i) whether the Claimant is an eligible Settlement Class Member; (ii) whether the Proof of Claim and Release Form is complete and sufficient in accordance with the Settlement Agreement and any applicable orders of the Court, including requirements set forth in this Plan of Allocation and instructions on the Proof of Claim and Release Form; and (iii) the extent, if any, to which each claim will be allowed.

  37. Proof of Claim and Release Forms that do not meet the submission requirements may be rejected in whole or in part. Prior to rejection of a Proof of Claim and Release Form, the Settlement Administrator will provide the Claimant with a Claim Deficiency Notice. The Claim Deficiency Notice will, in a timely fashion and in writing, notify all Claimants whose Claim Forms the Claims Administrator proposes to reject, in whole or in part, and set out the reason(s) therefore, and the Claimant will have an opportunity to respond within a reasonable time as determined at the Settlement Administrator's discretion.

  38. The Settlement Administrator will not issue Claim Deficiency Notices regarding a Claimant's submission of Stock Loan Transactions from January 21, 2022, through August 22,

2023 for purposes of the Credit Suisse Settlement; such transactions are ineligible as the basis for claims to the Credit Suisse Settlement but may form the basis of claims to the New Settlement, and will be presumed by the Settlement Administrator to be submitted only in connection with the New Settlement.

39.     If a dispute concerning a Claimant's claim cannot be resolved, Class Counsel will thereafter present such disputes to the Court.

D.      Submission of Supporting Data and Documents

40.     For their claim to be deemed eligible, Claimants must submit written or electronic data relating to their Stock Loan Transactions in accordance with the instructions on the Proof of Claim and Release Form, §§ I-III.  Electronic data must be submitted using the template available on the Settlement Website, www.StockLoanSettlements.com.  Documentation of transactions should be submitted only as required by instructions on the Proof of Claim and Release Form or requested by the Settlement Administrator.

41.     Each submitted Stock Loan Transaction must be submitted with terms sufficient to calculate and verify the transaction's award pursuant to Section **Error! Reference source not found.**II of this Plan of Allocation or it will be rejected as ineligible.  Each submitted Stock Loan Transaction must have one and only one of each of the following terms or characteristics or it will be rejected:

(i)     Transaction date (with separate transactions for each day of open loans, as discussed *infra* ¶¶ 42-43);

(ii)    Indicator whether the Claimant was a borrower or a lender in the transaction;

(iii)   Identifier of the corporate family of Prime Broker Defendant which was the Claimant's counterparty to the transaction;

(iv)    CUSIP or CINS identifier for the stock that is the subject of the transaction;

(v)     Quantity of shares of stock that are the subject of the transaction;

(vi) Value of posted collateral, expressed in U.S. dollars at cash value (for cash and cash-equivalents) or end-of-day mark-to-market value (for non-cash securities);

(vii) Indicator whether the transaction's loan cost was expressed as a rebate or fee; and

(viii) Rebate[2] or fee[3] term (not both) expressed as an interest rate in annualized basis points (bps) on the amount of posted collateral (for rebates) or on the quantity of stock borrowed or loaned times the end-of-day mark-to-market price of the stock in U.S. dollars (for fees).

42. Open Stock Loan Transactions are treated as a separate transaction for each day the subject stock remains on loan. Claimants should submit a separate transaction for each day, specifying accurate values for each of the terms in Paragraph 41 for each day the loan remained open.

43. Term Stock Loan Transactions are treated as if they were separate transactions for each day for the length of the term of the loan. Claimants should submit a separate transaction for each day, specifying accurate values for each of the terms in Paragraph 41 for each day the loan remained open. After the term of the loan, if the loan remained open, Claimants should continue to submit separate transactions for each day.

44. Nonconforming or unusual Stock Loan Transactions may be submitted if and only if accurate values for the terms in Paragraph 41, reflective of the economic reality of the transaction, may be determined. Claimants are responsible for accurately characterizing their Stock Loan Transactions and should be prepared to document them. The Settlement Administrator will request documentation as necessary to detect and prevent inaccurate claims.

---

[2] Rebates should be expressed as positive terms in bps when the lender must return a portion (the rebate) of interest on the borrower's collateral to the borrower, and negative terms when the lender must return no interest on the borrower's collateral and the borrower must pay additional interest calculated based on the value of posted collateral.

[3] Claimants are responsible for calculating any fee as an expression of annualized basis points of interest on the value of loaned stock, regardless of whether the terms of the transaction so express them.

10

45. Proof of Claim and Release Forms supported by data or documentation that does not meet the requirements set forth in the Proof of Claim and Release Form or does not follow the template for submission of electronic data made available on the Settlement Website may be rejected by the Settlement Administrator in whole or in part. Failure to provide requested documentation may be grounds for the Settlement Administrator to reject a Claimant's claim in whole or in part.

E. Claims Procedures and Timing

46. On receipt and processing of a Claimant's data and records, the Settlement Administrator will: (i) determine the eligibility for an award of each of the Claimant's submitted Stock Loan Transactions; (ii) determine if a Claim Deficiency Notice is required with respect to any ineligible Stock Loan Transaction submitted in connection with the Claimant's Proof of Claim and Release Form; and (iii) calculate, for each of the Claimant's submitted eligible Stock Loan Transactions, the transaction's Credited Claim Value, as described in Section III below.

47. Following receipt of a Claimant's Proof of Claim and Release Form via the Settlement Website, the Settlement Administrator will issue a "Confirmation of Claim Receipt" to the Claimant via email to the Claimant. For claims submitted via mail, the Settlement Administrator will issue a "Confirmation of Claim Receipt" provided that the Claimant provides a self-addressed stamped envelope for the receipt's return.

III. CALCULATION OF AWARDS

A. The Net Settlement Fund for Distribution

48. The Credit Suisse Settling Defendants have entered into a proposed Settlement Agreement with Class Plaintiffs that provide for total payments of $81,000,000 into the Settlement Fund. If the Settlement Agreement is approved, the Net Settlement Fund (defined above) will be distributed to all Authorized Claimants in accordance with the Plan of Allocation

11

approved by the Court.  No monies will revert to the Credit Suisse Settling Defendants if there is final approval of the Settlement Agreement by the Court.

49. The Net Settlement Fund will be distributed *pro rata* among Claimants in proportion to the sum of their Credited Claim Values for the Settlement Class Period, as set out below.

B. Calculation of Credited Claim Values

50. For each eligible Stock Loan Transaction, the Settlement Administrator will calculate a Credited Claim Value for that Stock Loan Transaction.  The Credited Claim Value for a Stock Loan Transaction is determined by the formula:

$$CCV = NV \; x \; DM \; x \; LRM$$

where CCV means Credited Claim Value; NV represents the notional value of the transaction; DM represents a damages multiplier reflecting approximate damages related to the Stock Loan Transaction; and LM represents a legal risk multiplier reflecting adjustments for heightened legal risks associated with recovering damages for certain kinds of Stock Loan Transactions.  Further detail about how the Settlement Administrator will determine NV, DM, and LRM for each Stock Loan Transaction follows.

1. Calculating Notional Value

51. The Notional Value (NV) of each Stock Loan Transaction is the value of collateral posted in connection with the transaction as drawn from the appropriate field on the Claimant's Proof of Claim and Release Form.

2. Determining Damages Multipliers

52. The Damages Multiplier (DM) of each Stock Loan Transaction will be determined based on (i) whether the Claimant was a Borrower or Lender with respect to the

12

transaction; (ii) the "Temperature" of the transaction, as determined below; and (iii) the date of the transaction.

        a.  *Categorizing Borrower/Lender Status*

53. The Settlement Administrator will determine whether the Settlement Class Member borrowed stock from a Prime Broker Defendant ("Borrower" transactions) or loaned stock to a Prime Broker Defendant ("Lender" transactions) with respect to each Stock Loan Transaction by reference to the appropriate field on the Claimant's Proof of Claim and Release Form.

        b.  *Determining Temperature*

54. The Settlement Administrator will determine the "Temperature" of each Stock Loan Transaction as follows:

        (1)  Calculating Loan Cost

55. First, for each eligible Stock Loan Transaction, the Settlement Administrator will calculate the Loan Cost of the transaction as follows:

56. For eligible Stock Loan Transactions submitted with rebate terms, the Loan Cost will be calculated by subtracting the rebate term from the transaction date's Federal Funds Open Rate ("FFO") (for transactions until September 15, 2016) or Overnight Bank Funding Rate ("OBFR") (for transactions from September 15, 2016 onward). The Settlement Administrator will use a generally available commercial database to determine the relevant FFO or OBFR for each transaction.

57. For eligible Stock Loan Transactions submitted with fee terms, the Loan Cost will be the fee term drawn from the appropriate field in the Claimant's Proof of Claim and Release Form.

58. If the Settlement Administrator is unable to calculate the Loan Cost of a Stock Loan Transaction using one of the two above methods, but the Claimant has submitted all requested information with respect to the transaction, the Settlement Administrator may at its discretion or at direction of Class Counsel reasonably estimate the transaction's Loan Cost in accordance with the economic reality of the transaction and ordinary industry practice. The Settlement Administrator may request such additional information or documentation from the Claimant as it determines is necessary to make such an estimate.

(2) Assigning Temperature

59. Next, for each eligible Stock Loan Transaction, the Settlement Administrator will assign the transaction a "Temperature."

60. For Stock Loan Transactions in which the Claimant borrowed stock from a Prime Broker Defendant, the Settlement Administrator will categorize the transaction as "Hot" if the Loan Cost of the transaction exceeded 52.1 bps; as "Warm" if the Loan Cost of the transaction was between 29.4 bps (exclusive) and 52.1 bps (inclusive); and as "General Collateral" if the Loan Cost was 29.4 bps or below.

61. For Stock Loan Transactions in which the Claimant loaned stock to a Prime Broker Defendant, the Settlement Administrator will categorize the transaction as "Hot" if the Loan Cost of the transaction exceeded 30 bps; as "Warm" if the Loan Cost of the transaction was between 10 bps (exclusive) and 30 bps (inclusive); and as "General Collateral" if the Loan Cost of the transaction was 10 bps or below.

c. *Determining Date of Transaction*

62. The Settlement Administrator will determine the date of each Stock Loan Transaction by reference to the appropriate field on the Claimant's Proof of Claim and Release

Form. All transactions from the start of the Settlement Class Period through December 31, 2011 will be designated "Pre-2012" transactions.

              d.      *Determining Damages Multiplier Factor*

63. Using the transaction characteristics determined in subsections (a) through (c), *supra*, the Settlement Administrator will determine the Damages Multiplier (DM) for each Stock Loan Transaction as follows:

| Transaction Characteristics | Damages Multiplier |
|---|---|
| 2012-2022 Hot Borrower | $3.373 \times 10^{-5}$ |
| 2012-2022 Warm Borrower | $7.348 \times 10^{-6}$ |
| 2012-2022 General Collateral Borrower | $6.690 \times 10^{-6}$ |
| 2012-2022 Hot Lender | $2.917 \times 10^{-5}$ |
| 2012-2022 Warm Lender | $2.816 \times 10^{-6}$ |
| 2012-2022 General Collateral Lender | $1.408 \times 10^{-6}$ |
| All Pre-2012 Transactions | $1.408 \times 10^{-6}$ |

       3.      <u>Determining Legal Risk Multipliers</u>

64. Using the transaction characteristics determined above in Subsections B.2(a)-(c), the Settlement Administrator will assign Legal Risk Multipliers (LRM) to each eligible Stock Loan Transaction as follows:

| Transaction Characteristics | Legal Risk Multiplier |
|---|---|
| All Pre-2012 Transactions | 0.1 |
| 2012-2022 General Collateral Lender | 0.1 |
| All Other Transactions from August 16, 2017 through the end of the Settlement Class Period | 0.25 |
| All Other Transactions from January 1, 2012 through August 15, 2017 | 1.0 |

**IV.    DETERMINATION AND DISTRIBUTION OF AWARDS**

65. For each Authorized Claimant, the Settlement Administrator will sum the total of all Credited Claim Values for each of the Claimant's eligible Stock Loan Transactions.

66. Each Authorized Claimant's award from the Net Settlement Fund will be a *pro rata* share of the Net Settlement Fund proportionate to the ratio of the sum of their Credited Claim Values to the sum of all Credited Claim Values for the Settlement.

67. For administrative efficiency, each Authorized Claimant's award from the Settlement may be combined with the Claimant's award from the other settlements.

68. Following the Effective Date of the Settlement and the Settlement Administrator's calculation of each Authorized Claimant's award(s) or alternative minimum payment (see Section V, *infra*), the Settlement Administrator will distribute the Net Settlement Fund to Authorized Claimants pursuant to the Plan of Allocation approved by the Court.

69. If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the initial date of distribution of the Net Settlement Fund, the Settlement Administrator will, if feasible, allocate such balance among Authorized Claimants in an equitable and economic fashion. These redistributions will be repeated until the remaining balance in the Net Settlement Fund is impracticable to distribute equitably and economically to Authorized Claimants, at which point any remaining balance will be donated to an appropriate 501(c)(3) non-profit selected by Class Counsel and approved by the Court. For the sake of clarity, Authorized Claimants who receive an alternative minimum payment may, at the Settlement Administrator's discretion, be excluded from subsequent distributions entirely.

## V.   ALTERNATIVE MINIMUM PAYMENT

70. For each Authorized Claimant, if Class Counsel and the Settlement Administrator reasonably determine that the cost of administering claims to that Authorized Claimant would exceed the value of the awards to that Authorized Claimant, Class Counsel will instruct the Settlement Administrator to preserve the value of the Settlement Fund and make an alternative minimum payment to satisfy such claims. The alternative minimum payment will be a set

amount for all applicable Authorized Claimants and will be based on the participation rate of the Settlement Class in the Settlement. If a Settlement Class Member submits a Claim that does not conform to the data standards required by Section II of this Plan of Allocation, Class Counsel, at its discretion, may direct the Settlement Administrator to accept the Claim, deny the Claim, or assign it a discounted value. If the Settlements are both approved, at the discretion of Class Counsel and the Settlement Administrator there may be a single alternative minimum payment amount made for all Settlements.

DATED: February 28, 2024

Respectfully submitted,

| | |
|---|---|
| **COHEN MILSTEIN SELLER & TOLL PLLC** | **QUINN EMANUEL URQUHART & SULLIVAN, LLP** |
| By: */s/ Michael B. Eisenkraft* <br> Michael B. Eisenkraft <br> Christopher J. Bateman <br> 88 Pine Street, 14th Floor <br> New York, New York 10005 <br><br> Telephone: (212) 838-7797 <br> meisenkraft@cohenmilstein.com <br> cbateman@cohenmilstein.com <br><br> Julie G. Reiser (*pro hac vice*) <br> Richard A. Koffman (*pro hac vice*) <br> Kit A. Pierson (*pro hac vice*) <br> Emmy L. Levens (*pro hac vice*) <br> Daniel McCuaig (*pro hac vice*) <br> Robert W. Cobbs (*pro hac vice*) <br> 1100 New York Ave NW, Suite 500 <br> Washington, DC 20005 <br> Telephone: (202) 408-4600 <br> jreiser@cohenmilstein.com <br> rkoffman@cohenmilstein.com <br> kpierson@cohenmilsetin.com <br> elevens@cohenmilstein.com <br> dmccuaig@cohenmilstein.com <br> rcobbs@cohenmilstein.com | By: */s/ Daniel L. Brockett* <br> Daniel L. BrockettSascha N. Rand Steig D. Olson <br> Deborah K. Brown <br> David LeRay <br> Maxwell Deabler-Meadows <br> Avi Grunfeld <br> Nicolas Siebert <br> 51 Madison Avenue, 22nd Floor <br> New York, New York 10010 <br> Telephone: (212) 849-7000 <br> danbrockett@quinnemanuel.com <br> sascharand@quinnemnuel.com <br> steigolson@quinnemanuel.com <br> deborahbrown@quinnemanuel.com <br> davidleray@quinnemanuel.com <br> maxmeadows@quinnemanuel.com <br> avigrunfeld@quinnemanuel.com <br> nicolassiebert@quinnemanuel.com <br><br> Jeremy D. Andersen (*pro hac vice*) <br> 865 South Figueroa Street, 10th Floor <br> Los Angeles, California 90017 <br> Telephone: (213) 443-3000 <br> jeremyandersen@quinnemanuel.com |

17

**SAFIRSTEIN LAW LLC**

Peter Safirstein
45 N. Broad Street
Suite 100
Ridgewood, NJ 07450
Telephone: (917) 952-9458
psafirstein@safirsteinlaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

                                              */s/ Michael B. Eisenkraft*
                                              Michael B. Eisenkraft
                                              88 Pine Street, 14th Floor
                                              New York, New York 10005
                                              Telephone: (212) 838-7797
                                              meisenkraft@cohenmilstein.com