UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IOWA PUBLIC EMPLOYEES' RETIREMENT
SYSTEM; LOS ANGELES COUNTY
EMPLOYEES RETIREMENT ASSOCIATION;
ORANGE COUNTY EMPLOYEES RETIREMENT
SYSTEM; SONOMA COUNTY EMPLOYEES'
RETIREMENT ASSOCIATION; and TORUS
CAPITAL, LLC, *on behalf of themselves and all
others similarly situated,*

                    Plaintiffs,

                    -v.-

MERRILL LYNCH, PIERCE, FENNER & SMITH
INC.; MERRILL LYNCH L.P. HOLDINGS, INC.;
and MERRILL LYNCH PROFESSIONAL
CLEARING CORP.,

                    Defendants.

---

17 Civ. 6221 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

With a class now certified and their claims against most of the
defendants now resolved, Plaintiffs seek supplemental discovery, in the form of
data from the remaining defendants in the case (collectively, "Defendants") and
from Markit, a third-party data-gathering firm. Plaintiffs argue that they are
entitled to such discovery either because (i) Plaintiffs have satisfied the
standard for reopening discovery or (ii) such discovery is permissible under
Federal Rule of Civil Procedure 26(e). Defendants oppose the motion,
challenging both grounds for production of supplemental discovery, and
request that, in the alternative, the Court grant Defendants the reciprocal
opportunity to pursue discovery related to post-2017 damages. For the

reasons set forth below, and despite a measure of concern regarding Plaintiffs'

imperfect diligence earlier in this case, the Court grants both motions.

## BACKGROUND[1]

Since the filing of this marathon antitrust litigation, wherein Plaintiffs

allege a conspiracy that prevented the U.S. stock loan market from

transitioning to a transparent, direct electronic exchange, this Court has

issued two opinions.  *See Iowa Pub. Employees' Ret. Sys.* v. *Merrill Lynch,*

*Pierce, Fenner & Smith Inc.*, 340 F. Supp. 3d 285 (S.D.N.Y. 2018) ("*IPERS I*")

(denying Defendants' motion to dismiss); *Iowa Pub. Employees' Ret. Sys.* v.

*Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 17 Civ. 6221 (KPF) (SLC), 2024

WL 5004632 (S.D.N.Y. Dec. 6, 2024) ("*IPERS II*") (resolving motions for class

certification).  The Court assumes familiarity with these prior opinions, adopts

and employs the defined terms from *IPERS I* and *IPERS II*, and recites here only

the factual and procedural histories necessary to resolve the instant motion.

On May 26, 2020, the Court entered the operative Fourth Amended Case

Management Plan.  (Dkt. #298).  According to that plan, fact discovery closed

on October 16, 2020.  (*Id.* at 4).  The plan also included deadlines for class

certification briefing.  (*Id.* at 3).

---

[1]    For ease of reference, the Court refers to Plaintiffs' memorandum of law in support of
their motion for supplemental discovery as "Pl. Br." (Dkt. #709); to Defendants'
memorandum of law in opposition to Plaintiffs' motion as "Def. Opp." (Dkt. #716); and
to Plaintiffs' reply memorandum of law as "Pl. Reply" (Dkt. #718).

In support of their motion, Plaintiffs submitted the Declaration of Nicolas Siebert (Dkt.
#710 ("Siebert Decl.")).  In opposition to Plaintiffs' motion, Defendants submitted the
Declaration of Michael P. Mitchell (Dkt. #717 ("Mitchell Decl.")).

In their class certification briefing, and later in their objections to Judge Cave's report and recommendation on class certification, the parties disputed the proper end date for the Class Period. Plaintiffs proposed a Class Period ending on the date of the filing of the original motion for class certification, February 22, 2021. (*See* Dkt. #415 at 8; Dkt. #573 at 16-17). Defendants, in turn, argued that the Class Period should not extend beyond 2017, asserting that (i) there was no evidentiary basis for certifying a class that extended beyond 2017 because there had been no discovery covering the additional four-year period encompassed in Plaintiffs' proposed Class Period; and (ii) certifying a class beyond 2017 would waste resources, because it would require additional data productions, fact discovery, expert reports, and supplemental briefing. (*See* Dkt. #431 at 49-50; Dkt. #595 at 23-25).

In evaluating the parties' positions, this Court noted that certifying courts are not bound by the class definition proposed in a complaint and, perhaps more importantly, that there is no specific point in a case's life cycle that is consistently used as the end date for a class period. *See IPERS II*, 2024 WL 5004632, at *21. Ultimately, "the Court set[ ] a Class Period of January 1, 2012, to November 17, 2017, the date of the Amended Complaint," reasoning both that "the Amended Complaint is the operative complaint in this matter, and … the evidence presented by Plaintiffs extends throughout that period." *Id.* at *22. Of note, however, the Court recognized the possibility that Plaintiffs could seek damages beyond the Class Period end date of November 17, 2017, if such damages were traceable to acts taken by the conspirators during the

3

Class Period. *See id.* (citing *Zenith Radio Corp.* v. *Hazeltine Rsch., Inc.*, 401 U.S. 321, 339 (1971) ("If a plaintiff feels the adverse impact of an antitrust conspiracy on a particular date, a cause of action immediately accrues to him to recover all damages incurred by that date *and all provable damages that will flow in the future from the acts of the conspirators on that date*[,]" unless the fact of their accrual "is speculative or their amount and nature unprovable." (emphasis added))). Because it found the parties' briefing on this issue to be cursory, the Court ordered Plaintiffs to seek additional productions of data relevant to post-2017 damages, if desired, through a separate motion. The Court ultimately certified the following Class:

> All persons and entities who, directly or through an agent, entered into at least 100 U.S. Stock Loan Transactions as a borrower from the prime brokerage businesses of the U.S.-based entities of the Prime Broker Defendants, or at least 100 U.S. Stock Loan Transactions as a lender of Hard-to-Borrow stock to the U.S.-based entities of the Prime Broker Defendants, from January 1, 2012 until [November 17], 2017.

*Id.* at *5, 22.

Following certification, the parties submitted a joint letter to the Court that provided their respective positions on next steps in this case, which positions included Plaintiffs' desire for supplemental discovery. (Dkt. #705). The Court held a conference on January 17, 2025, at which it set a briefing schedule for Plaintiffs' motion for supplemental discovery. (*See* January 17, 2025 Minute Entry). In accordance with that schedule, on January 24, 2025, Plaintiffs filed a letter motion seeking supplemental discovery. (Dkt. #709).

Defendants filed their opposition on February 7, 2025.  (Dkt. #716).  On February 24, 2025, Plaintiffs filed their reply in further support of the motion for supplemental discovery.  (Dkt. #723).

### DISCUSSION

**A.    Applicable Law**

**1.    Reopening Discovery**

A scheduling order issued by a district court "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "The 'good cause' inquiry turns on the diligence of the party seeking to modify the scheduling order."  *Saray Dokum* v. *Madeni Aksam Sanayi Turizm A.S.*, 335 F.R.D. 50, 52 (S.D.N.Y. 2020) (citing *Parker* v. *Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000)).  In making the determination of whether good cause exists, courts in this Circuit generally consider the following factors:

> [i] whether trial is imminent, [ii] whether the request is opposed, [iii] whether the non-moving party would be prejudiced, [iv] whether the moving party was diligent in obtaining discovery within the guidelines established by the court, [v] the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and [vi] the likelihood that the discovery will lead to relevant evidence.

*Pharmacy, Inc.* v. *Am. Pharm. Partners, Inc.*, No. 05 Civ. 776 (DRH) (AKT), 2008 WL 4415263, at *3 (E.D.N.Y. Sept. 24, 2008); *see also Stapleton* v. *Prince Carpentry, Inc.*, No. 22 Civ. 4044 (NCM) (JMW), 2024 WL 3949978, at *3-5 (E.D.N.Y. Aug. 26, 2024); *Trombetta* v. *Novocin*, No. 18 Civ. 993 (RA) (SLC), 2023 WL 2388722, at *3-5 (S.D.N.Y. Mar. 7, 2023); *Savor Health, LLC* v. *Day*, No. 19 Civ. 9798 (RA) (JW), 2022 WL 2866429, at *3-5 (S.D.N.Y. July 21,

2022). While these factors are instructive, courts do not understand them to be mandatory. *See Saray Dokum*, 335 F.R.D. at 52 (noting that "[i]n some situations, courts do not apply these factors," but proceeding to "consider them to the extent … pertinent"). "The decision to re-open discovery is within the Court's discretion." *Ciaramella* v. *Zucker*, No. 18 Civ. 6945 (MKV) (SLC), 2021 WL 4206779, at *1 (S.D.N.Y. Aug. 10, 2021).

### 2. Duty to Supplement

Federal Rule of Civil Procedure 26(e) requires "[a] party who has made a disclosure under Rule 26(a) — or who has responded to an interrogatory, request for production, or request for admission" to "supplement or correct its disclosure or response" in two instances: (i) "if the party learns that in some material respect the disclosure or response is incomplete or incorrect" or (ii) "as ordered by the court." Fed. R. Civ. P. 26(e). Rule 26(e) is usually applied in instances where there are "gaps or errors" in information previously required to be disclosed or produced. *See Hnot* v. *Willis Grp. Holdings Ltd.*, No. 01 Civ. 6558 (GEL), 2006 WL 2381869, at *5 (S.D.N.Y. Aug. 17, 2006).

### B. Analysis

Plaintiffs assert that, since the close of the Class Period in 2017, the "damages suffered by the class have continued to accrue" and Plaintiffs are entitled to recover those damages. (Pl. Br. 2-3 (citing *Zenith Radio*, 401 U.S. at 338-39, and *U.S. Football League* v. *Nat'l Football League*, 842 F.2d 1335, 1378 n.27 (2d Cir. 1988))). However, the current record includes transactional data only through December 31, 2017, and, as previously noted, fact discovery

closed on October 16, 2020.  (*See* Dkt. #298 at 4; Dkt. #573 at 16).  At the class certification stage, Plaintiffs argued that their experts' extrapolation method could be applied "to determine class-wide damages, which are ongoing, from January 1, 2018 through trial," using data that has already been produced, "through a temporal extrapolation."  (Dkt. #415 at 51).  Plaintiffs repeat that argument here, and claim that it is "consistent with the well-recognized principle that class plaintiffs may calculate 'aggregate classwide damages so long as they "roughly reflect" the harm caused to plaintiffs.'"  (Pl. Br. 2 (quoting *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 31 (E.D.N.Y. 2020) (quoting *Hickory Secs. Ltd.* v. *Republic of Argentina*, 493 F. App'x 156, 158 (2d Cir. 2012) (summary order)))).  They contend that extrapolation would at least roughly reflect the ongoing harm, but they acknowledge that they "would be able to present a more robust damages analysis at trial with access to a limited amount of additional data."  (*Id.*).[2]

Accordingly, Plaintiffs seek transactional data for January 1, 2018, through September 3, 2024, the day before this Court approved the settlement between Plaintiffs and the settling defendants in this case.  Specifically, they request that Defendants provide updated information for six datasets.  (*See*

---

[2]    At class certification, Defendants argued that extending the Class Period beyond 2017 was improper, in part because there was no discovery covering that period.  Defendants further asserted that "the minimal evidence that does exist concerning the post-2017 period strongly suggests that market conditions and prices during that period differed from those in the earlier period," and thus that any extrapolation from the data would be unreliable.  (Dkt. #431 at 49).  In their opposition to Plaintiffs' current motion, Defendants do not address whether Plaintiffs are entitled, as a general matter, to seek damages accruing through trial, or whether extrapolation would be preferable to additional discovery.

Siebert Decl., Ex. B at 3-4).[3]  They also seek updated dictionaries and lookup tables, so that they can understand the data produced.  (Pl. Br. 4).  Finally, they request profit and loss reports from Defendants, which they claim are maintained in the ordinary course of business.  (*Id.*).  Plaintiffs assert that the Court can order production of supplemental data and documents on the basis that Plaintiffs have shown good cause to reopen discovery or pursuant to Rule 26(e).  The Court addresses each of these purported bases in turn.  Additionally, Plaintiffs seek leave to issue a second subpoena to Markit, for data covering the same period, on the basis that they have shown good cause.  (*Id.* at 7).  Defendants oppose Plaintiffs' requests, but ask that, in the event that discovery is reopened, they be permitted to seek discovery to support their defenses.  (Def. Opp. 10).

### 1.    The Court Compels Supplemental Production of Discovery from Defendants

#### a.    Good Cause Exists to Reopen Discovery

Plaintiffs argue in the first instance that good cause exists to reopen discovery for the production of transactional data from Defendants that would allow Plaintiffs to calculate the alleged damages that have continued to accrue after the Class Period.  (Pl. Br. 4-6).  In determining whether Plaintiffs have established good cause, the Court considers the six factors identified and

---

[3]    Plaintiffs request that this data be provided "in the same format, with the same geographic scope, and with the same anonymization scheme as the prior productions." (Pl. Br. 4).  Plaintiffs are not requesting updated productions of the "Locates Database" or "Lender Availability Database," which Defendants previously provided, up to December 31, 2017.  (*Id.* at 4 n.4).

applied by other courts in this Circuit. *See Pharmacy, Inc.*, 2008 WL 4415263, at *3.

The first factor, whether trial is imminent, weighs in favor of reopening discovery, because no trial date has been set. Indeed, the schedule that the parties proposed to the Court after *IPERS II* provided for several months of expert discovery and contemplated the filing of summary judgment and/or *Daubert* motions. (Dkt. #705). *See Stapleton*, 2024 WL 3949978, at *3 (finding that the first factor weighed in favor of reopening where the parties had recently moved for summary judgment and no briefing schedule had been set); *see also Moroughan* v. *County of Suffolk*, 320 F. Supp. 3d 511, 515 (E.D.N.Y. 2018) (finding that the first factor weighed in favor of reopening where no trial date had been set and the parties had a schedule in place for summary judgment motions when the discovery issue arose).

The Court next considers the second and third factors together; the motion is opposed, and Defendants argue that they will be prejudiced by being compelled to comply with additional discovery. (Def. Opp. 7-8). As to prejudice, Defendants contend that they will incur "substantial costs" if discovery is reopened, because the current data requests are "similar in magnitude" to those requested and produced when the discovery period was open. (*Id.* at 7). Further, that burden will be greater because Defendants have "added a new data system" and "personnel involved in the prior data collections have left." (*Id.*). In addition to emphasizing the amount of time and cost that supplemental productions would require, Defendants oppose the motion on the

9

basis that "it is not clear what [those] data productions from [Defendants]
would even do for Plaintiffs' damages model." (*Id.*).

As an initial matter, the Court agrees with Plaintiffs that Defendants'
decision to change the way they store data related to this case during its
pendency should not weigh in Defendants' favor because such reasoning
"would incentivize parties to complicate their record-keeping to stave off
discovery." (*See* Pl. Reply 3). The Court does, however, recognize that the
additional data now sought by Plaintiffs will entail significant effort and
expenditures from Defendants, and it rejects out of hand Plaintiffs' repeated
characterization of the supplemental discovery as "limited." (*See* Pl. Br. 1-4, 8;
Pl. Reply 1-2). Nevertheless, in this antitrust case where Plaintiffs may seek
damages that flow from the alleged conspiracy in operation during the Class
Period, the Court finds that any prejudice to Defendants resulting from the
effort to produce the additional data does not outweigh the need for this
additional discovery. *See Innovative Health LLC* v. *Biosense Webster, Inc.*,
No. 19 Civ. 1984 (JVS) (KES), 2024 WL 4405166, at *3 (C.D. Cal. Aug. 13,
2024) (finding that defendant "would suffer some prejudice … in the form of
expended time, costs, and resources," but that it did not "outweigh the
relevance" of sales data sought to update damages calculation). That is
particularly true, given the fact that Defendants may otherwise be required to
produce the same information at a later point in this case or, as suggested by
Plaintiffs, in another lawsuit. *See Pharmacy, Inc.*, 2008 WL 4415263, at *3
(finding that further discovery would not prejudice defendant because "[i]f

10

[p]laintiff were to prevail at trial, damages would include an amount representing lost profits through the date of trial [and therefore, d]efendant will be required to produce the information requested by [p]laintiff in either event, through discovery or at trial."); *N. Am. Soccer League* v. *Nat'l Football League*, No. 78 Civ. 4560 (CSH), 1984 WL 726, at *3 (S.D.N.Y. Aug. 8, 1984) (granting plaintiff's application to supplement the record regarding damages, because "[i]f [the court] did not permit [plaintiffs] to bring up to date its after-accruing damages before rendering judgment in this action, the plaintiffs would be obliged to seek them in a separate and subsequent action").[4]

Further, while Defendants also oppose supplemental production on the basis that it is unclear how the data productions would benefit the damages model, the Court finds that Plaintiffs have offered a sufficient explanation of how the data would be used. Plaintiffs intend to use the supplemental data requested from Defendants to calculate the difference between lend-side and borrow-side transaction costs, *i.e.*, the spread earned by Defendants on each transaction, which they will then compare with estimates of prices that would have occurred in the but-for world, in which the conspiracy was not operating. (*See* Pl. Br. 7; Pl. Reply 3).

Regarding the fourth factor, the Court finds that Plaintiffs were not entirely "diligent in obtaining discovery within the guidelines established by the

---

[4]    Plaintiffs have indicated that they would indeed consider filing another lawsuit to pursue damages accruing after November 17, 2017, in the event that they are precluded from seeking such damages here. (*See* Pl. Br. 4 n.3; *see also* Dkt. #573 at 8 n.4).

court." *Pharmacy, Inc.*, 2008 WL 4415263, at *3. As discussed, the Fourth

Amended Case Management Plan clearly states that "all fact discovery is [to be]

completed by October 16, 2020." (Dkt. #298 at 4). Plaintiffs argue that during

this discovery period, they "notified [Defendants] of their intent to seek the

[presently] requested information at the appropriate time." (Pl. Br. 5). They

point to 2019 email correspondence with Defendants, wherein Plaintiffs

explained that post-2017 data "is relevant to the data analysis as this is an

ongoing conspiracy" and "reserv[ed] rights to seek supplemental data as

appropriate to the needs of this case at a later stage." (*Id.* (quoting Siebert

Decl., Ex. A at 1 (June 4, 2019 email))).[5]

While Plaintiffs may have discussed this issue with Defendants, Plaintiffs

did not, while fact discovery was open, indicate *to the Court* that they intended

to seek supplemental discovery. They seek to explain this reticence by claiming

that "[r]esolving supplemental discovery" earlier "would have been costly, time-

consuming, and potentially fruitless, had the Court declined to certify the

class." (Pl. Br. 5). The Court disagrees. At the very least, Plaintiffs should

have identified this issue to the Court during the discovery period.

Nevertheless, the Court recognizes that Plaintiffs did raise the issue during

class certification briefing and at oral argument, in their limited objection to

Judge Cave's report and recommendation regarding class certification, and

immediately after the class was certified. (*See* Dkt. #556-1 at Slide 65; Dkt.

---

[5]    More fundamentally, the Court agrees with Plaintiffs that while they might have agreed to a cut-off date for document production of December 2017, Plaintiffs never agreed to "a 'damages period' with a firm end-date." (Pl. Reply 2; *see* Def. Opp. 2-3).

#559-1 at 52:2-53:2; Dkt. #573 at 7, 8 n.4, 11-17; Dkt. #705).  Ultimately, the Court declines to deny the supplemental discovery solely on the basis of Plaintiffs' failure to raise this issue with the Court during the discovery period, where (i) such discovery might not have been relevant if class certification had failed; (ii) years have elapsed between the time that discovery closed and the time that the class certification decision was issued, such that a large portion of the requested data did not exist while fact discovery was open; and (iii) the case alleges an ongoing antitrust conspiracy.[6]

As to the fifth factor, the Court finds that the need for this discovery was sufficiently foreseeable because Plaintiffs' claim for antitrust damages is ongoing.  *See Pharmacy, Inc.*, 2008 WL 4415263, at *5 (finding that the fifth factor weighed in favor of reopening where plaintiff's claim for lost profits was ongoing and two years had passed since the close of discovery and the time of the pre-trial discovery dispute).  Finally, the sixth factor, whether the requested material is likely to lead to the discovery of admissible evidence, also weighs in favor of reopening discovery.  The requested information will allow Plaintiffs to update their damages calculations that they intend to present to the factfinder at summary judgment or trial.  *See id.* ("There is no question that the discovery

---

[6]    In their opposition, Defendants collect various statements from Judge Cave expressing skepticism that Plaintiffs could demonstrate good cause to reopen discovery.  (Def. Opp. 4, 7 n.10).  Judge Cave's observations have merit, and the Court considered them seriously in resolving the instant motions.  The fact remains, however, that Plaintiffs' claims, if proven at trial, will require some method of calculating damages that have accrued post-December 2017.  Since Defendants maintain that extrapolation will not suffice for this time period, *see supra* note 2, the Court is constrained to permit the discovery Plaintiffs seek.

requested by Plaintiff with respect to its damages … will likely lead to relevant evidence.").

In addition to the factors discussed above, the Court notes that in their opposition, Defendants do not contest that Plaintiffs could be entitled to future damages stemming from anticompetitive conduct that allegedly occurred during the Class Period should they prevail at summary judgment or at trial. Moreover, as discussed, Defendants argued at the class certification stage that existing evidence regarding the post-2017 period suggested that market conditions and pricing differed from the earlier period for which discovery has been produced, such that extrapolating from that data to calculate damages would not be reliable. (Dkt. #431 at 49; *see also* Dkt. #557-1 at 92). That posture bolsters the need for post-2017 discovery, particularly in light of one of the "principal purpose[s] of the antitrust private cause of action," namely, "deter[rence of] anticompetitive practices." *Am. Soc. of Mech. Eng'rs, Inc.* v. *Hydrolevel Corp.*, 456 U.S. 556, 572 (1982). Accordingly, the Court finds that Plaintiffs have demonstrated good cause to reopen discovery to compel supplemental production of the six datasets, updated dictionaries and lookup tables, and profit and loss reports from Defendants for the period from January 1, 2018, to September 3, 2024.

### b.    Rule 26(e) Does Not Require Supplementation

Plaintiffs argue that "[i]ndependent of the Court's finding of 'good cause,' [Defendants are] obligated to supplement [the requested] information under Rule 26(e) of the Federal Rules of Civil Procedure." (Pl. Br. 6). As discussed,

14

Rule 26(e) requires parties to supplement their responses to discovery, to the extent that "the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). That is not what has occurred here, and the Court declines to read this rule as requiring Defendants' supplementation of data after the period that was included in the Fourth Amended Case Management Plan. *See Hnot*, 2006 WL 2381869, at *5 ("[T]here is no general duty [under Rule 26(e)] to produce ... database information, for which there was never any enforceable request for production[.]"). Rule 26(e) further provides that a party "must supplement or correct its disclosure or response ... as ordered by the Court." Fed. R. Civ. P. 26(e)(1)(B). The Court declines to rely on this Rule in this instance, and rests its conclusion that Defendants must supplement their productions on its good cause analysis. *See Pharmacy, Inc.*, 2008 WL 4415263, at *3 (finding that Rule 26(e) did not require defendant to supplement its earlier responses, where documents did not exist prior to the close of discovery).

### 2. The Court Permits Service of a Subpoena to Markit

Plaintiffs also seek permission from this Court to serve a subpoena on Markit, a company that sells an aggregated, average dataset of loans in the stock lending market. (Pl. Br. 7-8). Plaintiffs, to the extent the Court permits it, intend to "use this data to ensure that their damages calculations from 2017-2024 account for the marketwide price of stock lending transactions." (*Id.* at 7). For the Court to allow such a subpoena, Plaintiffs must demonstrate that good cause exists to reopen discovery for that purpose. Additionally,

Federal Rule of Civil Procedure 45(d)(1) requires that "[a] party … responsible for issuing and serving a subpoena … take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

The Court finds that good cause exists to reopen discovery to allow Plaintiffs to serve the subpoena on Markit. *See In re Term Commodities Cotton Futures Litig.*, No. 12 Civ. 5126 (ALC), 2024 WL 1329383, at *3 (S.D.N.Y. Mar. 26, 2024) (granting defendants leave to issue a subpoena to third party for a limited purpose), *reconsideration denied*, No. 12 Civ. 5126 (ALC), 2025 WL 1073873 (S.D.N.Y. Mar. 26, 2025). The subpoena is likely to result in relevant evidence, in that it will allow Plaintiffs to ensure that damages calculations reflect marketwide pricing. As Plaintiffs contend, this is particularly important because the other defendants in this case have settled, so there are no other comparators at this point in the case. (Pl. Br. 7). Plaintiffs also diligently requested data from Markit during the discovery period and thereafter. Indeed, Plaintiffs attempted to purchase post-2017 data rather than request this subpoena from the Court, but Markit would not permit them to do so after learning that the data would be used for litigation against Defendants. (*Id.* at 3).

While Defendants oppose the requested subpoena by asserting that (i) part of the data could have been sought while discovery was open, (ii) multiple possible sources for the data exist, and (iii) Markit took eight months to respond to the subpoena issued during fact discovery (Def. Opp. 8-

9), the Court does not find any of these arguments persuasive. Defendants do not suggest what other sources exist, and the Court agrees with Plaintiffs that serving a subpoena on Markit will be more efficient than seeking discovery from the settling defendants. Further, the Court does not believe that the time for Markit to respond to the subpoena will prejudice Defendants, as supplemental discovery will be produced by Defendants concurrently. Finally, the Court fully expects Plaintiffs to take reasonable steps to avoid imposing undue burden or expense on Markit by tailoring their requests to seek *only* that which is necessary to update their damages calculations.

### 3. Defendants Are Permitted to Seek Limited Discovery to Support Their Defenses to Post-2017 Damages

Finally, Defendants argue that if the Court determines, as it has, that fact discovery should be reopened, Defendants must be permitted to seek discovery "to support [their] defenses to avoid enormously unfair prejudice." (Def. Opp. 10). Specifically, Defendants wish "to obtain, among other things, discovery about the post-2017 stock lending market, including for example the import of regulatory developments, factors affecting stock-lending prices and the costs of platform trading in the but-for world, Plaintiffs' stock lending activity, and innovation and new entrants in the market." (*Id.*). The Court disagrees with Plaintiffs that this argument is so "undeveloped" as to have been "waived." (Pl. Reply 5 n.6 (quoting *Force* v. *Facebook, Inc.*, 934 F.3d 53, 66 n.20 (2d Cir. 2019))). Rather, the Court permits Defendants to pursue limited discovery to support their defenses related to post-2017 damages.

17

The Court also notes that the instant case is distinguishable from *Interest Rate Swaps Antitrust Litigation*, on which Defendants rely. (*See* Def. Opp. 10 (citing *In re Int. Rate Swaps Antitrust Litig.*, No. 16 MD 2704 (PAE), 2019 WL 1147149, at *26 (S.D.N.Y. Mar. 13, 2019))). There, the plaintiffs sought to include *claims* covering five additional years, which the court denied. *Id.* The district judge found that if those claims were added, defendants would be entitled to discovery related to those claims. *Id.* In the present case, Plaintiffs are seeking to update their damages model to cover alleged damages arising from the 2012-2017 claims, rather than new 2018-2024 claims. Accordingly, the Court grants Defendants' request, but expects Defendants to narrowly tailor that additional discovery.

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiffs' motion for supplemental discovery regarding future damages related to claims for antitrust violations during the Class Period, and GRANTS Defendants the opportunity to pursue limited discovery related to their defenses to post-2017 damages.

The parties are directed to file a letter proposing a schedule for the next steps in this case on or before **May 30, 2025**. The Clerk of Court is directed to terminate the pending motion at docket entry 709.

SO ORDERED.

Dated:    May 2, 2025
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

18